# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

White Mountain Apache Tribe,
  *Plaintiff*,

      v.

Eugene Scalia, in his official capacity as
Secretary, U.S. Department of Labor, et al.,
  *Defendants*.

Civ. A. No. 20-1409 (KBJ)

**Memorandum of Points and Authorities in Support of Defendants'
Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iii

LEGAL STANDARDS.........................................................................................2

BACKGROUND .................................................................................................4

   *A.  Statutory and Regulatory Framework* ............................................................4

   *B.  Factual Background and the Complaint's Allegations*.....................................11

ARGUMENT.....................................................................................................15

            *A.*    *Count II Fails to State a Claim because ERISA Title I Applies to Plaintiff and the Plan, and Its Governmental-Plan Exception Does Not.* ...............16

                   *1.*   *ERISA Title I's amended governmental-plan exception does not apply to Plaintiff or the Plan* ...........................................................16

                   *2.*   *ERISA applied to ITG-sponsored employee benefit plans covering commercial employees before the PPA passage.* ...........................20

                   *3.*   *Plaintiff's contrary arguments are meritless* ..................................23

            *B.*    *Count III Does Not State a Claim under the Administrative Procedure Act* ..........................................................................................25

                   *1.*   *The Secretary's discretionary decisions to assess statutorily authorized penalties are unreviewable under § 701(a)(2) of the APA.* ........................................................................................26

            *C.*    *Count I Fails to State a Claim under 29 U.S.C. § 1132(k) for Reimbursement of the Assessed Penalties*.................................................33

                   *1.*   *The amended complaint does not allege a cognizable § 1132(k) claim over the final orders*........................................................................34

                   *2.*   *The Secretary did not violate ERISA through Executive Order 13, 175 or his Tribal Consultation Policy* ......................................................37

                   *3.*   *The Remaining Acts Listed in Count I Are Not ERISA Violations* .....39

            *D.*    *This Court Should Dismiss Any Remaining Stray Allegations*.................41

**TABLE OF CONTENTS-(continued)**

CONCLUSION ........................................................................................................................ 41

Combined Certifications

# TABLE OF AUTHORITIES

**Federal Cases:**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   99 F. Supp. 3d 1110 (C.D. Cal. 2015) ................................................................. 4

*Angelex Ltd. v. United States*,
   723 F.3d 500 (4th Cir. 2013) ............................................................................. 29

*Asa Accugrade, Inc. v. Am. Numismatic Ass'n*,
   370 F. Supp. 2d 213 (D.D.C. 2005) ................................................................... 39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 3

*Ass'n of Irritated Residents v. EPA*,
   494 F.3d 1027 (D.C. Cir. 2007) ......................................................................... 28

*Barron v. Reich*,
   13 F.3d 1370 (9th Cir. 1994) ............................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 3

*Board of Trade of Chicago v. SEC*,
   883 F.2d 525 (7th Cir. 1989) ............................................................................. 37

*Bolssen v. Unum Life Ins. Co. of Am.*,
   629 F. Supp. 2d 878 (E.D. Wis. 2009) .............................................................. 20

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978) ........................................................................................... 36

*Brock v. Cathedral Bluffs Shale Oil Co.*,
   796 F.2d 533 (D.C. Cir. 1986) ..................................................................... 28, 36

*Cent. Laborers' Pension Fund v. Heinz*,
   541 U.S. 739 (2004) ........................................................................................ 7 n.3

*Chernock v. Gardner*,
   360 F.2d 257 (3d Cir. 1966) .............................................................................. 37

**Federal Cases-(continued):**

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
   892 F.3d 434 (D.C. Cir. 2018) ........................................................... 26, 27

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .......................................................................... 26, 27

*Colville Confederated Tribes v. Somday*,
   96 F. Supp. 2d 1120 (E.D. Wash. 2000) ................................................. 17

*Coppe v. Sac & Fox Casino Healthcare Plan*,
   No. 2:14-CV-02598-GLR, 2015 WL 6806540 (D. Kan. Nov. 5, 2015) .................... 20

*Covad Comm'ns Co. v. Bell Atl. Corp.*,
   407 F.3d 1220 (D.C. Cir. 2005) ............................................................. 4

*Cox v. Sec'y of Labor*,
   739 F. Supp. 28 (D.D.C. 1990) ......................................................... 35, 36

*Cunningham v. Cornell Univ.*, Civ. A.,
   No. 16-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ........................... 3

*Cuyahoga Valley R. Co. v. United Transp. Union*,
   474 U.S. 3 (1985) .............................................................................. 39

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................ 24

*Dep't of Labor v. Occupational Safety & Health Review Comm'n*,
   935 F.2d 182 (9th Cir. 1991) ................................................................ 22

*Devlin v. Transp. Commc'ns Int'l Union*,
   No. 95 CIV 10838 (JFK), 1997 WL 634179 (S.D.N.Y. Oct. 15, 1997),
   *aff'd in part, vacated in part,* 175 F.3d 121 (2d Cir. 1999) ........................... 24

*Dickson v. Sec'y of,*
   *Def.,* 68 F.3d 1396 (D.C. Cir. 1995) .................................................. 29 n.6

*Dillon v. Dole*,
   Civ. No. LR-C-89-545, 1989 WL 162389 (E.D. Ark. Oct. 25, 1989) ...................... 36

*Direct Constr. Servs., LLC v. City of Detroit*,
   820 F. App'x 417 (6th Cir. 2020) ........................................................... 4

**Federal Cases-(continued)**:

*Dobbs v. Anthem Blue Cross & Blue Shield*,
   600 F.3d 1275 (10th Cir. 2010) ........................................................................... 18, 20

*Donovan v. Coeur d'Alene Tribal Farm*,
   751 F.2d 1113 (9th Cir. 1985) ................................................................................... 21

*Drake v. FAA*,
   291 F.3d 59 (D.C. Cir. 2002) ........................................................ 26, 27, 29, 30, 32

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ..................................................................................... 3

*Estate of Wallace v. Comm'r*,
   965 F.2d 1038 ............................................................................................................... 20

*First Va. Bank v. Randolph*,
   110 F.3d 75 (D.C. Cir. 1997) ....................................................................................... 2

*Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians*,
   166 F.3d 1126 (11th Cir. 1999) ................................................................................. 22

*Francis v. Perez*,
   256 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................ 33, 34

*Freedom Watch, Inc. v. McAleenan*,
   No. 19-CV-1374 (RC), 2020 WL 922909 (D.D.C. Feb. 26, 2020) .......................... 28

*Gobeille v. Liberty Mut. Ins. Co.*,
   136 S. Ct. 936 (2016) .................................................................................................... 5

*Grund v. Delaware Charter Guarantee & Tr. Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ........................................................................ 5

*Hamilton v. Gonzales*,
   485 F.3d 564 (10th Cir. 2007) ................................................................................... 29

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .................................................................... 26, 27, 37, 39

*Hentif v. Obama*,
   733 F.3d 1243 (D.C. Cir. 2013) ................................................................................. 40

*Hospital Mercy Hosp., Inc.  v. Azar,*
   891 F.3d 1062 (D.C. Cir. 2018) ................................................................................. 40

**Federal Cases-(continued):**

*Huffer v. Herman*,
  168 F. Supp. 2d 815 (S.D. Ohio 2001) ....................................................33

*Hurd v. Dist. of Columbia*,
  864 F.3d 671 (D.C. Cir. 2017) .............................................................3

*Hutchinson v. Comm'r*,
  765 F.2d 665 (7th Cir. 1985) ..............................................................19

*Johnson v. U.S. Dep't of Agric.*,
  52 F.3d 330 (8th Cir. 1995) (unpublished per curiam)...................... 30

*Kaspar Wire Works, Inc. v. Sec'y of Labor*,
  268 F.3d 1123 (D.C. Cir. 2001) .......................................................... 28

*Koopman v. Forest Cnty. Potawatomi Member Benefit Plan*,
  No. 06-C-0613, 2006 WL 538601 (E.D. Wis. Feb. 15, 2006)...................23

*L. Xia v. Tillerson*,
  865 F.3d 643 (D.C. Cir. 2017) ........................................................... 41

*Lauck v. International Union*,
  655 F.2d 423 (D.C. Cir. 1981) ........................................................... 4

*Little River Band of Ottawa Indians v. Blue Cross Blue Shield of Mich.*,
  183 F. Supp. 3d 835 (E.D. Mich. 2016)................................................. 20

*LO Shippers Action Comm. v. I.C.C.*,
  857 F.2d 802 (D.C. Cir. 1988) ........................................................... 29

*Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*,
  939 F.2d 683 (9th Cir. 1991) ........................................................17, 21

*Mallick v. Usery*,
  427 F. Supp. 964 (W.D. Pa. 1977) ......................................................36

*Marshall Cty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993)..........................................................3

*Marshall v. Jerrico, Inc.*,
  446 U.S. 238 (1980) ......................................................................37

**Federal Cases-(continued)**:

*Mercy Hosp., Inc. v. Azar*,
   891 F.3d 1062 (D.C. Cir. 2018) ...............................................................35

*Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*,
   226 F.3d 1226 (11th Cir. 2000)................................................................41

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
   474 U.S. 494 (1986)..................................................................................21

*N. Arapaho Tribe v. Burwell*,
   118 F. Supp. 3d 1264 (D. Wyo. 2015)......................................................38

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
   446 U.S. 359 (1980) ........................................................................5, 7 n.3

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
   592 F.2d 947 (7th Cir. 1979),
   *aff'd*, 446 U.S. 359 (1980) ........................................................................ 5

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
   305 F. Supp. 3d 1065 (N.D. Cal. 2018).............................................. 31 n.7

*Padula v. Webster*,
   822 F.2d 97 (D.C. Cir. 1987) ................................................................. 26

*Panama Canal Co. v. Grace Line, Inc.*,
   356 U.S. 309 (1958)..................................................................................36

*Pauma v. Nat'l Labor Relations Bd.*,
   888 F.3d 1066 (9th Cir. 2018)
   *cert. denied*, 139 S. Ct. 2614 (2019) ...................................................... 22

*PBGC v. Wilson N. Jones Mem'l Hosp.*,
   374 F.3d 362 (5th Cir. 2004) ....................................................................7

*Physicians for Soc. Resp. v. Wheeler*,
   956 F.3d 634 (D.C. Cir. 2020)..................................................................27

*R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*,
   130 F. Supp. 3d 356 (D.D.C. 2015)...........................................................3

*Ramirez v. Potawatomi Bingo Casino*,
   No. 06-C-322, 2006 WL 3327142 (E.D. Wis. Nov. 15, 2006)................ 22

**Federal Cases-(continued)**:

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004) .......................................................................................... 5

*Reich v. Mashantucket Sand & Gravel*,
    95 F.3d 174 (2d Cir. 1996) ......................................................................... 22

*Reich v. Valley Nat. Bank of Ariz.*,
    837 F. Supp. 1259 (S.D.N.Y. 1993) ..................................................... 30, 40

*Rodrigues v. Reich*,
    No. 94-civ-20517, 1996 WL 37794 (N.D. Cal. Jan. 25, 1996) (holding the same),
    *aff'd*, 121 F. 3d 1352 (9th Cir. 1997) .........................................................33

*Ross v. U.S. Capitol Police*,
    195 F. Supp. 3d 180 (D.D.C. 2016) ............................................................. 2

*Royal Oak Enterprises, LLC v. Pension Benefit Guar. Corp.*,
    78 F. Supp. 3d 431 (D.D.C. 2015) ............................................................... 5

*Saunders v. Davis*,
    No. 15-CV-2026 (RC), 2016 WL 4921418 (D.D.C. Sept. 15, 2016) .....................36, 39

*Scahill v. District of Columbia*,
    271 F. Supp. 3d 216 (D.D.C. 2017)*, aff'd*,
    909 F.3d 1177 (D.C.Cir. 2018) .................................................................... 4

*Sec'y of Labor v. Turning Stone Casino Resort*,
    21 O.S.H. Cas. (BNA), 2005 WL 957122 ...................................................38

*Sec'y of Labor v. Twentymile Coal Co.*,
    456 F.3d 151 (D.C. Cir. 2006) ...............................................27, 28, 29, 30

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ........................................................................................ 5

*Shea v. Esensten*,
    208 F.3d 712 (8th Cir. 2000) ....................................................................... 6

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ...................................................................27

*Simon v. Kaiser Permanente Hosps.*, No. C,
    06-03913 SI, 2006 WL 3318094 (N.D. Cal. Nov. 15, 2006) ....................39

**Federal Cases-(continued)**:

*Smart v. State Farm Ins. Co.*,
   868 F.2d 929 (7th Cir. 1989) ................................................................................ 17, 21, 22

*Solis v. Matheson*,
   563 F.3d 425 (9th Cir. 2009) ................................................................................ 21

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ............................................................................ 3

*Speed Mining, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*,
   528 F.3d 310 (4th Cir. 2008) ................................................................................ 29

*Steenholdt v. FAA*,
   314 F.3d 633 (D.C. Cir. 2003) .............................................................................. 26

*Stopp v. Mut. of Omaha Life Ins. Co.*,
   No. CIV-09-221-FHS, 2010 WL 1994899 (E.D. Okla. May 18, 2010) ................ 17, 20

*Tashima v. Admin. Off. of U.S. Courts*,
   967 F.2d 1264 (9th Cir. 1992) .............................................................................. 29

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ............................................................................................. 31

*U.S. Army Corps of Engineers v. Hawkes Co.*,
   136 S. Ct. 1807 (2016) ......................................................................................... 25

*UAW v. Brock*,
   783 F.2d 237 (D.C. Cir. 1986) .............................................................................. 39

*United States v. Morris*,
   23 U.S. 246 (1825) ............................................................................................... 36

*United States v. Nixon*,
   418 U.S. 683 (1974) ............................................................................................. 36

*Watervale Marine Co. v. U.S. Dep't Homeland Sec.*,
   55 F. Supp. 3d 124 (D.D.C. 2014) ....................................................................... 29

*Wayte v. United States*,
   470 U.S. 598 (1985) ............................................................................................. 28, 36

*Winterrowd v. David Freedman & Co.*,
   724 F.2d 823 (9th Cir. 1984) ................................................................................ 16

**Federal Statutes:**

5 U.S.C. § 701(a)(2) ...............................................................................26, 27, 30, 33

**Title 5,  Government Organization and Employees**

5 U.S.C. § 704.................................................................................... 9, 13, 14, 25, 35

**Administrative Procedure Act,**

5 U.S.C. § 706(2) ....................................................................................... 15, 25

**Title 15. Commerce and Trade:**

15 U.S.C. § 78y.....................................................................................................37

**Title 26, Internal Revenue Code (I.R.C.)**

I.R.C. § 6058(a) ...................................................................................................7

I.R.C. § 401(a)...................................................................................................... 9

I.R.C. § 410 ......................................................................................................... 9

I.R.C. § 411 ......................................................................................................... 9

I.R.C. § 412 ......................................................................................................... 9

I.R.C. § 414(d), *as amended by* § 906(a)(1) ....................................... 9, 10, 11, 24

I.R.C. § 417............................................................................................................ 9

I.R.C. § 906(a)(1) .............................................................................................9, 11

**Employee Retirement Income Security Act of 1974 (Title I),**
       **as amended, 29 U.S.C § 1001 et. seq.:**

Section 2, 29 U.S.C. § 1001.............................................................................1, 5

Section 2(a), 29 U.S.C. § 1001(a) ................................................................. 5, 17
Section 3(11), 29 U.S.C. § 1002(11) ..................................................................19

Section 2, 29 U.S.C. § 1001...............................................................................1

**Federal Statutes-(continued):**

Section 3(11), 29 U.S.C. § 1002(11) ........................................................................ 1, 6, 16, 19

Section 3(12), 29 U.S.C. § 1002(12) ................................................................................ 16, 19

Section 3(32), 29 U.S.C. § 1002(32) ................................................................................. passim

Section 4(a)(1), 29 U.S.C. § 1003(a)(1) ................................................................................... 16

Section 4(b)(1), 29 U.S.C. § 1003(b)(1) ................................................................................ 9, 17

Section 102(b)(1), 29 U.S.C. § 1021(b)(1) ........................................................................ passim

Section 103(a)(1)(B)(i), 29 U.S.C. § 1023(a)(1)(B)(i) ............................................................ 1, 6

Section 103(a)(3), 29 U.S.C. § 1023(a)(3) .............................................................................. 1, 6

Section 103(a)(3), 29 U.S.C. § 1023(a)(3)(A) ......................................................................... 1, 6

Section 104(a), 29 U.S.C. § 1024(a) ..................................................................................... 1, 30

Section 104(a)(3), 29 U.S.C. § 1024(a)(3) .............................................................................. 1, 6

Section 104(a)(4), 29 U.S.C. § 1024(a)(5) ................................................................................. 6

Section 104(a)(4)(A), 29 U.S.C. § 1024(a)(4)(A) ....................................................................... 6

Section 104(a)(5)(D), 29 U.S.C. § 1024(a)(5)(D) ................................................................. 6, 28

Section 109, 29 U.S.C. § 1029 .................................................................................................... 6

Section 402(32), 29 U.S.C. § 1102(32) ..................................................................................... 24

Section 502(c), 29 U.S.C. § 1132(c) ..................................................................................... 6, 16

Section 502(c)(2), 29 U.S.C. § 1132(c)(2) ......................................................................... passim

Section 502(k), 29 U.S.C. § 1132(k) .................................................................................. passim

Section 502(l), 29 U.S.C. § 1132(*l*) ..................................................................................... 29, 33

Section 502(l)(1), 29 U.S.C. § 1132(*l*)(1) .................................................................................. 33

Section 505, 29 U.S.C. § 1135 .................................................................................................... 6

**Federal Statutes-(continued):**

Section 509, 29 U.S.C. § 1139 ...................................................................................................35

Section 514(d), 29 U.S.C. § 1144(d) .........................................................................................35

**Title 42, The Public Health and Welfare,**

42 U.S.C. § 405(g) ...................................................................................................................37

**Miscellaneous:**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................1, 2
                12(b)(6) ...........................................................................................1, 3,  4

8 C.F.R. § 270.2 ....................................................................................................................... 28

29 C.F.R. 2560.502c-2 ............................................................................................................. 2

29 C.F.R. § 2560.502c-2(b) ...................................................................................................... 14

29 C.F.R. § 2560.502c-2(b)(1) ................................................................................................. 8, 31

29 C.F.R. § 2560.502c-2(b)(2) ..................................................................................................7

29 C.F.R. § 2560.502c-2(b)(3) ..................................................................................................7

29 C.F.R. § 2560.502c-2c .............................................................................................. 7, 8, 31, 34

29 C.F.R. § 2560.502c-2c-2 .................................................................................................7, 8

29 C.F.R. § 2560.502c-2(d) ..................................................................................................14, 31

29 C.F.R. § 2560.502c-2(e)............................................................................................ 8, 31, 32, 34

29 C.F.R. § 2560.502c-2(g)(1) ................................................................................................ 8

29 C.F.R. § 2560.502c-2(h) ..................................................................................................... 8

29 C.F.R. § 2570.60 ...................................................................................................... 2, 7, 8

29 C.F.R. § 2570.68 ............................................................................................................. 8, 14

29 C.F.R. § 2570.69 ............................................................................................................. 8, 14

29 C.F.R. § 2570.70 ............................................................................................................. 8

**Miscellaneous-(continued):**

29 C.F.R. § 2570.71 ................................................................................... 2, 7, 13

29 C.F.R. § 2570.7l(b) ....................................................................................32

29 C.F.R. § 2575.2(b) ...................................................................................... 6

Tribal Consultation Policy,
   77 Fed. Reg. 71,833-01 (Dec. 4, 2012) ......................................................38

Exec. Order No. 12,108, (effectuating the Reorganization Plan No. 4 of 1978, 43 Fed. Reg. 47,713
   (Oct. 17, 1978, 5 U.S.C. Appendix) ........................................... 6 n.1, 24 n.4

Exec. Order No. 13,175, § 5(b): 65 Fed. Reg. 67, 249, 67,250 (Nov. 6, 2000) .............................38

Exec. Order No. 13,175, § 10: 77 Fed. Reg.71,842 §XI(3) (Dec. 4, 2012).......................................38

EBSA, *Form 5500 Search,* https://5500search.dol.gov/*(publicly available online database of
   Forms 5500 filings)* ........................................................................... passim

U.S Dept. of Labor, Emp. Ben. Sec. Admin., *Form 550 Series,* https://bit.ly/2PCNqqG ...........3, 7

U. S. Dept. of Treasury, U.S Dept. of Labor, Pension Ben. Guar. Corp., *Instructions for Form
5500* 1 (2019), https://bit.ly/3jcODm5........................................................7

Annual Return/Report of Employee Benefit Plan, Form 5500 (2019), https://bit.ly/3hvC7wj....... 7

Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890
   (1990), *as amended,* 28 U.S.C. 2461 .................................................... 6 n.2

Pension Protection Act of 2006, Pub. L. No. 109-280 Pub. L. No. 109-280 § 906(a)(2), 120 Stat.
   780 (2006).................................................................................................. 9

Joint Committee on Taxation, *Technical Explanation of H.R. 4, the "Pension Protection Act of
2006," as Passed by the House on July 28, 2006 and as Considered by the Senate on August 3,
2006,* No. JCX-38-06 (Aug. 3, 2006) ................................................... 10, 19

IRS Notice 2007-67,
   2007 WL 2265140 (2007) ...................................................................10, 11, 19

IRS Notice 2006-89,
   2006 WL 2798282 (2006).................................................. 10, 11, 12, 18, 24

Administration and Enforcement, Antonin Scalia & Bryan Garner, *Reading Law: The
Interpretation of Legal Texts* 221-24 (2012) ........................................... 28, 35

The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, requires administrators of employee benefits plans to file an annual report with the Secretary of Labor. Each report must contain certain financial information, including a statement from an independent qualified public accountant ("IQPA"). 29 U.S.C. § 1023(a)(1)(B)(i), (a)(3). The IQPA must perform an independent audit of the plan's financial statements, books, and records, and then render an opinion on whether its financial statements submitted in the annual report conform to generally accepted accounting principles. *Id.* (a)(3)(A). ERISA's annual report "is an important compliance, research, and disclosure tool for the Department of Labor, a disclosure document for plan participants and beneficiaries, and a source of information and data for use by other Federal agencies, Congress, and the private sector in assessing employee benefit, tax, and economic trends and policies." U.S. Dep't of Labor, Emp. Ben. Sec. Admin., *Form 5500 Series*, https://bit.ly/2PCNqqG. Thus the annual report's IQPA statement ensures reporting accuracy and provides the Secretary of Labor—as well as plan participants and beneficiaries—critical information about a plan's financial condition and compliance with ERISA. Congress considered annual reports so important that it authorized the Secretary to assess a civil penalty of $1,100 per day from the date of an administrator's failure to file one. *See* 29 U.S.C. § 1132(c)(2); *infra* n.2. The Secretary may reject an annual report if it omits required information, including an IQPA statement, 29 U.S.C. § 1024(a)(4), in which case the report "shall . . . be treated as having [not] been filed with the Secretary." 29 U.S.C. § 1132(c)(2).

Plaintiff White Mountain Apache Tribe sponsors and administers a retirement plan for its employees. *Id.* ¶¶ 1, 10. According to the amended complaint, Plaintiff began violating ERISA around 2006, when it decided to start filing its annual reports without an IQPA statement. Am. Compl. ¶ 59 ("the Tribe elected to start filing Form 5500s, but did not attach an IQPA"). Plaintiff

persisted in this practice even after receiving warnings from the Secretary and opportunities to correct the violations. *Id.* ¶¶ 61, 67. So, to enforce ERISA and address Plaintiff's violations, the Secretary decided to assess penalties against it under 29 U.S.C. § 1132(c)(2) and its implementing regulations, 29 C.F.R. 2560.502c-2, *id.* §§ 2570.60–.71. That resulted in two final orders assessing a total of $140,000 against Plaintiff.

Plaintiff now challenges those decisions in its amended complaint. But it does not dispute that it failed to file IQPA statements with its Forms 5500, or that its failure triggers the Secretary's discretion to issue penalties. Instead, with new allegations in the amended complaint, Plaintiff claims that ERISA Title I does not apply to it at all. And Plaintiff continues to protest that, even if the Secretary was permitted to assess penalties against it under ERISA, the Secretary should have exercised his discretion by waiving the penalties. Based on governing law, the facts in the amended complaint, and the facts of which this Court may take judicial notice, Plaintiff's claims must fail as a matter of law. Defendants therefore respectfully request that the Court grant the Secretary's motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).

## LEGAL STANDARDS

1. When a defendant moves to dismiss under Rule 12(b)(1), "it is the plaintiff's burden to establish that the court has jurisdiction by a preponderance of the evidence." *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 191 (D.D.C. 2016). If "the plaintiff fails to do so, the court must dismiss the complaint." *Id.* And "if the government has not consented to the suit, sovereign immunity requires the court to dismiss the action for lack of jurisdiction." *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997).

2. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Courts must "treat the complaint's factual allegations as true, and must grant plaintiffs 'the benefit of all inferences that can be derived from the facts alleged.'" *R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*, 130 F. Supp. 3d 356, 370 (D.D.C. 2015) (quoting *I v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). "[W]hen an agency action is challenged," "[t]he entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

"In determining whether a complaint fails to state a claim, the court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. Dist. of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)) (cleaned up). Forms 5500 are public filings, *see* EBSA, *Form 5500 Search*, https://5500search.dol.gov/ (publicly available online database of Forms 5500 filings); *Cunningham v. Cornell Univ.*, Civ. A. No. 16-6525, 2017 WL 4358769, at *3–4 (S.D.N.Y. Sept. 29, 2017), and courts may take judicial notice of them when deciding Rule 12(b)(6) motions, *see,*

*e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015).

Courts may also take judicial notice at the motion-to-dismiss stage of an agency's relevant final administrative orders. *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 223 (D.D.C. 2017) (listing cases), *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018). That is especially true when, like here, a complaint relies on publicly available, final agency decisions and makes them central to its claims. *Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 421 (6th Cir. 2020) ("In ruling on a motion to dismiss, the court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency.").

So for purposes of this motion to dismiss, the Secretary asks this Court to consider, in addition to the well-pleaded allegations in Plaintiff's amended complaint, (1) Plaintiff's publicly filed Forms 5500, and (2) the two final orders of the Secretary Plaintiff now challenges. This Court may take judicial notice of both the existence of those documents and the undisputed facts they contain. *See Covad Comm'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (court may consider facts that "are contained in materials of which the court may take judicial notice" on Rule 12(b)(6) motions). The Secretary includes those relevant documents as attachments to this memorandum.

## BACKGROUND

### A. Statutory and Regulatory Framework

1. ERISA comes in four titles, *Lauck v. International Union*, 655 F.2d 423, 423 n.1 (D.C. Cir. 1981), "each designed to correct different abuses perceived in the private pension system,"

*Nachman Corp. v. Pension Ben. Guar. Corp.*, 592 F.2d 947, 950 (7th Cir. 1979), *aff'd by* 446 U.S. 359 (1980). This case implicates two of them: Title I and Title II. Title I of ERISA, codified at 29 U.S.C. §§ 1001–1191c, "requires administrators of all covered pension plans to file periodic reports with the Secretary of Labor, mandates minimum participation, vesting and funding schedules, establishes standards of fiduciary conduct for plan administrators, and provides for civil and criminal enforcement of the Act." *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 362 n.1 (1980); *Royal Oak Enterprises, LLC v. Pension Benefit Guar. Corp.*, 78 F. Supp. 3d 431, 434 (D.D.C. 2015). By contrast, "Title II, codified in various parts of Title 26 of the United States Code, 'amended various [Internal Revenue Code] provisions . . . pertaining to qualification of pension plans for special tax treatment, in order, among other things, to conform to the standards set forth in Title I.'" *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004) (quoting *Nachman*, 446 U.S. at 362 n.1). Much of this case can be resolved by ironing out Plaintiff's insistent and incorrect confusion of these two ERISA titles. *Grund v. Delaware Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 237 (S.D.N.Y. 2011).

2. Concerned that "the soundness and stability of [employee benefit] plans . . . to pay promised benefits may be endangered," 29 U.S.C. § 1001(a), Congress passed ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). One way ERISA Title I does this is "by mandating certain oversight systems and other standard procedures." *See Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). Thus, 29 U.S.C. §§ 1021(b)(1) and 1024(a) require plan administrators to file an annual report with the Secretary of Labor. *Id.* at 944; *Nachman Corp. v. PBGC*, 446 U.S. 359, 362 n.1 (1980). The annual report is one of ERISA's "integral aspects," not a "mere formalit[y]," *Gobeille*, 136 S. Ct. at 945, and as part of Title I of ERISA, the Secretary is

responsible for enforcing it, 29 U.S.C. §§ 1024(a)(5); 1029, 1132(c), 1135; *e.g.*, *Shea v. Esensten*, 208 F.3d 712, 715 n.2 (8th Cir. 2000) (Secretary of Labor is responsible for "interpreting and enforcing all provisions of Title I of ERISA.").[1]

To comply with the reporting requirement, the annual report must include "a financial statement and opinion" from an independent qualified public accountant ("IQPA") on whether the plan's financial statements are consistent with generally accepted accounting principles. 29 U.S.C. § 1023(a)(1)(B)(i), (a)(3). "The Secretary *may* reject" any annual-report filing that lacks an IQPA statement. 29 U.S.C. § 1024(a)(4)(A) (emphasis added). If that happens, the administrator has 45 days to file "a revised filing satisfactory to the Secretary." *Id.* § 1024(a)(5). And if the administrator fails to do so, the Secretary "*may* take any . . . action authorized by [ERISA Title I]." *Id.* § 1024(a)(5)(D) (emphasis added).

Among the actions ERISA Title I authorizes the Secretary to take is to assess civil monetary penalties against plan administrators for failures to comply with ERISA's annual-report requirement. 29 U.S.C. § 1132(c)(2). For each penalty, the Secretary "*may assess* . . . up to $[1,100] a day from the date of [a] plan administrator's failure or refusal to file the annual report."[2] 29 U.S.C. § 1132(c)(2) (emphasis added). The provision clarifies that if the Secretary rejects an annual report for failing to include material information, the report "shall . . . be treated as having [not] been filed with the Secretary." *Id.*

---

[1] *See generally* Executive Order 12,108 (effectuating the Reorganization Plan No. 4 of 1978, 43 Fed. Reg. 47,713 (Oct. 17, 1978), 5 U.S.C. Appendix).

[2] Section 1132(c)(2), by its text, authorizes a penalty of up to $1,000 per day. Under the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), as amended, 28 U.S.C. § 2461 note, the Secretary increased the maximum penalty amount to $1,100 a day, 29 C.F.R. § 2575.2(b).

In addition to ERISA's annual report, ERISA Title II requires that plan administrators file an "annual return" with the Department of the Treasury's Internal Revenue Service (IRS), *see* 26 U.S.C. § 6058(a), the agency "responsible for administering Title II of ERISA," *PBGC v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 371 (5th Cir. 2004).[3] The Secretaries of Labor and the Treasury adopted Form 5500, titled an "Annual Return/Report of Employee Benefit Plan," to facilitate compliance with both filing requirements. *See* Dep't of Treasury, Dep't of Labor, Pension Ben. Guar. Corp., *Instructions for Form 5500* 1 (2019), https://bit.ly/3jcODm5. To file a Form 5500, the plan administrator must declare under penalty of perjury that the information it contains, including information in any "accompanying . . . attachments," "is true, correct, and complete." Form 5500 (2019), https://bit.ly/3hvC7wj.

All put together, if a plan administrator files an annual Form 5500 without attaching an IQPA statement, the Secretary of Labor may reject the filing as noncompliant with ERISA's annual-report requirement. And if the administrator does not rectify the filing within 45 days, the Secretary may assess a penalty against them, up to $1,100 a day, running from the filing's due date to "the date on which an annual report satisfactory to the Secretary is filed." 29 C.F.R. § 2560.502c-2(b)(2), (3); *supra* n.2.

3. The Secretary has issued two regulations to help guide his enforcement discretion in this context. The first addresses how § 1132(c)(2) penalties are issued, 29 C.F.R. § 2650.502c-2, and the second addresses their administrative review, 29 C.F.R. §§ 2570.60–.71.

Under the issuance regulation, "[t]he amount assessed [under § 1132(c)(2)] shall be determined by the Department of Labor, taking into consideration the degree and/or willfulness

---

[3] *See generally Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746 (2004); *Nachman Corp. v. PBGC*, 446 U.S. 359, 362 n.1 (1980) (discussing the differences between Titles I and II of ERISA).

of the failure or refusal to file the annual report." 29 C.F.R. § 2650.502c-2(b)(1). Its remainder

sets procedures to gather information from the violator on the "degree and/or willfulness of the

failure or refusal," to help inform the final penalty decision. To that end, if the Secretary rejects a

plan administrator's filing and 45 days pass without rectification, the Secretary may issue a

notice of intent to assess a penalty setting forth the proposed penalty amount. 29 C.F.R.

§ 2560.502c-2(c). The Secretary cannot issue a penalty without doing this first, and the notice

must include a proposed penalty amount. *Id.* The plan administrator then has 30 days to respond

with a statement of reasonable cause "explaining why the penalty, as calculated, should be

reduced, or not be assessed, for the reasons set forth in paragraph (d)." *Id.* § 2560.502c-2(e).

"Paragraph (d)," in turn, states that the Secretary "*may*" reduce or waive the proposed penalty

"on a showing that the administrator complied with" § 1021(b)(1), "or on a showing by the

administrator of mitigating circumstances regarding the degree or willfulness of the

noncompliance." *Id.* § 2560.502c-2(d). After the administrator files a reasonable-cause statement,

the Secretary must issue a written notice "of its determination to waive the penalty, in whole or

in part, *and/or* assess a penalty." *Id.* § 2560.502c-2(g)(1) (emphasis added). If the Secretary

decides to assess a penalty, the notice of determination must include the final penalty amount. *Id.*

A plan administrator may challenge a penalty assessed in a notice of determination by

requesting an administrative hearing. *Id.* § 2560.502c-2(h). Doing so triggers the Secretary's

administrative-review regulation. Under it, an administrative law judge takes argument and

issues a decision, which must include "findings of fact and conclusions of law with reasons

therefor." 29 C.F.R. §§ 2570.60, .68. A plan administrator may appeal an unfavorable ALJ

decision to the Secretary. *Id.* § 2570.70. At that stage of review, "[t]he Secretary may affirm,

modify, or set aside, in whole or in part, the decision on appeal and shall issue a statement of

reasons and bases for the action(s) taken. Such decision by the Secretary shall be final agency action within the meaning of 5 U.S.C. 704." *Id.* § 2570.71.

4. ERISA Title I and II each contains provisions regarding governmental plans that operate independently and fulfill different functions. ERISA excepts governmental plans from Title I's protections and requirements. 29 U.S.C. § 1003(b)(1). By contrast, the Title II provision, codified in the Internal Revenue Code ("IRC," or "the Code"), establishes special rules specifically for governmental plans. A governmental plan is exempt from many of the plan qualification requirements under IRC § 401(a) (and other Code sections) and is deemed to satisfy other qualification requirements under certain conditions. For example, governmental plans are exempt from the minimum-participation and vesting requirements under IRC §§ 410- and 411, certain nondiscrimination and coverage requirements, funding requirements under IRC § 412, and the joint-and-survivor-annuity rules under IRC § 417.

Title I defines the term "governmental plan" at 29 U.S.C. § 1002(32). In the Pension Protection Act of 2006 ("PPA"), Congress expanded this definition to include certain plans "established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of title 26), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of title 26), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)." Pension Protection Act of 2006, Pub. L. No. 109-280 § 906(a)(2), 120 Stat. 780 (2006). Section 414(d) of the Code defines governmental plan for purposes of the Internal Revenue Code. Section 906(a)(1) of the Pension Protection Act amended section 414(d) by adding language that is substantively identical to the

language added to § 1002(32). So if an Indian tribal government (ITG) plan covers a single participant (1) who is an employee of the ITG plan sponsor, and (2) whose job duties are not substantially all in the performance of essential government functions, the ITG plan is not a governmental plan within the meaning of § 1002(32). That is true whether or not the employee's commercial activities also qualify as "essential government functions." *Id.*

The Pension Protection Act did not define "commercial activities," but besides the plain language, its Joint Committee on Taxation left an illuminating marker. In a report on the PPA, the Joint Committee explained that "a governmental plan would not include a plan covering tribal employees who are employed by a hotel, casino, service station, convenience store, or marina operated by a tribal government." Joint Committee on Taxation, *Technical Explanation of H.R. 4, the "Pension Protection Act of 2006," as Passed by the House on July 28, 2006, and as Considered by the Senate on August 3, 2006*, No. JCX-38-06, at 244 (Aug. 3, 2006), https://www.jct.gov/publications/2006/jcx-38-06/ [hereinafter *Joint Committee Explanation*]. In contrast, "a governmental plan would include a plan of a tribal government all of the participants of which are teachers in tribal schools." *Id.*

After the PPA's passage, IRS issued two notices about how it would temporarily treat ITG plans under the Internal Revenue Code, pending the issuance of formal guidance on the amended Title II exception. The notices provided certain ITG plans with "transition relief," IRS Notice 2006-89, 2006 WL 2798282, lasting until six months "after guidance is issued . . . on the determination of whether a retirement plan maintained by an ITG is a governmental plan with the meaning of [the IRC]," IRS Notice 2007-67, 2007 WL 2265140. They explained that IRS would treat ITG plans as governmental plans under § 414(d) if they complied "with [the notices'] requirements based on a reasonable and good faith interpretation of the amendment made by

section 906(a)(1) of PPA '06." IRS Notice 2006-89. Notice 2006-89 identified one interpretation

that the IRS would not consider reasonable:

> [I]t is not a reasonable and good faith interpretation of section 906(a)(1) of
> PPA '06 that an ITG plan is a governmental plan if employees who perform
> the following commercial activities continue to accrue benefits under the
> ITG plan. These are employees who are employed by a hotel, casino, service
> station, convenience store, or marina (disregarding employees substantially
> all of whose services as an employee of the ITG are in the performance of
> essential governmental functions but not in the performance of services for
> a hotel, casino, service station, convenience store, or marina operated by
> the ITG).

*Id.* (citing *Joint Committee Explanation* at 244). The IRS notices are irrelevant to the ERISA

Title I definition of governmental plan. Notice 2006-89 mentions ERISA Title I only once, in a

footnote, to observe just that Congress "made similar amendments" to the governmental-plan

exceptions in ERISA Titles I and IV. And Notice 2007-67 does not mention ERISA Title I at all.

**B. Factual Background and the Complaint's Allegations**

Plaintiff White Mountain Apache Tribe is a federally recognized Indian tribal government.

Am. Compl. ¶ 1, ECF No. 16. It sponsors and administers the White Mountain Apache Tribe

Retirement Savings and 401(k) Plan to provide retirement benefits to its employees, *id.* ¶¶ 1, 10—

including those engaged in commercial activities, *see* Attach. A at 20; *see also* Attach. B at 20;

Attach. C at 21.

1. Around 2006, Plaintiff "elected to start filing" its annual Forms 5500 without including

the required IQPA statement. Compl. ¶¶ 59–60. Consistent with that allegation, Plaintiff filed its

2012 Form 5500 without an IQPA statement. Attach. A; First Final Order at 2 (Attach. D). It

attached a note instead, seeking a waiver of the reporting requirement. Attach. A. That note

admitted, "Notice 2006-89 lists five activities presumed to be 'commercial' in nature for

purposes of the IRS good faith transition relief under the PPA. The Plan includes employees engaged in activities identified as 'commercial' in Notice 2006-89." *Id.* at 20.

The Secretary rejected Plaintiff's 2012 filing for not including an IQPA statement. First Final Order at 2 (Attach. D). After Plaintiff failed to comply, the Secretary issued Plaintiff a notice of intent to issue a penalty. *Id.* at 3. Plaintiff timely filed a reasonable-cause statement, again seeking waiver. *Id.* Upon considering it, Am. Compl. ¶ 69, the Secretary issued a notice of determination against Plaintiff, assessing a $50,000 penalty, First Final Order at 3. The notice explained that the Secretary found no reasonable cause to waive the penalty, as Plaintiff still had not filed the required IQPA statement for 2012, and neither Executive Order 13,175 nor the Department of Labor's Tribal Consultation Policy applied to enforcement actions. *Id.* Plaintiff sought administrative review, and after briefing, the administrative law judge upheld the penalty. *Id.* 3–4. Plaintiff then appealed to the Secretary.

After another round of briefing, the Secretary issued a Decision and Order on December 19, 2019, affirming the ALJ's decision. The Order explained that ERISA Title I applied to Plaintiff and the Plan, and its governmental-plan exception did not, because the Plan included participants whose duties as employees were "clearly commercial." This was because Plaintiff "*admits* that the Plan includes participants working in its casino, ski resort, hotels, restaurants, and stores." *Id.* at 5 (emphasis added). "The IRS guidance, court decisions, the natural reading of the [2006 Amendments] itself, and 'any commonsense understanding,' all indicate that participants' work constitutes commercial activity." *Id.* at 6.

The Order continued, explaining that Plaintiff "failed to provide an IQPA report for plan year 2012. The ALJ properly found that there exist no genuine issues of material fact, and that [Plaintiff] has not demonstrated mitigating circumstances or reasonable cause for its failure to

comply with the ERISA reporting requirements." *Id.* at 7. It therefore affirmed and ordered Plaintiff to pay the $50,000 penalty. Per 29 C.F.R. § 2570.71, the decision was "final agency action within the meaning of 5 U.S.C. 704."

2. Meanwhile, Plaintiff filed its 2013 and 2014 annual reports, again without including the required IQPA statements. Attachs. B, C. The Secretary rejected both filings and consolidated the matter. *See* Second Final Order at 12 (Attach. E). On March 14, 2016, the Secretary issued plaintiff a notice of intent to assess a penalty, this time for $90,000. *Id.* Plaintiff filed a reasonable-cause statement, seeking waiver for the same reasons it articulated in the prior matter. *Id.* The Secretary again rejected those arguments and issued Plaintiff a notice of determination, assessing the full proposed penalty. Plaintiff sought administrative review. *Id.*

The administrative law judge took argument in the review of the second assessment, and on July 22, 2019, he issued a decision upholding the penalty. As a factual matter, the ALJ explained, Plaintiff "acknowledges that during the relevant period it operated Sunrise Park Resort, Hawley Lake Cabins, and Hon-Dah Resort Casino and Conference Center. It also acknowledges that its plan includes employees of these operations." *Id.* at 12. Looking to "common sense," the ALJ found, "Running a casino is a commercial venture. So is running a hotel." *Id.* at 13. And it did not matter whether those commercial activities might *also* be essential government functions, because the statute's language anticipated such a situation and placed it outside the bounds of the expanded exception. *Id.* Thus ERISA Title I's governmental-plan exception did not apply to the Plan, because the Plan included commercial employees, and Plaintiff therefore violated ERISA Title I's reporting requirement by failing to attach IQPA statements to its 2013 and 2014 annual filings. *Id.* at 14.

The ALJ also found no error in not waiving the penalty based on Plaintiff's reasonable-cause statement. Despite Plaintiff's myriad attempts to litigate the question, the ALJ recognized that "while the regulations provide direction on what is to be weighed, they do not provide guidance on how EBSA should exercise its discretion." *Id.* at 20 (*quoting* 29 C.F.R. § 2560.502c-2(d)). And the ALJ pointed out that "disagreement with the meaning of the law is not a willfulness factor." *Id.* at 21. Thus Plaintiff was not entitled to waiver or mitigation of the assessed penalty, and the ALJ upheld the $90,000 penalty. *Id.* Plaintiff did not appeal, so the ALJ's decision became "final agency action within the meaning of 5 U.S.C. 704." 29 C.F.R. § 2570.68, .69.

3. Plaintiff's amended complaint now challenges the two final agency actions taken by the Secretary. Those actions assessed a total of $140,000 in § 1132(c)(2) penalties against Plaintiff for its 2012, 2013, and 2014 violations of ERISA Title I's reporting requirement. Plaintiff's complaint asks this Court for three things.

Count I seeks reimbursement of "$140,000 in Section 502(c)(2) penalties improperly assessed and paid" under 29 U.S.C. § 1132(c)(2) and (k). Plaintiff alleges it is entitled to this relief because the Secretary (1) did not properly waive or mitigate the penalties under 29 C.F.R. § 2560.502c-2(b)–(d); (2) did not properly consider Executive Order 13,175 and DOL's tribal consultation policy; (3) applied § 1132(c)(2) inconsistently; (4) did not "provide the Tribe notice of [ERISA's] requirements before enforcement, and prior notice of changes to the deadlines and other conditions for [IRS] Transition Relief"; and (5) failed "to coordinate Transition Relief and consultation efforts with Treasury." Am. Compl. ¶¶ 179–182.

Count II seeks an injunction under 29 U.S.C. § 1132(k) prohibiting the Secretary from (1) enforcing ERISA against it and the Plan; and (2) "enforcing Form 5500 penalties against the

Tribe without having complied with its own Mitigation Regulations." Am. Compl. ¶¶ 195–96.

Plaintiff also seeks an affirmative injunction compelling the Secretary to (1) consider certain

"tribal-specific factors" when enforcing § 1132(c)(2) against ITGs; (2) interpret ERISA Title I's

governmental-plan exception in light of a "tribal canon of construction"; (3) "consider individual

factors of mitigation"; and (4) "consult with tribes and other agencies" about the meaning of

ERISA Title I's governmental-plan exception and filing requirements for ITG plans. *Id.* ¶¶ 197–

200. Plaintiff alleges it is entitled to this relief because its Plan comes under Title I's

governmental-plan exception, making the assessed penalties unlawful, and because the Secretary

"has and continues to violate its own Mitigation Regulations regarding Form 5500 penalty

waivers and mitigation." *Id.* ¶¶ 191–192.

Count III alleges that the Secretary violated 5 U.S.C. § 706(2) of the Administrative

Procedure Act when he issued the two final agency orders assessing penalties against Plaintiff,

which it asks the Court to set aside. *Id.* ¶¶ 203–205.

## ARGUMENT

Plaintiff White Mountain Apache Tribe discusses a wide variety of topics in its complaint.

But its three counts boil down to two questions: (1) whether ERISA Title I's governmental-plan

exception applies to the Plan, and (2) whether courts may review the Secretary's purely

discretionary enforcement decisions over whether to assess or waive statutorily authorized

§ 1132(c)(2) penalties. Because the answer to both questions is "no," Plaintiff's complaint fails as

a matter of law. ERISA Title I's governmental-plan exception does not apply to the Plan, because

the Plan covers Plaintiff's casino and other commercial employees. That means Plaintiff, as the

Plan administrator, had an ERISA duty to file complete annual reports with the Secretary,

including IQPA statements, which Plaintiff admits to violating in 2012, 2013, and 2014. Am.

Compl. ¶ 59. And *that* means the Secretary had discretion to impose penalties against Plaintiff—

which includes complete discretion over whether or not to waive enforcement against Plaintiff—

for those violations, per 29 U.S.C. § 1132(c). The Secretary's decisions to invoke that

prosecutorial discretion in favor of enforcing ERISA, by issuing penalties for Plaintiff's

violations, are not judicially reviewable, under the APA or otherwise.

**A. Count II Fails to State a Claim because ERISA Title I Applies to Plaintiff and the Plan, and Its Governmental-Plan Exception Does Not.**

Count II, which seeks an order restraining the Secretary from enforcing ERISA against the

Plan and asserting penalties against it, turns largely on the allegations that Plaintiff is a

governmental plan beyond ERISA Title I's reach. *See* Am. Compl. ¶¶ 190-92. Because that is not

correct, this Court should dismiss Count II.

*1. ERISA Title I's amended governmental-plan exception does not apply to Plaintiff or the Plan*

ERISA Title I applies "to any employee benefit plan . . . established or maintained by any

employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C.

§ 1003(a)(1). Congress wrote ERISA so it would apply broadly to "any" employer engaged in

commercial activities. The statute defines "commerce" to mean "trade, traffic, commerce,

transportation, or communication between any State and any place outside thereof" and the term

"industry or activity affecting commerce" to mean "any activity, business, or industry in

commerce[.]" 29 U.S.C. § 1002(11), (12). "When Congress uses the term 'activity affecting

commerce,' it is an expression of Congress' intent to regulate 'within the full sweep of its

constitutional authority.'" *Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 825 (9th Cir.

1984). And Congress explicitly connected ERISA's disclosure requirements with regulation of

commerce. "[T]o provide for the general welfare and the free flow of commerce, . . . disclosure

[shall] be made and safeguards [shall] be provided with respect to the establishment, operation, and administration of [employee benefit] plans." 29 U.S.C. § 1001(a).

ERISA Title I includes some exceptions to this broad coverage, including one for "governmental plan[s]," as defined by 29 U.S.C. § 1002(32). *See* 29 U.S.C. § 1003(b)(1). When Congress passed ERISA in 1974, governmental plans included plans established or maintained by either the United States Government or a state government. *See* 29 U.S.C. § 1002(32) (1974). At that time, many courts recognized that the "governmental plan" definition did not include plans established or maintained by Indian tribal governments. "[E]mployee welfare benefit plans offered by Indian tribal governments were not specifically mentioned in the ERISA statute. Although ERISA was silent . . . it was generally held that ERISA as a statute of general applicability did apply to such plans." *Stopp v. Mut. of Omaha Life Ins. Co.*, No. CIV-09-221-FHS, 2010 WL 1994899, at *2 (E.D. Okla. May 18, 2010); *see also Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*, 939 F.2d 683 (9th Cir. 1991); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 933 (7th Cir. 1989) ("ERISA is clearly a statute of general application, one that envisions inclusion within its ambit as the norm.").*But see Colville Confederated Tribes v. Somday*, 96 F. Supp. 2d 1120, 1131 (E.D. Wash. 2000) (deferring to Pension Benefit Guaranty Corporation's opinion letter that concluded the ITG-sponsored plan at issue was a "governmental plan").

In 2006, Congress passed the Pension Protection Act, which excepted certain ITG-sponsored plans from ERISA coverage by including them in the governmental-plan definition. Specifically, the PPA amended ERISA's governmental-plan definition to include

> plan[s] . . . established and maintained by an Indian tribal government[,] . . . all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of

essential governmental functions but not in the performance of commercial
activities (whether or not an essential government function).

29 U.S.C. § 1002(32). Thus as amended, "a[n ITG] plan qualifies as a governmental plan only if

it is established and maintained by an Indian tribal government and *all* of the participants are

employees primarily engaged in essential governmental functions rather than commercial

activities." *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1285 (10th Cir. 2010)

(emphasis added).

Plaintiff alleges in Count II that its employee benefit plan is a "governmental plan" exempt

from ERISA Title I's coverage, based on the 2006 amendments, Am. Compl. ¶ 192, and that the

Secretary may not enforce ERISA against Plaintiff and the Plan, *id.* ¶ 195. Plaintiff is wrong.

As the Secretary's final orders twice made clear, Plaintiff admitted in the administrative

proceedings that the Plan covers Plaintiff's casino, hotel, and other commercial employees. *See*

First Final Order at 5 ("WMAT admits that the Plan includes participants working in its casino,

ski resort, hotels, restaurants, and stores."); Second Final Order at 12 ("But it is undisputed that

WMAT's plan includes workers who are engaged in activities that the IRS Notice 2006-89

identified as commercial in nature. IRS Notice 2006-89 identified commercial employees as

including those 'employed by a hotel, casino, service station, convenience store, or marina.'

WMAT acknowledges that during the relevant period it operated Sunrise Park Resort, Hawley

Lake Cabins, and Hon-Dah Resort Casino and Conference Center. It also acknowledges that its

plan includes employees of these operations." (citations and footnote omitted)); *see also* Attach.

A at 20 (stating under oath, as an attachment to Plaintiff's 2012 Form 5500, that "[t]he Plan

includes employees engaged in activities identified as 'commercial' in [IRS] Notice 2006-89");

Attach. B at 20 (stating under oath, as an attachment to Plaintiff's 2013 Form 5500, that "the

Tribe . . . has operated the Plan in compliance with the non-government rules for all employees

deemed commercial for purposes of the IRS transition relief appearing in [IRS] Notice 2006-89 and Notice 2007-67"); Attach. C. at 21 (stating under oath, as an attachment to Plaintiff's 2014 Form 5500, that "the Tribe . . . has operated the Plan in compliance with the non-government rules for all employees deemed commercial for purposes of the IRS transition relief appearing in [IRS] Notice 2006-89 and Notice 2007-67"). No allegation in the complaint contests this fact. Under "any commonsense understanding of 'commercial activities,'" such employees are engaged in commercial activities. *See id*; Second Final Order at 13–14. This understanding is reinforced by ERISA's broad definitions of "commerce" and "industry or activity affecting commerce" in 29 U.S.C. § 1002(11) and (12). In line with those definitions, the "governmental plan" definition broadly excludes plans covering employees performing an ITG's "commercial" activities, *even if those activities could also be characterized as "essential governmental functions."* 29 U.S.C. § 1002(32) ("in the performance of commercial activities (whether or not an essential government function")).

The PPA's extrinsic material supports the conclusion that the Plan is not included in the "governmental plan" definition. Congress's Joint Committee on Taxation explained, "a governmental plan would not include a plan covering tribal employees who are employed by a hotel, casino, service station, convenience store, or marina operated by a tribal government." *See Joint Committee Explanation* at 244. In contrast, "a governmental plan would include a plan of a tribal government all of the participants of which are teachers in tribal schools." *Id.* While not legislative history per se, courts still may look to the Joint Committee's technical explanations to clarify a statute's meaning. *See, e.g.*, *Hutchinson v. Comm'r*, 765 F.2d 665, 669–70 (7th Cir. 1985) (ruling that, while the Joint Committee on Taxation's General Explanation of the Tax Reform Act of 1976 was not legislative history, "[n]evertheless, such explanations are highly

19

indicative of what Congress did, in fact, intend."); *Estate of Wallace v. Comm'r*, 965 F.2d 1038, 1050 n. 15 (11th Cir.1992) ("We cite the General Explanation not as an expression of legislative intent, as it was prepared by committee staff after enactment of the statute, but as a valuable aid to understanding the statute. We accord it no weight as binding authority on legislative intent.").

Every court that has considered this question has reached the same answer: after the PPA, an ITG plan is not a governmental plan when it covers employees whose job involves engaging in commercial activities, including employees of casinos, hotels, or restaurants owned or operated by the ITG. *Dobbs*, 600 F.3d at 1285; *Little River Band of Ottawa Indians v. Blue Cross Blue Shield of Mich.*, 183 F. Supp. 3d 835, 839–42 (E.D. Mich. 2016); *Coppe v. Sac & Fox Casino Healthcare Plan*, No. 2:14-CV-02598-GLR, 2015 WL 6806540, at *3–5 (D. Kan. Nov. 5, 2015) (ITG plan covering deli clerk and security guard for ITG-owned casino not a governmental plan); *Stopp v. Mut. of Omaha Life Ins. Co.*, No. CIV-09-221-FHS, 2010 WL 1994899, at *3 (E.D. Okla. May 18, 2010) (ITG plan covering hotel, restaurant, and casino employees not a governmental plan); *Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 881–83 (E.D. Wis. 2009) (plan covering ITG-owned casino employees was not a governmental plan post-PPA).

In sum, (1) the PPA's text and extrinsic material, (2) the undisputed and admitted facts about Plaintiff and the Plan, and (3) case law considering this question all make clear that ERISA applies to Plaintiff and the Plan. Plaintiff thus violated 29 U.S.C. § 1021(b)(1) three times, when it did not file a satisfactory annual report and IQPA statement in 2012, 2013, and 2014.

2. *ERISA applied to ITG-sponsored employee benefit plans covering commercial employees before the PPA's passage.*

Viewed in historical context, it is no surprise that ERISA applies to Plaintiff and the Plan post-PPA. The 2006 amendment must be interpreted in light of preexisting case law. "The normal

rule of statutory construction is that if Congress intends for legislation to change the

interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank

v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986). By the time Congress enacted the PPA in

2006, courts had already applied labor laws to analogous "commercial" activities performed by

tribe-owned entities, including entities located within Indian reservations. Under the analysis

adopted by the circuit courts, *see Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir.

1985), labor laws like ERISA apply equally to "Indians and their tribes" as "statutes of general

applicability, just as any other United States citizen." *Solis v. Matheson*, 563 F.3d 425, 430 (9th

Cir. 2009) (citing *Coeur d'Alene*, 751 F.2d at 1115). "Other cases have similarly affirmed

[ERISA's] application . . . to tribal businesses" as a statute of general applicability. *Id.* at 432–33

(citing *Lumber Indus. Pension Fund*, 939 F.2d at 684–85; *Smart*, 868 F.2d at 935–36 (applying

ERISA to health care facility owned and operated by tribe and located on tribal land)).

Under this longstanding pre-PPA case law, tribal businesses similar to those at issue here

were considered "commercial." And in past enforcement actions affirmed by the courts, the

Secretary has consistently viewed tribal businesses, like those Plaintiff operates, to be

"commercial" under other labor laws. In one of the earliest cases raising this issue, *Donovan v.

Coeur d'Alene Tribal Farm*, the U.S. Court of Appeals for the Ninth Circuit adopted the

Secretary's position and applied the Occupational Safety and Health Act ("OSH Act") to a tribe-

owned farm. There, the Ninth Circuit held that "[t]he operation of a farm that sells produce on the

open market and in interstate commerce is not an aspect of tribal self-government. Because the

Farm . . . is in virtually every respect a normal commercial farming enterprise, we believe that its

operation free of federal health and safety regulations is 'neither profoundly intramural . . . nor

essential to self-government.'" 751 F.2d at 1116 (citation omitted).

In *Reich v. Mashantucket Sand & Gravel*, the U.S. Court of Appeals for the Second Circuit considered whether the OSH Act applied to "Mashantucket Sand & Gravel ('MSG')[, which] is in the construction business [and] wholly owned and operated by . . . a federally recognized Indian tribe. . . . It works as an arm of the tribe, only on construction sites within the confines of its own reservation." 95 F.3d 174, 175 (2d Cir. 1996). Agreeing with the Secretary's position, the Second Circuit concluded that "[w]hen all is said and done, MSG is in the construction business; and its activities are of a commercial and service character, not a governmental character." *Id.* Using the same logic, the Secretary has issued citations against other tribe-owned-and-operated entities on reservations for OSH Act violations, which courts later affirmed. *See, e.g.*, *Dep't of Labor v. Occupational Safety & Health Review Comm'n*, 935 F.2d 182, 184 (9th Cir. 1991) (applying OSH Act to timber mill that an ITG operated on its reservation); *see also Menominee Tribal Enters. v. Solis*, 601 F.3d 669, 671 (7th Cir. 2010) (applying OSH Act to an ITG-owned "sawmill, a commercial enterprise").

Decisions applying other federal labor and employment statutes are also consistent with the Secretary's position, including their application to tribe-owned casinos and restaurants. *See, e.g.*, *Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1129 (11th Cir. 1999) (holding Americans with Disabilities Act applied to tribe-operated restaurant and gaming facility, which are "commercial enterprise[s] open to non-Indians from which the Tribe intends to profit"); *Pauma v. Nat'l Labor Relations Bd.*, 888 F.3d 1066, 1077 (9th Cir. 2018), (National Labor Relations Act applied to ITG-owned-and-operated casino as law of general applicability), *cert. denied* 139 S. Ct. 2614 (2019). And as noted earlier, this analysis was also applied to ERISA prior to the PPA's enactment. *See Smart*, 868 F.2d at 932–33; *Ramirez v. Potawatomi Bingo Casino*, No. 06-C-322, 2006 WL 3327142, at *1 (E.D. Wis. Nov. 15, 2006) (ERISA applied to

IGT-sponsored benefit plans covering casino employees because "the plans in question cover employees engaged in routine commercial activities"); *Koopman v. Forest Cnty. Potawatomi Member Benefit Plan*, No. 06-C-0613, 2006 WL 538601, at *3 (E.D. Wis. Feb. 15, 2006) (ERISA applied to ITG-maintained benefit plan "despite its status as an independent sovereign").

Under this case law finding tribe-owned farms, casinos, restaurants, sawmills, *et alia*, "commercial" in nature, Plaintiff's economic activities clearly qualify as "commercial." Not surprisingly, since the PPA was enacted, courts have continued to correctly hold that ITG employees who work in casinos are commercial employees under 29 U.S.C. § 1002(32), and that ITG plans covering them are therefore not ERISA-excepted governmental plans. *See supra* § IV.A.1.

### 3. Plaintiff's contrary arguments are meritless.

Plaintiff suggests otherwise, baldly alleging that all its employees' job duties are "essential government functions." Am. Compl. ¶ 129. But Congress anticipated and rejected that argument when it explicitly provided in the PPA that so long as a job entails commercial duties, it is irrelevant whether or not those duties are also essential government functions; the commercial nature governs. 29 U.S.C. § 1003(32). So even if an ITG plan's participants include ITG employees whose primary job duties are both "commercial activities" *and* "essential government functions," by ERISA's plain text, that ITG plan does not come under Title I's governmental-plan exception.

Viewed liberally, the complaint also alleges that the Secretary either adopted the IRS notices, violated them, or both. Am. Compl. ¶¶ 28, 86, 142. None of these is correct: the IRS notices do not apply to the Secretary or ERISA Title I. Neither notice mentions the Secretary, ERISA's annual report, or the report's required IQPA statement, and ERISA Title I appears only

once, referenced in a nonsubstantive footnote, IRS Notice 2006-89 n.1. The Secretary of Labor—

and not the Secretary of the Treasury—regulates and enforces the reporting requirements under

ERISA Title I.[4] *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 997 (9th Cir. 2010)

("The Secretary of Labor has primary authority to interpret and to enforce the fiduciary, reporting

and disclosure provisions of Title I of ERISA."); *Devlin v. Transp. Commc'ns Int'l Union*, No. 95

CIV 10838 (JFK), 1997 WL 634179, at *10 (S.D.N.Y. Oct. 15, 1997) ("Secretary of Labor . . . is

specifically authorized to define the terms of ERISA"), *aff'd in part, vacated in part*, 175 F.3d 121

(2d Cir. 1999). Thus, the transition relief under the Code does not extend to relief from

enforcement under ERISA Title I.

Under the IRS notices, the transition relief relates only to a plan's status under IRC

§ 414(d). For example, Notice 2006-89 states that until guidance is issued, a plan established and

maintained by an ITG for its employees will be treated as satisfying the requirements to be a

governmental plan under IRC § 414(d), as amended by section 906(a)(1) of the PPA, if it

complies with those requirements based on a reasonable and good faith interpretation of the

amendment to § 414(d), as amended by section 906(a)(1) of the PPA, and not to 29 U.S.C.

§ 1102(32) or any other provision of ERISA Title I.

Plaintiff's conclusory allegation that the Secretary adopted the IRS notices is incorrect. And

indeed, the final orders Plaintiff is challenging confirm the opposite. "The only reliance EBSA

seems to have made of the IRS Notices in this case is in establishing the point that running a

casino or a resort are commercial activities. That is a proper implication and in accord with

---

[4] *See generally* Executive Order 12,108 (effectuating the Reorganization Plan No. 4 of 1978, 43
Fed. Reg. 47,713 (Oct. 17, 1978), 5 U.S.C. *Appendix*).

common sense. As to the more involved issue of what the IRS is requiring in the notices, it isn't relevant since this isn't an IRS enforcement matter." Second Final Order at 19.

In sum, Plaintiff's allegations about the IRS notices are irrelevant to this case and reveal no wrongdoing by the Secretary. ERISA Title I does not incorporate the notices, and the notices do not apply to ERISA Title I or any of the Secretary's responsibilities.

*     *     *

Based on the foregoing, ERISA Title I applies to Plaintiff and the Plan, and its governmental-plan exception does not. Thus ERISA required Plaintiff to file an annual report with the Secretary, one that included an IQPA statement, in 2012, 2013, and 2014. It is an undisputed fact that Plaintiff failed to do so. Am. Compl. ¶ 59; Attachs. A, B, C. Based on those failures, Plaintiff violated ERISA, and the Secretary addressed those violations by invoking his discretion to issue penalties under § 1132(c)(2). Because Plaintiff's incorrect allegation that the Plan is exempt from ERISA Title I is the prime basis Plaintiff provides for its entitlement to injunctive relief, this Court should dismiss Count II.[5]

## B. *Count III Does Not State a Claim under the Administrative Procedure Act*

Count III seeks to set aside the Secretary's final orders under 5 U.S.C. § 706(2) of the Administrative Procedure Act. Am. Compl. ¶ 203. The APA presumes reviewability of final agency actions, *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1816 (2016); 5 U.S.C. § 704, and Plaintiff alleges two of them: the Secretary's two decisions to assess penalties against it. Am. Compl. ¶¶ 70, 79. To the extent Count III contends that the Plan is a governmental

---

[5] Count II argues alternatively that the Secretary's alleged violation of "its own Mitigation Regulations regarding Form 5500 penalty waivers and mitigation." Am. Compl. ¶ 193. This argument overlaps with Plaintiff's arguments for relief in Counts I and III. As explained in § Argument.C, *supra*, such allegations do not state a claim, and indeed are unreviewable, under § 1132(k).

plan outside the bounds of ERISA Title I, and that the legal predicates for the penalties thus were

not satisfied, this Court must dismiss for the reasons set forth in § IV.A above. And to the extent

Count III challenges the Secretary's discretionary decisions to enforce ERISA (and to not waive

the penalties ERISA authorizes), as explained below, such decisions come squarely within 5

U.S.C. § 701(a)(2), a limited APA exception to judicial review. Alternatively, even if they were

reviewable, the complaint still fails to plausibly allege that the Secretary's decisions were an

abuse of discretion, as discussed in another section below. *See supra* § IV.D.

   *1. The Secretary's discretionary decisions to assess statutorily authorized penalties
   are unreviewable under § 701(a)(2) of the APA.*

   "[B]efore any review at all may be had, a party must first clear the hurdle of section

701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a)(2) explicitly "bars judicial

review of agency action when the matter in dispute has been 'committed to agency discretion by

law.'" *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); *Citizens for Resp. & Ethics in Wash. v.

Fed. Election Comm'n*, 892 F.3d 434, 441 (D.C. Cir. 2018) (if § 701(a)(2) applies, "there can be

no judicial review for abuse of discretion, or otherwise"). "Agency action is committed to agency

discretion by law when 'the statute is drawn so that a court would have no meaningful standard

against which to judge the agency's exercise of discretion.'" *Steenholdt v. FAA*, 314 F.3d 633, 638

(D.C. Cir. 2003) (quoting *Heckler*, 470 U.S. at 830). Courts may find judicially manageable

standards in "regulations as well as in statutes, but if a court examines all these possible sources

and concludes that there is, in fact, 'no law to apply,' judicial review will be precluded." *Padula

v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (quoting *Citizens to Preserve Overton Park, Inc. v.

Volpe*, 401 U.S. 402, 410 (1971)). To determine if there is "no law to apply," courts "consider both

the nature of the administrative action at issue and the language and structure of the statute that

supplies the applicable legal standards for reviewing that action." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006).

The D.C. Circuit has explained that § 701(a)(2) "imposes two related, but distinct, barriers to judicial review." *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 642 (D.C. Cir. 2020). First, "notwithstanding the APA's background presumption of reviewability," courts presume certain actions are *unreviewable*, *id.* (citing *Heckler*, 470 U.S. at 832), like "agency enforcement decisions," *Citizens for Resp.*, 892 F.3d at 441 (D.C. Cir. 2018). "This presumption [of unreviewability] is not absolute and 'may be rebutted where the relevant statute supplies meaningful standards to cabin the agency's otherwise plenary discretion.'" *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting *Drake*, 291 F.3d at 71). Second, "even if agency action is presumptively reviewable, section 701(a)(2) also applies 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Wheeler*, 956 F.3d at 642 (quoting *Overton Park*, 401 U.S. at 410). So § 701(a)(2)'s bar applies too where "courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Twentymile Coal Co.*, 456 F.3d at 156.

a. After following the procedures set out in his implementing regulations, the Secretary decided to assess (rather than waive) penalties against Plaintiff under § 1132(c)(2), to address its repeated violations of ERISA's annual-report requirement. *See* Compl. ¶ 59. No court has passed on the question of how the § 701(a)(2) reviewability exception applies to a final agency action under § 1132(c)(2). But where the question is whether a court may review the Secretary's discretionary decision to assess or waive a legally authorized penalty, ERISA's plain language provides a clear answer. To start, the Secretary's decision to issue a § 1132(c)(2) penalty in the

first place is an enforcement decision that takes a presumption of APA *unreviewability* in this Circuit. As a general matter, "[t]he Secretary[ of Labor's] decision to assess . . . penalties reflects use of an enforcement tool within her authority." *Kaspar Wire Works, Inc. v. Sec'y of Labor*, 268 F.3d 1123, 1131 (D.C. Cir. 2001). Section 1132 is titled "Civil Enforcement," and it is located in Part 5 of ERISA Title I, which is titled "Administration and Enforcement." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 221–24 (2012) ("Titles and headings are permissible indicators of meaning."); *accord Freedom Watch, Inc. v. McAleenan*, No. 19-CV-1374 (RC), 2020 WL 922909, at *11 (D.D.C. Feb. 26, 2020) ("Significantly, the cited provision is self-evidently an enforcement provision based on § 270.2's very title: 'Enforcement procedures.' 8 C.F.R. § 270.2."). Section 1024(a)(5) exclusively provides the Secretary with several options for enforcing ERISA's annual-report requirement, including the discretion to issue civil penalties under § 1132(c)(2). 29 U.S.C. §§ 1024(a)(5)(D), 1132(c)(2).

This Circuit has confirmed that "the administrative charging decisions of the Secretary of Labor" are generally unreviewable, as those decisions are indistinguishable from the "traditional nonreviewability of prosecutorial charging decisions." *Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006) (Mine Safety and Health Act). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (quoting *Wayte*, 470 U.S. 598, 607 (1985)). Indeed, an "agency's exercise of its enforcement discretion" is "an area in which the courts have traditionally been most reluctant to interfere." *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986); *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1033 (D.C. Cir. 2007) ("Decisions about whether and how to enforce the Acts against certain facilities are left to

the discretion of the agency."); *accord Speed Mining, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 528 F.3d 310, 318 (4th Cir. 2008); *Angelex Ltd. v. United States*, 723 F.3d 500, 507 (4th Cir. 2013).

So the Secretary's decision to issue a § 1132(c)(2) penalty, where the statutory predicates for the penalty are met, is the type of enforcement decision that this Circuit presumes to be unreviewable under the APA. To overcome that presumption, Plaintiff must identify some meaningful limitation on the Secretary's prosecutorial discretion in § 1132 or its implementing regulations. *Twentymile Coal Co.*, 456 F.3d at 157; *Drake*, 291 F.3d at 71 (D.C. Cir. 2002). Plaintiff's allegations identify no such pertinent limitation.

Section 1132(c)(2) states, "The Secretary *may* assess a civil penalty against any plan administrator" upon their violation of ERISA's annual-report requirement. 29 U.S.C. § 1132(c)(2) (emphasis added). "[U]se of 'may' indicates" discretion. *LO Shippers Action Comm. v. I.C.C.*, 857 F.2d 802, 806 (D.C. Cir. 1988); *see, e.g.*, *Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007) ("Employing conditional terms such as "may" and "at any time," the statute uses language that is indicative of administrative discretion."); *Tashima v. Admin. Off. of U.S. Courts*, 967 F.2d 1264, 1273 (9th Cir. 1992) (statute's use of term "may" indicates Congress granted decisionmaker discretion); *Watervale Marine Co. v. U.S. Dep't Homeland Sec.*, 55 F. Supp. 3d 124, 143 (D.D.C. 2014). Plaintiff pleads the same: "The . . . penalties at issue are within the discretion of DOL." Am. Compl. ¶ 119; *cf.* 29 U.S.C. § 1132(*l*) (requiring the Secretary to assess a penalty under certain conditions, and granting the Secretary discretion to waive that required penalty).[6]

---

[6] Outside the enforcement context and its presumption of unreviewability, the D.C. Circuit has reviewed provisions that do not fully commit non-enforcement decisions to the agency even though the statute uses the word "may." *See Dickson v. Sec'y of Def.,* 68 F.3d 1396, 1401 (D.C. Cir. 1995).

To be sure, the presumption of unreviewability may be overcome if the Secretary's prosecutorial discretion in § 1132 or its implementing regulations is cabined by some meaningful limitation. *Twentymile Coal Co.*, 456 F.3d at 157; *Drake*, 291 F.3d at 71 (D.C. Cir. 2002). While § 1132(c)(2) does set some limits on the Secretary's discretion, they are plainly satisfied and thus are not relevant here. First, the assessed penalty may not exceed $1,100 per day of noncompliance. 29 U.S.C. § 1132(c)(2); *supra* n.2. Second, the Secretary can issue a penalty only if a plan administrator subject to ERISA first violates the reporting requirement of §§s 1021(b)(1) and 1024(a). *Id.* Neither matters to this case. The amended complaint never alleges that the penalties assessed against Plaintiff exceeded their statutory or regulatory bounds. But it does concede the facts of Plaintiff's ERISA violations—i.e., filing annual reports without the required IQPA statement. Because ERISA Title I applies to Plaintiff and the Plan, *see supra* IV.A.4, all that remains under the statute is the Secretary's decision to issue a penalty or not. That enforcement decision is subject to the Secretary's complete discretion, by ERISA's plain terms, making it unreviewable under the APA. *See Reich v. Valley Nat. Bank of Ariz.*, 837 F. Supp. 1259, 1302 (S.D.N.Y. 1993) (ERISA provision saying "Secretary may" prescribe regulations was "not subject to judicial review under APA § 701(a)(2)" because "[t]he language of this section is quintessentially permissive" and "[t]here is no 'shall' language which would make the failure . . . reviewable by this court"); *see Johnson v. U.S. Dep't of Agric.*, 52 F.3d 330 (8th Cir. 1995) (unpublished per curiam) (applying § 701(a)(2) to hold that a discretionary penalty assessment was unreviewable under APA).

b. One could read the amended complaint as asserting an APA claim over alleged violations of the Secretary's § 1132(c)(2) regulations. Yet even reading it liberally, the amended complaint still fails to state an APA claim. The amended complaint alleges that the Secretary "erred by

failing to adequately consider the Tribe's request for waiver, its showing of reasonable cause, and grounds for mitigation." Am. Compl. ¶ 71. Those terms appear in the Secretary's § 1132(c)(2) issuance regulation, but that regulation does not limit the Secretary's statutorily delegated discretion.

The issuance regulation requires the Secretary to "consider[] the degree and/or willfulness of" a plan administrator's annual-report violation when determining the amount of a § 1132(c)(2) penalty. 29 C.F.R. § 2560.502c-2(b)(1). But it never requires the Secretary to do anything more, no matter the violation's degree or willfulness. *See generally Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760–61 (2005) (finding that use of word "shall" in ordinance did not impose a mandatory duty and emphasizing "deep-rooted nature of law-enforcement discretion").[7] Instead, after the Secretary issues a proposed penalty and an administrator submits a reasonable-cause statement, the regulation *permits* the Secretary to reduce or waive the proposed penalty in a notice of determination. 29 C.F.R. § 2560.502c-2(c)–(e) (the Secretary "*may* determine that all or part of the penalty amount in the notice of intent to assess a penalty shall not be assessed" (emphasis added)). It does not require reduction or waiver, and the Secretary may not even consider doing so unless the administrator "show[s]" either: (1) it did not violate § 1021(b)(1), or (2) "mitigating circumstances regarding the degree or willfulness of the noncompliance." *Id.* 2560.502c-2(d).

---

[7] Nor does the Plaintiff indicate how the final decision failed to consider the information Plaintiff submitted. The amended complaint faults the Secretary for failing to "*adequately consider* the Tribe's request for waiver." Am. Compl. ¶ 71. In other words, Plaintiff understands that the Secretary considered its arguments for waiver as required by the regulation, but simply disagrees with the Secretary's conclusions. *See NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1076 (N.D. Cal. 2018) (dismissing plaintiff's claim after noting it "may have pleaded itself out of a claim").

Per the issuance regulation, the Secretary's decision to assess, reduce, or waive a statutorily authorized penalty is purely discretionary. Like the statutory provision, the issuance regulation makes clear that the Secretary "may" do any of those things, and nothing forces the Secretary's choice one way or another. *See* 29 C.F.R. § 2560.502c-2(c)–(e). As the Second Final Order aptly put it: "while the regulations provide direction on what is to be weighed, they do not provide guidance on how [the agency] should exercise its discretion." Second Final Order at 20. Thus, as in *Drake*, "[t]he only [regulatory] reference point is the [Secretary's] own beliefs," and the regulation does not cabin the Secretary's statutorily delegated discretion. *Drake*, 291 F.3d at 72.

c. Two more points are in order. First, the regulatory administrative procedures for issuing a § 1132(c)(2) penalty do not necessarily end with the issuance of a notice of determination. An administrator may still challenge the determination before an administrative law judge, and it may appeal an adverse ruling to the Secretary for a final decision. Indeed, that is what happened here, twice. Compl. ¶¶ 70, 79. The regulation governing the Secretary's decision on appeal reaffirms his broad discretion to decide if, when, and how to enforce ERISA's annual-report requirement. "The Secretary may affirm, modify, or set aside, in whole or in part, the decision on appeal and shall issue a statement of reasons and bases for the action(s) taken." 29 C.F.R. § 2570.71(b). The amended complaint does not allege that the Secretary's decisions omitted "a statement of reasons and bases for the action(s) taken," nor could it—the challenged final orders come in written form and provide reasons supporting the assessment of these penalties. *See* Attachs. D, E. Beyond that, we are again left with only the decisions to assess a statutorily authorized penalty against Plaintiff, and as this portion of the regulations verifies, those specific decisions remain within the Secretary's discretion throughout the administrative process.

Second, case law interpreting § 1132(*l*), another of ERISA Title I's remedial provisions, is instructive here. That provision requires the Secretary to assess a civil penalty against someone who has either (1) violated ERISA's fiduciary obligations, or (2) knowingly participated in such a violation. 29 U.S.C. § 1132(*l*)(1) ("the Secretary shall assess"). But it also states that "the Secretary may, in the Secretary's sole discretion, waive or reduce the penalty" if the violator or participant "acted reasonably and in good faith." Courts have explained that because Congress granted the Secretary complete discretion on the question of whether to reduce or waive a § 1132(*l*) penalty after assessment, a "denial of [a] request for a waiver or reduction of that civil penalty is not" reviewable under the APA, in accord with § 701(a)(2). *Huffer v. Herman*, 168 F. Supp. 2d 815, 820 (S.D. Ohio 2001); *Rodrigues v. Reich*, No. 94-civ-20517, 1996 WL 37794, at \*5 (N.D. Cal. Jan. 25, 1996) (holding the same), *aff'd*, 121 F.3d 1352 (9th Cir. 1997). Section 1132(c)(2)'s regulation about penalty reductions and waivers is a near-identical regime to § 1132(*l*)'s waiver proviso—both use the permissive "may," and both guide the Secretary's decision without mandating a particular result or otherwise limiting his enforcement discretion to penalize a violator within statutory bounds. Thus these § 1132(*l*) cases provide additional force to the textual arguments laid out above.

*     *     *

For these reasons, Count III fails to state a claim. The APA bars review of Plaintiff's allegations over the Secretary's discretionary decisions to enforce ERISA's annual-report requirement against it. This Court should therefore dismiss Count III of Plaintiff's complaint.

### C. Count I Fails to State a Claim under 29 U.S.C. § 1132(k) for Reimbursement of the Assessed Penalties

Count I requests reimbursement of the penalties under 29 U.S.C. § 1132(k), which is a limited waiver of the United States' immunity from suit. *See Francis v. Perez*, 256 F. Supp. 3d 1,

6 (D.D.C. 2017). It authorizes plan administrators to sue the Secretary "to review a final order of the Secretary, to restrain the Secretary from taking any action contrary to the provisions of this chapter, or to compel him to take action required under [Title I]." 29 U.S.C. § 1132(k). Plaintiff seeks in Count I only to review a "final order"—the Secretary's penalty assessments. *See* Am. Compl. ¶ 175. Plaintiff contends that, in connection with the assessments, the Secretary violated the law in five respects: (1) failing to properly consider Plaintiff's willfulness in deciding to mitigate the penalties, as required by the § 1132(c)(2) issuance regulation, *see* Am. Compl. ¶¶ 176-78; (2) failing to properly consider Executive Order 13,175 and DOL's tribal consultation policy; (3) applying § 1132(c)(2) inconsistently; (4) failing to "provide the Tribe notice of [ERISA's] requirements before enforcement, and prior notice of changes to the deadlines and other conditions for [IRS] Transition Relief"; and (5) failing "to coordinate Transition Relief and consultation efforts with Treasury." Am. Compl. ¶¶ 179–182.

None of these bases states a claim. As to the "mitigation" decisions—i.e., the Secretary's decisions to assess the proposed penalty instead of waiving or reducing it—section IV.B, *supra*, explains that the issuance regulation vests the Secretary with discretion to waive penalties; it does not require the Secretary to do so.  29 C.F.R. § 2560.502c-2(c)–(e). And because courts traditionally lack jurisdiction to review an agency's discretionary enforcement decisions, Count I fails to state a claim on this point. The other alleged transgressions have no basis in ERISA, which requires the Secretary to do none of the things Plaintiff lists. Instead, ERISA provides the Secretary discretion to enforce Title I's annual-report requirement, and that is all the Secretary did. This Court should dismiss Count I.

*1. The amended complaint does not allege a cognizable § 1132(k) claim over the final orders.*

As related above, the Secretary issued two final orders assessing penalties against Plaintiff. The amended complaint provides little insight into what they said or the rationales they contain. The absence is telling. Besides the incorrect assertion that Title I's governmental-plan exception applies, the complaint does not allege that the orders, and the penalties they issued, were otherwise unlawful. And the complaint does not contest any facts recited by them. Instead, it alleges that the Secretary should have waived the penalties for various policy reasons, based on his "mitigation regulations." Am. Compl. ¶ 159–161.

At the outset, because Plaintiff's APA claims fails, Count I must fail along with it, as Plaintiff cannot use § 1132(k) as an end-run around the APA. The APA expressly provides a cause of action for "agency action made reviewable by statute" like § 1132(k), *see* 5 U.S.C. § 704, and ERISA Title I explicitly subjugates itself to the APA's reviewability procedures, including its reviewability limits, 29 U.S.C. § 1137(a). ERISA's federal-laws savings clause also makes clear that "[n]othing in [ERISA Title I] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). Applying more lenient reviewability rules to § 1132(k) than the APA would contravene these provisions by rendering the APA irrelevant in the ERISA context. Not just that, it would render § 1137(a) superfluous. *See Hospital Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018) (discussing canon of construction against surplusage); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 174–179 (2012) (same).

Putting this fatal defect aside for a moment, even without the APA, Plaintiff's argument would still fail, for the same reasons as its APA claim—the Secretary's discretionary decisions over when and how to enforce ERISA are simply unreviewable under § 1132(k), as those types of

35

claims do not come under its limited waiver of sovereign immunity. *Cf. Cox v. Sec'y of Labor*, 739 F. Supp. 28, 30 (D.D.C. 1990) (ERISA Title I "provides the Secretary with the discretion to investigate and bring suit with respect to a particular pension plan"); *Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at *6 (D.D.C. Sept. 15, 2016) (§ 1132(k) does not apply to claims over things the Secretary of Labor is not required to do); *Mallick v. Usery*, 427 F. Supp. 964, 966 (W.D. Pa. 1977) ("Section 502(k) of ERISA is not appropriate to this action because plaintiffs are not seeking to compel the Secretary to take any action required under Subchapter I of ERISA."); *Dillon v. Dole*, Civ. No. LR-C-89-545, 1989 WL 162389, at *2 (E.D. Ark. Oct. 25, 1989) ("enforcement action . . . is not mandatory, but is committed to the Secretary's discretion . . . and therefore does not fall within the jurisdictional provision of 29 U.S.C. § 1132(k)").

Indeed, the D.C. Circuit has explained that the APA's reviewability bar for discretionary agency actions comes from a more general, traditional limitation against the same type of judicial review. *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986). That understanding is consistent with the long line of cases holding that while a court may review an affirmative enforcement decision on its merits, it may not review the discretionary decision to enforce or not enforce the law in the first instance (whether through a penalty waiver or otherwise). *See United States v. Morris*, 23 U.S. 246 (1825) (no judicial review of Secretary of Treasury's decision not to waive penalty); *Wayte v. United States*, 470 U.S. 598, 607 (1985) (noting that "the decision whether or not to prosecute . . . generally rests entirely in [the prosecutor's] discretion" and "is particularly ill-suited to judicial review" (internal quotation marks omitted)); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (same); *United States v. Nixon*, 418 U.S. 683, 693 (1974) (same); *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 318 (1958) ("But where the duty to act turns on matters of doubtful or highly debatable inference

from large or loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion. We then must infer that the decision to act or not to act is left to the expertise of the agency burdened with the responsibility for decision." (citations omitted)); *see also Board of Trade of Chicago v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989) (no-action letter from the Securities and Exchange Commission unreviewable, despite proviso in 15 U.S.C. § 78y that "[a] person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals"); *Chernock v. Gardner*, 360 F.2d 257 (3d Cir. 1966) (fee award by the Social Security Administration unreviewable, notwithstanding 42 U.S.C. § 405(g), which states that "[a]ny individual, after any final decision of the Secretary . . . , may obtain review of such decision").

To be clear, *not all* challenges to the Secretary's assessment of § 1132(c)(2) penalties are unreviewable. A plaintiff might allege that the Secretary issued a penalty without first issuing a notice of intent to issue a penalty, or issued a penalty for his own corrupt "financial or personal interest," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980). A different plaintiff might allege that the Secretary issued a penalty in violation of the statutory or regulatory penalty-amount limitations, or that the plaintiff did in fact meet its filing obligations. When plausibly asserted, the APA and § 1132(k) embrace claims like those, as they challenge the legal bases for the penalty and can be evaluated against "judicially manageable standards." *Heckler,* 470 U.S. at 830. But that's not what Plaintiff advances. Instead, Plaintiff challenges the Secretary's purely discretionary decisions whether to issue or waive a penalty. Those specific types of claims are unreviewable under § 1132(k), per the long tradition of unreviewability for agency enforcement decisions.

2. *The Secretary did not violate ERISA through Executive Order 13,175 or his Tribal Consultation Policy*

The complaint alleges that the Secretary "breached" "duties referred to in Executive Order 13175, DOL consultation policies, and those arising out of the federal trust responsibilities and/or common law duties and obligations owed by the United States to the Tribe." Am. Compl. ¶¶ 179, 183. Executive Order 13,175 states that, "[t]o the extent practicable," "no agency shall promulgate any regulation that has tribal implications, that imposes substantial direct compliance costs on Indian tribal governments, and that is not required by statute, unless" it has consulted with tribal officials first. Exec. Order No. 13,175, § 5(b), 65 Fed. Reg. 67,249, 67,250 (Nov. 6, 2000). But this case involves civil enforcement proceedings, 29 U.S.C. § 1132(c)(2) (Secretary may impose "a civil penalty"), and the final orders that resulted from them; it has nothing to do with promulgating regulations. And even if the Executive Order did apply, it is not "a provision of [ERISA]," so as a matter of pleading, violating it would not give rise to a § 1132(k) claim.

Plaintiff's reliance on the Secretary's internal consultation policy has similar flaws. DOL, Tribal Consultation Policy, 77 Fed. Reg. 71,833-01 (Dec. 4, 2012). The consultation it discusses applies only to the promulgation of regulations. And in any event, it makes clear that "the framing and shaping of the Department's enforcement policies are not appropriate subjects for consultation." *Id.*

So neither the Order nor the policy applies to this case, and more importantly, a violation of them is not an ERISA "breach" or "violation." Indeed, both explicitly disclaim that they do not create any enforceable rights, Exec. Order No. 13,175, § 10; 77 Fed. Reg. at 71,842, § XI(3), much less ERISA ones. *See N. Arapaho Tribe v. Burwell*, 118 F. Supp. 3d 1264, 1281 (D. Wyo. 2015) (no right to sue for Treasury Department's alleged failure to consult tribes before issuing a regulation stating that tribes are subject to the Affordable Care Act's large-employer mandate), *appeal*

*dismissed*, No. 15-8099 (10th Cir. Mar. 4, 2019); *Sec'y of Labor v. Turning Stone Casino Resort*, 21 O.S.H. Cas. (BNA), 2005 WL 957122, at *6 (Dep't of Labor, Occupational Safety & Health Rev. Comm. 2005) (Executive Order 13,175 creates no enforceable rights). And these same problems apply to Plaintiff's vague and conclusory assertions of non-ERISA common law duties of trust owed by the United States to Tribes—which the complaint references only once, under Count I, without further explanation or allegation. Am. Compl. ¶ 179; *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005) ("To survive a motion to dismiss, the plaintiff must make factual allegations that are neither vague nor conclusory and that cover all the elements that comprise the theory for relief." (cleaned up)).

### 3. The Remaining Acts Listed in Count I Are Not ERISA Violations

The amended complaint alleges that the Secretary has enforced ERISA's reporting requirements inconsistently. Am. Compl. ¶¶ 141, 181, 183. But the facts of each ERISA penalty case are unique, so differences in penalty determinations are not evidence of some improper discrepancy—instead, they reflect the Secretary's permissible exercise of prosecutorial discretion in enforcing ERISA Title I. *See Cuyahoga Valley R. Co. v. United Transp. Union*, 474 U.S. 3, 5 (1985) (per curiam) (discussing DOL's prosecutorial discretion under Occupational Safety and Health Act); *Heckler v. Chaney*, 470 U.S. 821 (1985); *UAW v. Brock*, 783 F.2d 237, 244–45 (D.C. Cir. 1986). And more pertinent, no ERISA provision requires the Secretary to exercise his discretion in the way the complaint demands. *See Saunders*, 2016 WL 4921418, at *6; *Simon v. Kaiser Permanente Hosps.*, No. C 06-03913 SI, 2006 WL 3318094, at *3 (N.D. Cal. Nov. 15, 2006).

The amended complaint also alleges the Secretary failed to provide Plaintiff "notice" of his interpretation of the 2006 amendment to § 1002(32). Am. Compl. ¶ 181. But putting aside the

possibility of administrative deference applying here, the Secretary and Plaintiff are on even footing—Congress spoke plainly with its amendment, and the Secretary relied on traditional tools of statutory construction to interpret the expanded scope of Title I's governmental-plan exception. *Hentif v. Obama*, 733 F.3d 1243, 1246 (D.C. Cir. 2013) ("The court's interpretation naturally begins with the statutory text and the presumption that Congress has employed the ordinary meaning of the words it used unless there are reasons to indicate it intended another meaning."). ERISA does not require the Secretary to issue explanatory rules, much less provide individualized notices about how to interpret the law. "[S]ince the promulgation of regulations . . . is not required, suit against the Secretary cannot be maintained under § 1132(k)." *Reich v. Valley Nat. Bank of Arizona*, 837 F. Supp. 1259, 1302 (S.D.N.Y. 1993).

Finally, the complaint alleges that the Secretary failed to coordinate with IRS when the latter issued its Transition Relief Notices. This is untrue, but more importantly, is completely untethered to any statutory or regulatory requirement. The allegation does not contend that the Secretary violated ERISA, or failed to do something ERISA compels him to do. As explained above, the IRS notices do not apply to Title I, and thus provide Plaintiff no defense for its ERISA violations.

*     *     *

For these reasons, Count I must fail, as it alleges no plausible claim for relief under § 1132(k). Section 1132(k) does not waive the Secretary's sovereign immunity over discretionary enforcement decisions. And Count I's other allegations supporting reimbursement do not identify any law or policy that the Secretary transgressed in issuing its decisions. This Court should therefore dismiss Count I.

### D. This Court Should Dismiss Any Remaining Stray Allegations

The amended complaint's Wherefore Clause includes a laundry list of requests it calls "[d]eclaratory relief." Compl. § Wherefore, ¶ 4. To the extent those requests relate to the relief sought in Counts I through III, this memorandum has already addressed them. The rest do not provide a reason *why* this Court may grant the declaration requested. *L. Xia v. Tillerson*, 865 F.3d 643, 660 (D.C. Cir. 2017) ("conclusory allegation" of unlawfulness insufficient to survive Rule 12(b)(6) motion). A number of the requests appear directed at relief that would apply to all Indian tribal governments; but Plaintiff lacks standing to request relief for parties other than itself. *See, e.g.*, *Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1230 (11th Cir. 2000) ("Absent exceptional circumstances, a third party does not have standing to challenge injury to another party.").

Finally, the complaint does not plausibly allege that the Secretary abused his discretion in issuing the challenged final orders; instead, it shows that Plaintiff violated ERISA, Am. Compl. ¶ 59, and that the Secretary considered the information Plaintiff submitted, *id.* ¶ 71 ("DOL erred by failing to *adequately consider* the Tribe's request for waiver, its showing of reasonable cause, and grounds for mitigation." (emphasis added)). And it does not suggest that the Secretary issued penalties in excess of statutory limits. Plaintiff never even addresses the content of the Secretary's decisions. Giving the complaint a liberal reading, the Secretary discerns no other non-conclusory allegations for relief. *Tillerson*, 865 F.3d at 660.

## CONCLUSION

For years, Plaintiff has searched in vain for a way to avoid complying with ERISA. Its argument has taken a variety of forms: that ERISA Title I does not apply to the Plan, that the IRS notices relieved Plaintiff of its ERISA Title I obligations, or that the Secretary violated Executive

Order 13,175 and his Tribal Consultation Policy. But in the end, Plaintiff simply wants to avoid filing an IQPA statement with its annual reports, without consequence. Congress remains the avenue for that relief—not the Department of Labor, and not this Court. Therefore, Defendants respectfully request that the Court dismiss Plaintiff's amended complaint in full, for lack of jurisdiction and failure to state a claim, for the reasons stated herein.

Dated: December 8, 2020                      Respectfully submitted,

                                             MICHAEL R. SHERWIN
                                             Acting United States Attorney

                                             DANIEL F. VAN HORN, D.C. Bar #924092
                                             Chief, Civil Division

                              By:   /s/ Sean M. Tepe
                                    SEAN M. TEPE, DC Bar #1001323
                                    Assistant United States Attorney
                                    555 Fourth St., N.W.
                                    Washington, D.C. 20530
                                    Phone: (202) 252-2533
                                    Fax: (202) 252-2599
                                    Email: sean.tepe@usdoj.gov


                                    KATE S. O'SCANNLAIN
                                    Solicitor of Labor

                                    G. WILLIAM SCOTT
                                    Associate Solicitor for Plan Benefits Security

                                    JEFFREY M. HAHN
                                    Counsel for Litigation

                                    EIRIK CHEVERUD
                                    Trial Attorney
                                    Plan Benefits Security Division
                                    Office of the Solicitor
                                    U.S. Department of Labor
                                    200 Constitution Ave. NW, N4611
                                    Washington, DC 20210
                                    (202) 693-5516 (t) | (202) 693-5610 (f)
                                    cheverud.eirik.j@dol.gov

Attachment A

## Form 5500

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan

This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code).

▸ **Complete all entries in accordance with the instructions to the Form 5500.**

OMB Nos. 1210-0110
1210-0089

## 2012

**This Form is Open to Public Inspection**

| Part I | Annual Report Identification Information |
|---|---|

For calendar plan year 2012 or fiscal plan year beginning  05/01/2012      and ending      04/30/2013

**A** This return/report is for:  ☐ a multiemployer plan;  ☐ a multiple-employer plan; or

☒ a single-employer plan;  ☐ a DFE (specify) ____

**B** This return/report is:  ☐ the first return/report;  ☐ the final return/report;

☒ an amended return/report;  ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▸ ☐

**D** Check box if filing under:  ☒ Form 5558;  ☐ automatic extension;  ☐ the DFVC program;

☐ special extension (enter description)

| Part II | Basic Plan Information—enter all requested information |
|---|---|

**1a** Name of plan

WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN

**1b** Three-digit plan number (PN) ▸  003

**1c** Effective date of plan
05/01/1991

**2a** Plan sponsor's name and address; include room or suite number (employer, if for a single-employer plan)

WHITE MOUNTAIN APACHE TRIBE

1 EAST OAK STREET
WHITERIVER, AZ 85941

**2b** Employer Identification Number (EIN)
86-0092030

**2c** Sponsor's telephone number
928-338-4872

**2d** Business code (see instructions)
921000

**Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.**

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| SIGN HERE | Filed with authorized/valid electronic signature. | 02/13/2015 | EDWIN KANE |
|---|---|---|---|
| | **Signature of plan administrator** | Date | Enter name of individual signing as plan administrator |
| SIGN HERE | Filed with authorized/valid electronic signature. | 02/13/2015 | EDWIN KANE |
| | **Signature of employer/plan sponsor** | Date | Enter name of individual signing as employer or plan sponsor |
| SIGN HERE | | | |
| | **Signature of DFE** | Date | Enter name of individual signing as DFE |

Preparer's name (including firm name, if applicable) and address; include room or suite number. (optional)

Preparer's telephone number (optional)

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**

Form 5500 (2012)
v. 120126

Form 5500 (2012)                                                    Page **2**

| | | |
|---|---|---|
| **3a** Plan administrator's name and address ☒ Same as Plan Sponsor Name ☐ Same as Plan Sponsor Address | | **3b** Administrator's EIN |
| | | **3c** Administrator's telephone number |

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report:  |  **4b** EIN

**a** Sponsor's name  |  **4c** PN

| | | |
|---|---|---|
| **5** Total number of participants at the beginning of the plan year | **5** | 2047 |
| **6** Number of participants as of the end of the plan year (welfare plans complete only lines **6a, 6b, 6c,** and **6d**). | | |
| **a** Active participants................................................................................ | **6a** | 1168 |
| **b** Retired or separated participants receiving benefits...................................... | **6b** | 1 |
| **c** Other retired or separated participants entitled to future benefits.................... | **6c** | 177 |
| **d** Subtotal. Add lines **6a, 6b,** and **6c**.............................................................. | **6d** | 1346 |
| **e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits................ | **6e** | 38 |
| **f** Total. Add lines **6d** and **6e**.................................................................... | **6f** | 1384 |
| **g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item)........................................................... | **6g** | 461 |
| **h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested................................................. | **6h** | 0 |
| **7** Enter the total number of employers obligated to contribute to the plan (only multiemployer plans complete this item) ......... | **7** | |

**8a** If the plan provides pension benefits, enter the applicable pension feature codes from the List of Plan Characteristics Codes in the instructions:

2E   2F   2G   2J   2K   2T

**b** If the plan provides welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics Codes in the instructions:

| **9a** Plan funding arrangement (check all that apply) | | **9b** Plan benefit arrangement (check all that apply) | |
|---|---|---|---|
| **(1)** ☐ Insurance | | **(1)** ☐ Insurance | |
| **(2)** ☐ Code section 412(e)(3) insurance contracts | | **(2)** ☐ Code section 412(e)(3) insurance contracts | |
| **(3)** ☒ Trust | | **(3)** ☒ Trust | |
| **(4)** ☐ General assets of the sponsor | | **(4)** ☐ General assets of the sponsor | |

**10** Check all applicable boxes in 10a and 10b to indicate which schedules are attached, and, where indicated, enter the number attached. (See instructions)

**a** Pension Schedules  |  **b** General Schedules

| | | | | | |
|---|---|---|---|---|---|
| **(1)** ☒ | **R** (Retirement Plan Information) | | **(1)** ☒ | **H** (Financial Information) |
| **(2)** ☐ | **MB** (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) - signed by the plan actuary | | **(2)** ☐ | **I** (Financial Information – Small Plan) |
| | | | **(3)** ___ | **A** (Insurance Information) |
| | | | **(4)** ☒ | **C** (Service Provider Information) |
| **(3)** ☐ | **SB** (Single-Employer Defined Benefit Plan Actuarial Information) - signed by the plan actuary | | **(5)** ☒ | **D** (DFE/Participating Plan Information) |
| | | | **(6)** ☐ | **G** (Financial Transaction Schedules) |

2

| SCHEDULE C<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Service Provider Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2012**<br><br>**This Form is Open to Public Inspection.** |

For calendar plan year 2012 or fiscal plan year beginning    05/01/2012    and ending    04/30/2013

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** Three-digit<br>plan number (PN) ▶ | 003 |
| --- | --- | --- |
| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 | |

---

**Part I**    **Service Provider Information (see instructions)**

You must complete this Part, in accordance with the instructions, to report the information required for **each person** who received, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of monetary value) in connection with services rendered to the plan or the person's position with the plan during the plan year.  If a person received **only** eligible indirect compensation for which the plan received the required disclosures, you are required to answer line 1 but are not required to include that person when completing the remainder of this Part.

**1  Information on Persons Receiving Only Eligible Indirect Compensation**

**a** Check "Yes" or "No" to indicate whether you are excluding a person from the remainder of this Part because they received only eligible indirect compensation for which the plan received the required disclosures (see instructions for definitions and conditions)................. ☒ Yes ☐ No

**b** If you answered line 1a  "Yes," enter the name and EIN or address of each person providing the required disclosures for the service providers who received only eligible indirect compensation.  Complete as many entries as needed (see instructions).

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |
| AMERICAN FUNDS<br><br>95-1411037 |

| **(b)** Enter name and EIN or address of person who provided you disclosure on eligible indirect compensation |
| --- |
| INVESCO AIM<br><br>76-0528004 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |
| MFS<br><br>04-2747644 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

WELLS FARGO BANK, N.A.

94-1347393

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 15 21 37 49 50 52 60 62 63 64 | SERVICE PROVIDER | 53895 | Yes ☒  No ☐ | Yes ☒  No ☐ | 0 | Yes ☐  No ☒ |

**(a)** Enter name and EIN or address (see instructions)

YODER & LANGFORD, P.C.

86-0869874

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 29 50 | NONE | 10385 | Yes ☐  No ☒ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

**(a)** Enter name and EIN or address (see instructions)

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐  No ☐ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

Schedule C (Form 5500) 2012                                    Page **3** - 2

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐ No ☐ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐ No ☐ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐ No ☐ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2012      Page **4**- 1

| Part I | Service Provider Information (continued) |
|---|---|

**3** If you reported on line 2 receipt of indirect compensation, other than eligible indirect compensation, by a service provider, and the service provider is a fiduciary or provides contract administrator, consulting, custodial, investment advisory, investment management, broker, or recordkeeping services, answer the following questions for (a) each source from whom the service provider received $1,000 or more in indirect compensation and (b) each source for whom the service provider gave you a formula used to determine the indirect compensation instead of an amount or estimated amount of the indirect compensation.  Complete as many entries as needed to report the required information for each source.

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

Schedule C (Form 5500) 2012                                    Page **5-** [1]

| Part II | Service Providers Who Fail or Refuse to Provide Information |
|---|---|

**4**   Provide, to the extent possible, the following information for each service provider who failed or refused to provide the information necessary to complete this Schedule.

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |

Page **6-** 1

| **Part III** | **Termination Information on Accountants and Enrolled Actuaries** (see instructions) |
|---|---|

(complete as many entries as needed)

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| SCHEDULE D<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration | **DFE/Participating Plan Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2012**<br><br>**This Form is Open to Public Inspection.** |

| For calendar plan year 2012 or fiscal plan year beginning | 05/01/2012 | and ending | 04/30/2013 |

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** Three-digit<br>plan number (PN) ▶ | 003 |
| **C** Plan or DFE sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 | |

| **Part I** | **Information on interests in MTIAs, CCTs, PSAs, and 103-12 IEs (to be completed by plans and DFEs)**<br>(Complete as many entries as needed to report all interests in DFEs) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:  WELLS FARGO STABLE RETURN FUND N60

**b** Name of sponsor of entity listed in (a):  WELLS FARGO BANK, N.A.

| **c** EIN-PN 52-2251407-001 | **d** Entity code  C | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions)  3727418 |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.

Schedule D (Form 5500) 2012
v. 120126

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

Schedule D (Form 5500) 2012                                    Page **3** -  1

| Part II | Information on Participating Plans (to be completed by DFEs) |
|---------|-------------------------------------------------------------------|
|         | (Complete as many entries as needed to report all participating plans) |

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

12

| SCHEDULE H<br>(Form 5500)<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Financial Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA), and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2012**<br><br>**This Form is Open to Public Inspection** |

| For calendar plan year 2012 or fiscal plan year beginning   05/01/2012 | and ending   04/30/2013 |
|---|---|

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B**   Three-digit<br>plan number (PN)   ▶   003 |
|---|---|

| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 |
|---|---|

| **Part I** | **Asset and Liability Statement** |
|---|---|

**1** Current value of plan assets and liabilities at the beginning and end of the plan year. Combine the value of plan assets held in more than one trust. Report the value of the plan's interest in a commingled fund containing the assets of more than one plan on a line-by-line basis unless the value is reportable on lines 1c(9) through 1c(14). Do not enter the value of that portion of an insurance contract which guarantees, during this plan year, to pay a specific dollar benefit at a future date. **Round off amounts to the nearest dollar.** MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 1b(1), 1b(2), 1c(8), 1g, 1h, and 1i. CCTs, PSAs, and 103-12 IEs also do not complete lines 1d and 1e. See instructions.

| Assets | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|
| **a** Total noninterest-bearing cash ........................................................ | 1a | | |
| **b** Receivables (less allowance for doubtful accounts): | | | |
| (1) Employer contributions ................................................ | 1b(1) | | |
| (2) Participant contributions ............................................. | 1b(2) | | |
| (3) Other.............................................................................. | 1b(3) | | |
| **c** General investments: | | | |
| (1) Interest-bearing cash (include money market accounts & certificates of deposit) ............................................................. | 1c(1) | | |
| (2) U.S. Government securities.......................................... | 1c(2) | | |
| (3) Corporate debt instruments (other than employer securities): | | | |
| (A) Preferred ................................................................ | 1c(3)(A) | | |
| (B) All other .................................................................. | 1c(3)(B) | | |
| (4) Corporate stocks (other than employer securities): | | | |
| (A) Preferred ................................................................ | 1c(4)(A) | | |
| (B) Common ................................................................. | 1c(4)(B) | | |
| (5) Partnership/joint venture interests ............................. | 1c(5) | | |
| (6) Real estate (other than employer real property) ..................... | 1c(6) | | |
| (7) Loans (other than to participants) ............................. | 1c(7) | | |
| (8) Participant loans ......................................................... | 1c(8) | 1534809 | 1278315 |
| (9) Value of interest in common/collective trusts.................... | 1c(9) | 3594819 | 3727418 |
| (10) Value of interest in pooled separate accounts ................ | 1c(10) | | |
| (11) Value of interest in master trust investment accounts ........... | 1c(11) | | |
| (12) Value of interest in 103-12 investment entities ................ | 1c(12) | | |
| (13) Value of interest in registered investment companies (e.g., mutual funds).............................................................................. | 1c(13) | 8339782 | 8992016 |
| (14) Value of funds held in insurance company general account (unallocated contracts).......................................................................... | 1c(14) | | |
| (15) Other ........................................................................... | 1c(15) | | |

| For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500 | Schedule H (Form 5500) 2012<br>v. 120126 |
|---|---|

Schedule H (Form 5500) 2012                                           Page **2**

| | | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|---|
| **1d** | Employer-related investments: | | | |
| | **(1)** Employer securities ........................................................ | 1d(1) | | |
| | **(2)** Employer real property ...................................................... | 1d(2) | | |
| **e** | Buildings and other property used in plan operation.......................... | 1e | | |
| **f** | Total assets (add all amounts in lines 1a through 1e) ...................................... | 1f | 13469410 | 13997749 |

### Liabilities

| | | | | |
|---|---|---|---|---|
| **g** | Benefit claims payable ........................................................ | 1g | | |
| **h** | Operating payables .............................................................. | 1h | | |
| **i** | Acquisition indebtedness ........................................................ | 1i | | |
| **j** | Other liabilities................................................................... | 1j | | |
| **k** | Total liabilities (add all amounts in lines 1g through 1j) ...................................... | 1k | 0 | 0 |

### Net Assets

| | | | | |
|---|---|---|---|---|
| **l** | Net assets (subtract line 1k from line 1f)........................................ | 1l | 13469410 | 13997749 |

| **Part II** | **Income and Expense Statement** |
|---|---|

**2** Plan income, expenses, and changes in net assets for the year. Include all income and expenses of the plan, including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar. MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 2a, 2b(1)(E), 2e, 2f, and 2g.

| | Income | | (a) Amount | (b) Total |
|---|---|---|---|---|
| **a** | **Contributions:** | | | |
| | **(1)** Received or receivable in cash from: **(A)** Employers.................................. | 2a(1)(A) | 14415 | |
| | **(B)** Participants ................................................................. | 2a(1)(B) | 1107554 | |
| | **(C)** Others (including rollovers) ............................................ | 2a(1)(C) | | |
| | **(2)** Noncash contributions ................................................... | 2a(2) | | |
| | **(3)** Total contributions. Add lines **2a(1)(A), (B), (C),** and line **2a(2)** ................ | 2a(3) | | 1121969 |
| **b** | **Earnings on investments:** | | | |
| | **(1)** Interest: | | | |
| | **(A)** Interest-bearing cash (including money market accounts and certificates of deposit).................................................. | 2b(1)(A) | | |
| | **(B)** U.S. Government securities ............................................. | 2b(1)(B) | | |
| | **(C)** Corporate debt instruments ........................................... | 2b(1)(C) | | |
| | **(D)** Loans (other than to participants) .................................... | 2b(1)(D) | | |
| | **(E)** Participant loans ......................................................... | 2b(1)(E) | 54746 | |
| | **(F)** Other ...................................................................... | 2b(1)(F) | | |
| | **(G)** Total interest. Add lines **2b(1)(A)** through **(F)** ...................... | 2b(1)(G) | | 54746 |
| | **(2)** Dividends: **(A)** Preferred stock........................................... | 2b(2)(A) | | |
| | **(B)** Common stock ............................................................ | 2b(2)(B) | | |
| | **(C)** Registered investment company shares (e.g. mutual funds)............ | 2b(2)(C) | 182159 | |
| | **(D)** Total dividends. Add lines **2b(2)(A), (B),** and **(C)** | 2b(2)(D) | | 182159 |
| | **(3)** Rents................................................................................. | 2b(3) | | |
| | **(4)** Net gain (loss) on sale of assets: **(A)** Aggregate proceeds ...................... | 2b(4)(A) | | |
| | **(B)** Aggregate carrying amount (see instructions) ...................... | 2b(4)(B) | | |
| | **(C)** Subtract line **2b(4)(B)** from line **2b(4)(A)** and enter result ............... | 2b(4)(C) | | 0 |
| | **(5)** Unrealized appreciation (depreciation) of assets: **(A)** Real estate...................... | 2b(5)(A) | | |
| | **(B)** Other ...................................................................... | 2b(5)(B) | | |
| | **(C)** Total unrealized appreciation of assets. Add lines **2b(5)(A)** and **(B)** | 2b(5)(C) | | 0 |

14

Schedule H (Form 5500) 2012 — Page **3**

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **(6)** Net investment gain (loss) from common/collective trusts............... | 2b(6) | | 47090 |
| **(7)** Net investment gain (loss) from pooled separate accounts............... | 2b(7) | | |
| **(8)** Net investment gain (loss) from master trust investment accounts ... | 2b(8) | | |
| **(9)** Net investment gain (loss) from 103-12 investment entities ............ | 2b(9) | | |
| **(10)** Net investment gain (loss) from registered investment companies (e.g., mutual funds)................................................ | 2b(10) | | 880452 |
| **c** Other income................................................................... | 2c | | 57 |
| **d** Total income. Add all **income** amounts in column (b) and enter total...... | 2d | | 2286473 |

### Expenses

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **e** Benefit payment and payments to provide benefits: | | | |
| **(1)** Directly to participants or beneficiaries, including direct rollovers ..... | 2e(1) | 1668544 | |
| **(2)** To insurance carriers for the provision of benefits....................... | 2e(2) | | |
| **(3)** Other ..................................................................... | 2e(3) | | |
| **(4)** Total benefit payments. Add lines **2e(1)** through **(3)**................. | 2e(4) | | 1668544 |
| **f** Corrective distributions (see instructions) ................................ | 2f | | 5324 |
| **g** Certain deemed distributions of participant loans (see instructions)...... | 2g | | |
| **h** Interest expense............................................................ | 2h | | |
| **i** Administrative expenses:  **(1)** Professional fees ....................... | 2i(1) | | |
| **(2)** Contract administrator fees ............................................. | 2i(2) | | |
| **(3)** Investment advisory and management fees .............................. | 2i(3) | | |
| **(4)** Other .................................................................... | 2i(4) | 84266 | |
| **(5)** Total administrative expenses. Add lines **2i(1)** through **(4)**........ | 2i(5) | | 84266 |
| **j** Total expenses. Add all **expense** amounts in column (b) and enter total...... | 2j | | 1758134 |

### Net Income and Reconciliation

| | | | (b) Total |
|---|---|---|---|
| **k** Net income (loss). Subtract line **2j** from line **2d**..................... | 2k | | 528339 |
| **l** Transfers of assets: | | | |
| **(1)** To this plan........................................................... | 2l(1) | | |
| **(2)** From this plan......................................................... | 2l(2) | | |

---

**Part III**  **Accountant's Opinion**

**3**  Complete lines 3a through 3c if the opinion of an independent qualified public accountant is attached to this Form 5500. Complete line 3d if an opinion is not attached.

**a** The attached opinion of an independent qualified public accountant for this plan is (see instructions):

**(1)** ☐ Unqualified   **(2)** ☐ Qualified   **(3)** ☒ Disclaimer   **(4)** ☐ Adverse

**b** Did the accountant perform a limited scope audit pursuant to 29 CFR 2520.103-8 and/or 103-12(d)?    ☒ Yes    ☐ No

**c** Enter the name and EIN of the accountant (or accounting firm) below:

**(1)** Name: REDW LLC    **(2)** EIN: 85-0203431

**d** The opinion of an independent qualified public accountant is **not  attached** because:

**(1)** ☐ This form is filed for a CCT, PSA, or MTIA.   **(2)** ☐ It will be attached to the next Form 5500 pursuant to 29 CFR 2520.104-50.

---

**Part IV**  **Compliance Questions**

**4**  CCTs and PSAs do not complete Part IV. MTIAs, 103-12 IEs, and GIAs do not complete lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, 4n, or 5. 103-12 IEs also do not complete lines 4j and 4l. MTIAs also do not complete line 4l.

During the plan year:

| | | Yes | No | Amount |
|---|---|---|---|---|
| **a** Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102? Continue to answer "Yes" for any prior year failures until fully corrected. (See instructions and DOL's Voluntary Fiduciary Correction Program.)...... | 4a | | X | |
| **b** Were any loans by the plan or fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? Disregard participant loans secured by participant's account balance. (Attach Schedule G (Form 5500) Part I if "Yes" is checked.).......................... | 4b | | X | |

15

| | | Yes | No | Amount |
|---|---|---|---|---|
| **c** | Were any leases to which the plan was a party in default or classified during the year as uncollectible? (Attach Schedule G (Form 5500) Part II if "Yes" is checked.) ............................. **4c** | | X | |
| **d** | Were there any nonexempt transactions with any party-in-interest? (Do not include transactions reported on line 4a. Attach Schedule G (Form 5500) Part III if "Yes" is checked.).......................................................................................... **4d** | | X | |
| **e** | Was this plan covered by a fidelity bond?............................................ **4e** | X | | 500000 |
| **f** | Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty? ...................................................................... **4f** | | X | |
| **g** | Did the plan hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser? ............................... **4g** | | X | |
| **h** | Did the plan receive any noncash contributions whose value was neither readily determinable on an established market nor set by an independent third party appraiser? ......... **4h** | | X | |
| **i** | Did the plan have assets held for investment? (Attach schedule(s) of assets if "Yes" is checked, and see instructions for format requirements.) **4i** | X | | |
| **j** | Were any plan transactions or series of transactions in excess of 5% of the current value of plan assets? (Attach schedule of transactions if "Yes" is checked, and see instructions for format requirements.)............................................................ **4j** | | X | |
| **k** | Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of the PBGC?........................................... **4k** | | X | |
| **l** | Has the plan failed to provide any benefit when due under the plan? ........................................ **4l** | | X | |
| **m** | If this is an individual account plan, was there a blackout period? (See instructions and 29 CFR 2520.101-3.)....................................................................................... **4m** | | X | |
| **n** | If 4m was answered "Yes," check the "Yes" box if you either provided the required notice or one of the exceptions to providing the notice applied under 29 CFR 2520.101-3. ........................ **4n** | | | |

**5a** Has a resolution to terminate the plan been adopted during the plan year or any prior plan year?
If "Yes," enter the amount of any plan assets that reverted to the employer this year........................... ☐ Yes ☒ No   **Amount:**

**5b** If, during this plan year, any assets or liabilities were transferred from this plan to another plan(s), identify the plan(s) to which assets or liabilities were transferred. (See instructions.)

| **5b(1)** Name of plan(s) | **5b(2)** EIN(s) | **5b(3)** PN(s) |
|---|---|---|
| | | |
| | | |
| | | |

| **Part V** | **Trust Information (optional)** |
|---|---|

| **6a** Name of trust | **6b** Trust's EIN |
|---|---|
| | |

16

**SCHEDULE R**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security Administration

Pension Benefit Guaranty Corporation

# Retirement Plan Information

This schedule is required to be filed under section 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).

▶ **File as an attachment to Form 5500.**

OMB No. 1210-0110

**2012**

**This Form is Open to Public Inspection.**

For calendar plan year 2012 or fiscal plan year beginning  05/01/2012  and ending  04/30/2013

**A** Name of plan
WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN

**B** Three-digit plan number (PN) ▶  003

**C** Plan sponsor's name as shown on line 2a of Form 5500
WHITE MOUNTAIN APACHE TRIBE

**D** Employer Identification Number (EIN)
86-0092030

---

| **Part I** | **Distributions** |

All references to distributions relate only to payments of benefits during the plan year.

**1** Total value of distributions paid in property other than in cash or the forms of property specified in the instructions............................................................................................................ | **1** | 0

**2** Enter the EIN(s) of payor(s) who paid benefits on behalf of the plan to participants or beneficiaries during the year (if more than two, enter EINs of the two payors who paid the greatest dollar amounts of benefits):

EIN(s):   41-6257133   _____

**Profit-sharing plans, ESOPs, and stock bonus plans, skip line 3.**

**3** Number of participants (living or deceased) whose benefits were distributed in a single sum, during the plan year............................................................................................................ | **3** |

---

| **Part II** | **Funding Information** (If the plan is not subject to the minimum funding requirements of section of 412 of the Internal Revenue Code or ERISA section 302, skip this Part) |

**4** Is the plan administrator making an election under Code section 412(d)(2) or ERISA section 302(d)(2)?......................... ☐ Yes  ☐ No  ☐ N/A

**If the plan is a defined benefit plan, go to line 8.**

**5** If a waiver of the minimum funding standard for a prior year is being amortized in this plan year, see instructions and enter the date of the ruling letter granting the waiver.      Date:   Month _____  Day _____  Year _____

**If you completed line 5, complete lines 3, 9, and 10 of Schedule MB and do not complete the remainder of this schedule.**

**6 a** Enter the minimum required contribution for this plan year (include any prior year accumulated funding deficiency not waived) ........................................................ | **6a** |

**b** Enter the amount contributed by the employer to the plan for this plan year ......................................... | **6b** |

**c** Subtract the amount in line 6b from the amount in line 6a. Enter the result (enter a minus sign to the left of a negative amount) ........................................ | **6c** |

**If you completed line 6c, skip lines 8 and 9.**

**7** Will the minimum funding amount reported on line 6c be met by the funding deadline? ................................... ☐ Yes  ☐ No  ☐ N/A

**8** If a change in actuarial cost method was made for this plan year pursuant to a revenue procedure or other authority providing automatic approval for the change or a class ruling letter, does the plan sponsor or plan administrator agree with the change? ........................................ ☐ Yes  ☐ No  ☐ N/A

---

| **Part III** | **Amendments** |

**9** If this is a defined benefit pension plan, were any amendments adopted during this plan year that increased or decreased the value of benefits? If yes, check the appropriate box. If no, check the "No" box. ........................................ ☐ Increase  ☐ Decrease  ☐ Both  ☐ No

---

| **Part IV** | **ESOPs** (see instructions). If this is not a plan described under Section 409(a) or 4975(e)(7) of the Internal Revenue Code, skip this Part. |

**10** Were unallocated employer securities or proceeds from the sale of unallocated securities used to repay any exempt loan?.............. ☐ Yes  ☐ No

**11 a** Does the ESOP hold any preferred stock? ........................................................................... ☐ Yes  ☐ No

**b** If the ESOP has an outstanding exempt loan with the employer as lender, is such loan part of a "back-to-back" loan? (See instructions for definition of "back-to-back" loan.) ........................................ ☐ Yes  ☐ No

**12** Does the ESOP hold any stock that is not readily tradable on an established securities market? ........................ ☐ Yes  ☐ No

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**

Schedule R (Form 5500) 2012
v. 120126

Schedule R (Form 5500) 2012                                           Page **2 -** 1

| Part V | Additional Information for Multiemployer Defined Benefit Pension Plans |
|---|---|

**13**  Enter the following information for each employer that contributed more than 5% of total contributions to the plan during the plan year (measured in dollars). See instructions. *Complete as many entries as needed to report all applicable employers.*

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify):

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a**  Name of contributing employer

**b**  EIN                                    **c**  Dollar amount contributed by employer

**d**  Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**  Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
   (1)   Contribution rate (in dollars and cents) _____
   (2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

18

| | | |
|---|---|---|
| **14** Enter the number of participants on whose behalf no contributions were made by an employer as an employer of the participant for: | | |
| **a** The current year ........................................................................................................... | **14a** | |
| **b** The plan year immediately preceding the current plan year.............................................. | **14b** | |
| **c** The second preceding plan year ...................................................................................... | **14c** | |
| **15** Enter the ratio of the number of participants under the plan on whose behalf no employer had an obligation to make an employer contribution during the current plan year to: | | |
| **a** The corresponding number for the plan year immediately preceding the current plan year ............................... | **15a** | |
| **b** The corresponding number for the second preceding plan year ....................................... | **15b** | |
| **16** Information with respect to any employers who withdrew from the plan during the preceding plan year: | | |
| **a** Enter the number of employers who withdrew during the preceding plan year  ................................................. | **16a** | |
| **b** If line 16a is greater than 0, enter the aggregate amount of withdrawal liability assessed or estimated to be assessed against such withdrawn employers ................................... | **16b** | |

**17** If assets and liabilities from another plan have been transferred to or merged with this plan during the plan year, check box and see instructions regarding supplemental information to be included as an attachment. ............................................................................................................ ☐

| **Part VI** | **Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans** |
|---|---|

**18** If any liabilities to participants or their beneficiaries under the plan as of the end of the plan year consist (in whole or in part) of liabilities to such participants and beneficiaries under two or more pension plans as of immediately before such plan year, check box and see instructions regarding supplemental information to be included as an attachment .............................................................................................................................. ☐

**19** If the total number of participants is 1,000 or more, complete lines (a) through (c)

  **a** Enter the percentage of plan assets held as:
    Stock: _____%   Investment-Grade Debt: _____%   High-Yield Debt: _____%   Real Estate: _____%   Other: _____%

  **b** Provide the average duration of the combined investment-grade and high-yield debt:
    ☐ 0-3 years   ☐ 3-6 years   ☐ 6-9 years   ☐ 9-12 years   ☐ 12-15 years   ☐ 15-18 years   ☐ 18-21 years   ☐ 21 years or more

  **c** What duration measure was used to calculate line 19(b)?
    ☐ Effective duration   ☐ Macaulay duration   ☐ Modified duration   ☐ Other (specify):

19

White Mountain Apache Tribe Enterprise 401(k) Plan (the "Plan")
EIN: 86-0092030
PN:  006

     The Plan is sponsored by the White Mountain Apache Tribe, a federally recognized Indian tribal government (the "Tribe").  The Tribe has made a good faith determination under Section 906 of the Pension Protection Act of 2006 (the "PPA") that the sponsor performs essential government functions that are not commercial in nature.  However, Internal Revenue Service ("IRS") Notice 2006-89 lists five activities presumed to be "commercial" in nature for purposes of the IRS good faith transition relief under the PPA.  The Plan includes employees engaged in activities identified as "commercial" in Notice 2006-89 and therefore the Tribe is making the attached Form 5500 filing.

     It is our understanding that the Department of Labor ("DOL") has granted the Tribe's request for a waiver under Executive Order 13175 of the audited financial statement requirement until such time as final guidance is published under the PPA and it is clear how the Tribe is required to classify employees and complete annual filings and audits with regard to the Plan.  The Tribe filed a request for waiver of the ERISA auditing requirements under the tribal government regulatory waiver procedures set forth in Executive Order 13175 on June 17, 2011 and May 6, 2011.  On August 1, 2011 the DOL confirmed its withdrawal of a then pending Notice of Intent to Assess Penalty against the Plan with regard to the ERISA auditing requirements and provided notice of its intent to take no further action.  The Tribe continues to work with its auditors, on a reasonable and good faith basis, and intends to complete and submit Plan audits on a voluntary basis as soon as reasonably possible.

     Additionally, because there is no guidance regarding the interaction between operational compliance with Section 906 of the PPA and the reporting requirements of ERISA, the enclosed Form 5500 filing is over-inclusive.  The assets for the Tribe's two 401(k) plans, the governmental plan and the Plan, remain commingled with the asset custodian pending formal guidance on the application of Section 906 of the PPA.  Per Notice 2006-89 and Notice 2007-67, a formal split of the plans is not required until 6 months following final guidance.  The Tribe specifically asserts that the enclosed Form 5500 filing is not a waiver of government status with regard to any retirement plan assets or participants which ultimately are determined to be exempt from the Form 5500 reporting requirements.

     The Tribe reserves its right to treat the Plan as a governmental plan under Internal Revenue Code Section 414(d) and ERISA Section 3(32).  The filing of the attached 5500 (including any amendments thereto) shall not be deemed a waiver of governmental status. The Tribe also reserves its right to consultation under Executive Order 13175 with regard to all matters arising under or out of the PPA.

Attachment B

## Form 5500

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan

This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code).

▶ **Complete all entries in accordance with the instructions to the Form 5500.**

OMB Nos. 1210-0110
1210-0089

### 2013

**This Form is Open to Public Inspection**

| Part I | Annual Report Identification Information |
|---|---|

For calendar plan year 2013 or fiscal plan year beginning   05/01/2013   and ending   04/30/2014

**A** This return/report is for:   ☐ a multiemployer plan;   ☐ a multiple-employer plan; or
☒ a single-employer plan;   ☐ a DFE (specify) ___

**B** This return/report is:   ☐ the first return/report;   ☐ the final return/report;
☐ an amended return/report;   ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**D** Check box if filing under:   ☐ Form 5558;   ☐ automatic extension;   ☐ the DFVC program;
☐ special extension (enter description)

| Part II | Basic Plan Information—enter all requested information |
|---|---|

**1a** Name of plan

WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN

**1b** Three-digit plan number (PN) ▶   003

**1c** Effective date of plan
05/01/1991

**2a** Plan sponsor's name and address; include room or suite number (employer, if for a single-employer plan)

WHITE MOUNTAIN APACHE TRIBE

1 EAST OAK STREET
WHITERIVER, AZ 85941

**2b** Employer Identification Number (EIN)
86-0092030

**2c** Sponsor's telephone number
928-338-4872

**2d** Business code (see instructions)
921000

**Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.**

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| SIGN HERE | Filed with authorized/valid electronic signature. | 04/13/2016 | DERON PEACHES |
|---|---|---|---|
| | Signature of plan administrator | Date | Enter name of individual signing as plan administrator |
| SIGN HERE | | | |
| | Signature of employer/plan sponsor | Date | Enter name of individual signing as employer or plan sponsor |
| SIGN HERE | | | |
| | Signature of DFE | Date | Enter name of individual signing as DFE |

Preparer's name (including firm name, if applicable) and address; include room or suite number. (optional)

Preparer's telephone number (optional)

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**

Form 5500 (2013)
v. 130118

I

Form 5500 (2013)          Page **2**

| | | |
|---|---|---|
| **3a** Plan administrator's name and address ☒Same as Plan Sponsor Name ☐Same as Plan Sponsor Address | **3b** Administrator's EIN | |
| | **3c** Administrator's telephone number | |

| | | | |
|---|---|---|---|
| **4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report: | | **4b** EIN | |
| **a** Sponsor's name | | **4c** PN | |

| | | | |
|---|---|---|---|
| **5** Total number of participants at the beginning of the plan year | | **5** | 1384 |
| **6** Number of participants as of the end of the plan year (welfare plans complete only lines **6a, 6b, 6c,** and **6d**). | | | |
| **a** Active participants | | **6a** | 2225 |
| **b** Retired or separated participants receiving benefits | | **6b** | 0 |
| **c** Other retired or separated participants entitled to future benefits | | **6c** | 141 |
| **d** Subtotal.  Add lines **6a, 6b,** and **6c**. | | **6d** | 2366 |
| **e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits. | | **6e** | 41 |
| **f** Total.  Add lines **6d** and **6e**. | | **6f** | 2407 |
| **g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | | **6g** | 779 |
| **h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested | | **6h** | 0 |
| **7** Enter the total number of employers obligated to contribute to the plan (only multiemployer plans complete this item) | | **7** | |

**8a** If the plan provides pension benefits, enter the applicable pension feature codes from the List of Plan Characteristics Codes in the instructions:

2E  2F  2G  2J  2K  2T

**b** If the plan provides welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics Codes in the instructions:

| **9a** Plan funding arrangement (check all that apply) | | **9b** Plan benefit arrangement (check all that apply) | |
|---|---|---|---|
| **(1)** ☐ Insurance | | **(1)** ☐ Insurance | |
| **(2)** ☐ Code section 412(e)(3) insurance contracts | | **(2)** ☐ Code section 412(e)(3) insurance contracts | |
| **(3)** ☒ Trust | | **(3)** ☒ Trust | |
| **(4)** ☐ General assets of the sponsor | | **(4)** ☐ General assets of the sponsor | |

**10** Check all applicable boxes in 10a and 10b to indicate which schedules are attached, and, where indicated, enter the number attached.  (See instructions)

| **a** Pension Schedules | | **b** General Schedules | |
|---|---|---|---|
| **(1)** ☒ **R**  (Retirement Plan Information) | | **(1)** ☒ **H**  (Financial Information) | |
| **(2)** ☐ **MB**  (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) - signed by the plan actuary | | **(2)** ☐ **I**  (Financial Information – Small Plan) | |
| | | **(3)** ___ **A**  (Insurance Information) | |
| | | **(4)** ☐ **C**  (Service Provider Information) | |
| **(3)** ☐ **SB**  (Single-Employer Defined Benefit Plan Actuarial Information) - signed by the plan actuary | | **(5)** ☒ **D**  (DFE/Participating Plan Information) | |
| | | **(6)** ☐ **G**  (Financial Transaction Schedules) | |

| SCHEDULE C<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Service Provider Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2013**<br><br>**This Form is Open to Public Inspection.** |

| For calendar plan year 2013 or fiscal plan year beginning 05/01/2013 | | and ending 04/30/2014 | |
|---|---|---|---|
| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | | **B** Three-digit plan number (PN) ▶ | 003 |
| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | | **D** Employer Identification Number (EIN)<br>86-0092030 | |

---

| **Part I** | **Service Provider Information (see instructions)** |
|---|---|

You must complete this Part, in accordance with the instructions, to report the information required for **each person** who received, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of monetary value) in connection with services rendered to the plan or the person's position with the plan during the plan year. If a person received **only** eligible indirect compensation for which the plan received the required disclosures, you are required to answer line 1 but are not required to include that person when completing the remainder of this Part.

## 1  Information on Persons Receiving Only Eligible Indirect Compensation

**a** Check "Yes" or "No" to indicate whether you are excluding a person from the remainder of this Part because they received only eligible indirect compensation for which the plan received the required disclosures (see instructions for definitions and conditions). . . . . . . . . . . . . . . . ☒ Yes ☐ No

**b** If you answered line 1a "Yes," enter the name and EIN or address of each person providing the required disclosures for the service providers who received only eligible indirect compensation. Complete as many entries as needed (see instructions).

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
|---|
| AMERICAN FUNDS<br><br>95-1411037 |

| **(b)** Enter name and EIN or address of person who provided you disclosure on eligible indirect compensation |
|---|
| INVESCO AIM<br><br>76-0528004 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
|---|
| MFS<br><br>04-2747644 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
|---|

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500**

**Schedule C (Form 5500) 2013**
**v.130118**

Page **2**- 1

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

Schedule C (Form 5500) 2013     Page **3** - 1

## 2. Information on Other Service Providers Receiving Direct or Indirect Compensation.
Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a) Enter name and EIN or address (see instructions)**

WELLS FARGO BANK, N.A.

94-1347393

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 15 21 37 49 50 52 60 62 63 64 | SERVICE PROVIDER | 58238 | Yes [X] No [ ] | Yes [X] No [ ] | 0 | Yes [ ] No [X] |

**(a) Enter name and EIN or address (see instructions)**

YODER & LANGFORD, P.C.

86-0869874

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 29 50 | NONE | 12632 | Yes [ ] No [X] | Yes [ ] No [ ] | | Yes [ ] No [ ] |

**(a) Enter name and EIN or address (see instructions)**

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes [ ] No [ ] | Yes [ ] No [ ] | | Yes [ ] No [ ] |

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

| **(a)** Enter name and EIN or address (see instructions) | | | | | | |
|---|---|---|---|---|---|---|
| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
| | | | Yes ☐  No ☐ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

| **(a)** Enter name and EIN or address (see instructions) | | | | | | |
|---|---|---|---|---|---|---|
| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
| | | | Yes ☐  No ☐ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

| **(a)** Enter name and EIN or address (see instructions) | | | | | | |
|---|---|---|---|---|---|---|
| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
| | | | Yes ☐  No ☐ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

Schedule C (Form 5500) 2013                          Page **4-** 1

| Part I | Service Provider Information (continued) |
|--------|-------------------------------------------|

**3** If you reported on line 2 receipt of indirect compensation, other than eligible indirect compensation, by a service provider, and the service provider is a fiduciary or provides contract administrator, consulting, custodial, investment advisory, investment management, broker, or recordkeeping services, answer the following questions for (a) each source from whom the service provider received $1,000 or more in indirect compensation and (b) each source for whom the service provider gave you a formula used to determine the indirect compensation instead of an amount or estimated amount of the indirect compensation.  Complete as many entries as needed to report the required information for each source.

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
|  |  |  |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
|  |  |

Page **5-** 1

| Part II | Service Providers Who Fail or Refuse to Provide Information |
|---|---|

**4**  Provide, to the extent possible, the following information for each service provider who failed or refused to provide the information necessary to complete this Schedule.

| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |
| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|  |  |  |
| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|  |  |  |
| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|  |  |  |
| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|  |  |  |
| (a) Enter name and EIN or address of service provider (see instructions) | (b) Nature of Service Code(s) | (c) Describe the information that the service provider failed or refused to provide |
|  |  |  |

| Part III | Termination Information on Accountants and Enrolled Actuaries (see instructions) |
|---|---|

(complete as many entries as needed)

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| SCHEDULE D<br>(Form 5500)<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration | DFE/Participating Plan Information<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ File as an attachment to Form 5500. | OMB No. 1210-0110<br><br>**2013**<br><br>**This Form is Open to Public Inspection.** |
|---|---|---|

| For calendar plan year 2013 or fiscal plan year beginning   05/01/2013   and ending   04/30/2014 |
|---|

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B**  Three-digit<br>plan number (PN)          ▶ | 003 |
|---|---|---|

| **C**  Plan or DFE sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D**  Employer Identification Number (EIN)<br>86-0092030 |
|---|---|

| **Part I** | Information on interests in MTIAs, CCTs, PSAs, and 103-12 IEs (to be completed by plans and DFEs)<br>(Complete as many entries as needed to report all interests in DFEs) |
|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:   WELLS FARGO STABLE RETURN FUND N60

**b** Name of sponsor of entity listed in (a):    WELLS FARGO BANK, N.A.

| **c** EIN-PN 52-2251407-001 | **d** Entity<br>code       C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions)         3240511 |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity<br>code | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) |
|---|---|---|

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.

Schedule D (Form 5500) 2013
v. 130118

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

Schedule D (Form 5500) 2013      Page **3 -** | 1 |

| **Part II** | **Information on Participating Plans (to be completed by DFEs)** <br> (Complete as many entries as needed to report all participating plans) |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

**a**   Plan name

| **b** Name of <br> plan sponsor | **c** EIN-PN |
|---|---|

| **SCHEDULE H**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Financial Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA), and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2013**<br><br>**This Form is Open to Public Inspection** |
|---|---|---|

For calendar plan year 2013 or fiscal plan year beginning   05/01/2013   and ending   04/30/2014

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** Three-digit plan number (PN)   ▶   003 |
|---|---|
| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 |

| **Part I** | **Asset and Liability Statement** |
|---|---|

**1** Current value of plan assets and liabilities at the beginning and end of the plan year. Combine the value of plan assets held in more than one trust. Report the value of the plan's interest in a commingled fund containing the assets of more than one plan on a line-by-line basis unless the value is reportable on lines 1c(9) through 1c(14). Do not enter the value of that portion of an insurance contract which guarantees, during this plan year, to pay a specific dollar benefit at a future date. **Round off amounts to the nearest dollar.** MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 1b(1), 1b(2), 1c(8), 1g, 1h, and 1i. CCTs, PSAs, and 103-12 IEs also do not complete lines 1d and 1e. See instructions.

| Assets | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|
| **a** Total noninterest-bearing cash ............................................................ | 1a | | |
| **b** Receivables (less allowance for doubtful accounts): | | | |
| (1) Employer contributions ............................................................ | 1b(1) | | |
| (2) Participant contributions ........................................................ | 1b(2) | | |
| (3) Other..................................................................................... | 1b(3) | | |
| **c** General investments: | | | |
| (1) Interest-bearing cash (include money market accounts & certificates of deposit)........................................................ | 1c(1) | | |
| (2) U.S. Government securities ..................................................... | 1c(2) | | |
| (3) Corporate debt instruments (other than employer securities): | | | |
| (A) Preferred ............................................................................ | 1c(3)(A) | | |
| (B) All other ............................................................................. | 1c(3)(B) | | |
| (4) Corporate stocks (other than employer securities): | | | |
| (A) Preferred .......................................................................... | 1c(4)(A) | | |
| (B) Common ........................................................................... | 1c(4)(B) | | |
| (5) Partnership/joint venture interests ........................................ | 1c(5) | | |
| (6) Real estate (other than employer real property)...................... | 1c(6) | | |
| (7) Loans (other than to participants) ......................................... | 1c(7) | | |
| (8) Participant loans .................................................................. | 1c(8) | 1278315 | 1141978 |
| (9) Value of interest in common/collective trusts ......................... | 1c(9) | 3727418 | 3240511 |
| (10) Value of interest in pooled separate accounts ...................... | 1c(10) | | |
| (11) Value of interest in master trust investment accounts ........... | 1c(11) | | |
| (12) Value of interest in 103-12 investment entities...................... | 1c(12) | | |
| (13) Value of interest in registered investment companies (e.g., mutual funds)................................................................................. | 1c(13) | 8992016 | 8520991 |
| (14) Value of funds held in insurance company general account (unallocated contracts)............................................................................. | 1c(14) | | |
| (15) Other ................................................................................... | 1c(15) | | |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500

Schedule H (Form 5500) 2013<br>v. 130118

13

Schedule H  (Form 5500) 2013                                                                 Page **2**

| | | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|---|
| **1d** | Employer-related investments: | | | |
| | **(1)** Employer securities.................................... | **1d(1)** | | |
| | **(2)** Employer real property............................. | **1d(2)** | | |
| **e** | Buildings and other property used in plan operation ...................... | **1e** | | |
| **f** | Total assets (add all amounts in lines 1a through 1e) ...................... | **1f** | 13997749 | 12903480 |

## Liabilities

| | | | | |
|---|---|---|---|---|
| **g** | Benefit claims payable...................................................... | **1g** | | |
| **h** | Operating payables ......................................................... | **1h** | | |
| **i** | Acquisition indebtedness ................................................... | **1i** | | |
| **j** | Other liabilities .............................................................. | **1j** | | |
| **k** | Total liabilities (add all amounts in lines 1g through1j) ...................... | **1k** | 0 | 0 |

## Net Assets

| | | | | |
|---|---|---|---|---|
| **l** | Net assets (subtract line 1k from line 1f)................................ | **1l** | 13997749 | 12903480 |

| Part II | Income and Expense Statement |
|---|---|

**2** Plan income, expenses, and changes in net assets for the year. Include all income and expenses of the plan, including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar. MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 2a, 2b(1)(E), 2e, 2f, and 2g.

### Income

| | | | (a) Amount | (b) Total |
|---|---|---|---|---|
| **a** | **Contributions:** | | | |
| | **(1)** Received or receivable in cash from: **(A)** Employers................................ | **2a(1)(A)** | 16527 | |
| | **(B)** Participants ........................................................ | **2a(1)(B)** | 1036248 | |
| | **(C)** Others (including rollovers)...................................... | **2a(1)(C)** | 62000 | |
| | **(2)** Noncash contributions.............................................. | **2a(2)** | | |
| | **(3)** Total contributions. Add lines **2a(1)(A), (B), (C),** and line **2a(2)**................ | **2a(3)** | | 1114775 |
| **b** | **Earnings on investments:** | | | |
| | **(1)** Interest: | | | |
| | **(A)** Interest-bearing cash (including money market accounts and certificates of deposit)........................ | **2b(1)(A)** | | |
| | **(B)** U.S. Government securities ...................................... | **2b(1)(B)** | | |
| | **(C)** Corporate debt instruments ..................................... | **2b(1)(C)** | | |
| | **(D)** Loans (other than to participants) ............................... | **2b(1)(D)** | | |
| | **(E)** Participant loans .................................................. | **2b(1)(E)** | 46187 | |
| | **(F)** Other ............................................................... | **2b(1)(F)** | | |
| | **(G)** Total interest. Add lines **2b(1)(A)** through **(F)**.................... | **2b(1)(G)** | | 46187 |
| | **(2)** Dividends: **(A)** Preferred stock..................................... | **2b(2)(A)** | | |
| | **(B)** Common stock................................................... | **2b(2)(B)** | | |
| | **(C)** Registered investment company shares (e.g. mutual funds)............ | **2b(2)(C)** | 209081 | |
| | **(D)** Total dividends. Add lines **2b(2)(A), (B)**, and **(C)** | **2b(2)(D)** | | 209081 |
| | **(3)** Rents.................................................................... | **2b(3)** | | |
| | **(4)** Net gain (loss) on sale of assets: **(A)** Aggregate proceeds ..................... | **2b(4)(A)** | | |
| | **(B)** Aggregate carrying amount (see instructions) ..................... | **2b(4)(B)** | | |
| | **(C)** Subtract line **2b(4)(B)** from line **2b(4)(A)** and enter result ................ | **2b(4)(C)** | | 0 |
| | **(5)** Unrealized appreciation (depreciation) of assets: **(A)** Real estate...................... | **2b(5)(A)** | | |
| | **(B)** Other ............................................................... | **2b(5)(B)** | | |
| | **(C)** Total unrealized appreciation of assets. Add lines **2b(5)(A)** and **(B)**. | **2b(5)(C)** | | 0 |

Schedule H (Form 5500) 2013

Page **3**

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **(6)** Net investment gain (loss) from common/collective trusts | 2b(6) | | 31245 |
| **(7)** Net investment gain (loss) from pooled separate accounts | 2b(7) | | |
| **(8)** Net investment gain (loss) from master trust investment accounts | 2b(8) | | |
| **(9)** Net investment gain (loss) from 103-12 investment entities | 2b(9) | | |
| **(10)** Net investment gain (loss) from registered investment companies (e.g., mutual funds) | 2b(10) | | 856182 |
| **c** Other income | 2c | | -32822 |
| **d** Total income. Add all **income** amounts in column (b) and enter total | 2d | | 2224648 |

### Expenses

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **e** Benefit payment and payments to provide benefits: | | | |
| **(1)** Directly to participants or beneficiaries, including direct rollovers | 2e(1) | 3227618 | |
| **(2)** To insurance carriers for the provision of benefits | 2e(2) | | |
| **(3)** Other | 2e(3) | | |
| **(4)** Total benefit payments. Add lines **2e(1)** through **(3)** | 2e(4) | | 3227618 |
| **f** Corrective distributions (see instructions) | 2f | | |
| **g** Certain deemed distributions of participant loans (see instructions) | 2g | | |
| **h** Interest expense | 2h | | |
| **i** Administrative expenses: **(1)** Professional fees | 2i(1) | | |
| **(2)** Contract administrator fees | 2i(2) | | |
| **(3)** Investment advisory and management fees | 2i(3) | | |
| **(4)** Other | 2i(4) | 91299 | |
| **(5)** Total administrative expenses. Add lines **2i(1)** through **(4)** | 2i(5) | | 91299 |
| **j** Total expenses. Add all **expense** amounts in column (b) and enter total | 2j | | 3318917 |

### Net Income and Reconciliation

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **k** Net income (loss). Subtract line **2j** from line **2d** | 2k | | -1094269 |
| **l** Transfers of assets: | | | |
| **(1)** To this plan | 2l(1) | | |
| **(2)** From this plan | 2l(2) | | |

---

| **Part III** | **Accountant's Opinion** |
|---|---|

**3** Complete lines 3a through 3c if the opinion of an independent qualified public accountant is attached to this Form 5500. Complete line 3d if an opinion is not attached.

**a** The attached opinion of an independent qualified public accountant for this plan is (see instructions):

**(1)** ☐ Unqualified   **(2)** ☐ Qualified   **(3)** ☒ Disclaimer   **(4)** ☐ Adverse

**b** Did the accountant perform a limited scope audit pursuant to 29 CFR 2520.103-8 and/or 103-12(d)?   ☒ Yes   ☐ No

**c** Enter the name and EIN of the accountant (or accounting firm) below:

**(1)** Name: REDW   **(2)** EIN: 85-0203431

**d** The opinion of an independent qualified public accountant is **not** attached because:

**(1)** ☐ This form is filed for a CCT, PSA, or MTIA.   **(2)** ☐ It will be attached to the next Form 5500 pursuant to 29 CFR 2520.104-50.

---

| **Part IV** | **Compliance Questions** |
|---|---|

**4** CCTs and PSAs do not complete Part IV. MTIAs, 103-12 IEs, and GIAs do not complete lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, 4n, or 5. 103-12 IEs also do not complete lines 4j and 4l. MTIAs also do not complete line 4l.

During the plan year:

| | | Yes | No | Amount |
|---|---|---|---|---|
| **a** Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102? Continue to answer "Yes" for any prior year failures until fully corrected. (See instructions and DOL's Voluntary Fiduciary Correction Program.) | 4a | | X | |
| **b** Were any loans by the plan or fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? Disregard participant loans secured by participant's account balance. (Attach Schedule G (Form 5500) Part I if "Yes" is checked.) | 4b | | X | |

15

Schedule H (Form 5500) 2013                          Page **4-** 1

| | | | Yes | No | Amount |
|---|---|---|---|---|---|
| **c** | Were any leases to which the plan was a party in default or classified during the year as uncollectible? (Attach Schedule G (Form 5500) Part II if "Yes" is checked.) ............................ | **4c** | | X | |
| **d** | Were there any nonexempt transactions with any party-in-interest? (Do not include transactions reported on line 4a. Attach Schedule G (Form 5500) Part III if "Yes" is checked.).......................................................................................... | **4d** | | X | |
| **e** | Was this plan covered by a fidelity bond? .................................................................................... | **4e** | X | | 500000 |
| **f** | Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty? ...................................................................... | **4f** | | X | |
| **g** | Did the plan hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser?..................................... | **4g** | | X | |
| **h** | Did the plan receive any noncash contributions whose value was neither readily determinable on an established market nor set by an independent third party appraiser?......... | **4h** | | X | |
| **i** | Did the plan have assets held for investment? (Attach schedule(s) of assets if "Yes" is checked, and see instructions for format requirements.) | **4i** | X | | |
| **j** | Were any plan transactions or series of transactions in excess of 5% of the current value of plan assets? (Attach schedule of transactions if "Yes" is checked, and see instructions for format requirements.) ............................................................................ | **4j** | | X | |
| **k** | Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of the PBGC? ........................................................ | **4k** | | X | |
| **l** | Has the plan failed to provide any benefit when due under the plan?....................................... | **4l** | | X | |
| **m** | If this is an individual account plan, was there a blackout period? (See instructions and 29 CFR 2520.101-3.)................................................................................................................. | **4m** | | X | |
| **n** | If 4m was answered "Yes," check the "Yes" box if you either provided the required notice or one of the exceptions to providing the notice applied under 29 CFR 2520.101-3. | **4n** | | | |

**5a**  Has a resolution to terminate the plan been adopted during the plan year or any prior plan year?
If "Yes," enter the amount of any plan assets that reverted to the employer this year............................  ☐ Yes  ☒ No  **Amount:**

**5b**  If, during this plan year, any assets or liabilities were transferred from this plan to another plan(s), identify the plan(s) to which assets or liabilities were transferred. (See instructions.)

| **5b(1)** Name of plan(s) | **5b(2)** EIN(s) | **5b(3)** PN(s) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**5c**  If the plan is a defined benefit plan, is it covered under the PBGC insurance program (see ERISA section 4021)? .....☐ Yes  ☐ No  ☐ Not determined

| **Part V** | **Trust Information (optional)** |
|---|---|
| **6a** Name of trust | **6b** Trust's EIN |
| | |

16

| **SCHEDULE R**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Retirement Plan Information**<br><br>This schedule is required to be filed under section 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2013**<br><br>**This Form is Open to Public Inspection.** |

For calendar plan year 2013 or fiscal plan year beginning   05/01/2013                    and ending   04/30/2014

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B**  Three-digit plan number (PN)  ▶ | 003 |
|---|---|---|
| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D**  Employer Identification Number (EIN)<br>86-0092030 | |

| **Part I** | **Distributions** |
|---|---|

**All references to distributions relate only to payments of benefits during the plan year.**

**1** Total value of distributions paid in property other than in cash or the forms of property specified in the instructions................................................................................................................................

| **1** | 0 |
|---|---|

**2** Enter the EIN(s) of payor(s) who paid benefits on behalf of the plan to participants or beneficiaries during the year (if more than two, enter EINs of the two payors who paid the greatest dollar amounts of benefits):

EIN(s):   41-6257133  _____          _____

**Profit-sharing plans, ESOPs, and stock bonus plans, skip line 3.**

**3** Number of participants (living or deceased) whose benefits were distributed in a single sum, during the plan year...........................................................................................................................

| **3** | |
|---|---|

| **Part II** | **Funding Information** (If the plan is not subject to the minimum funding requirements of section of 412 of the Internal Revenue Code or ERISA section 302, skip this Part) |
|---|---|

**4** Is the plan administrator making an election under Code section 412(d)(2) or ERISA section 302(d)(2)?........................ ☐ Yes   ☐ No   ☐ N/A

**If the plan is a defined benefit plan, go to line 8.**

**5** If a waiver of the minimum funding standard for a prior year is being amortized in this plan year, see instructions and enter the date of the ruling letter granting the waiver.          **Date:** Month _____   Day _____   Year _____

**If you completed line 5, complete lines 3, 9, and 10 of Schedule MB and do not complete the remainder of this schedule.**

**6  a** Enter the minimum required contribution for this plan year (include any prior year accumulated funding deficiency not waived)..................................................................

| **6a** | |
|---|---|

**b** Enter the amount contributed by the employer to the plan for this plan year.............................................

| **6b** | |
|---|---|

**c** Subtract the amount in line 6b from the amount in line 6a. Enter the result (enter a minus sign to the left of a negative amount)..........................................

| **6c** | |
|---|---|

**If you completed line 6c, skip lines 8 and 9.**

**7** Will the minimum funding amount reported on line 6c be met by the funding deadline?................................ ☐ Yes   ☐ No   ☐ N/A

**8** If a change in actuarial cost method was made for this plan year pursuant to a revenue procedure or other authority providing automatic approval for the change or a class ruling letter, does the plan sponsor or plan administrator agree with the change?................................................................ ☐ Yes   ☐ No   ☐ N/A

| **Part III** | **Amendments** |
|---|---|

**9** If this is a defined benefit pension plan, were any amendments adopted during this plan year that increased or decreased the value of benefits? If yes, check the appropriate box. If no, check the "No" box.................................................... ☐ Increase   ☐ Decrease   ☐ Both   ☐ No

| **Part IV** | **ESOPs** (see instructions). If this is not a plan described under Section 409(a) or 4975(e)(7) of the Internal Revenue Code, skip this Part. |
|---|---|

**10** Were unallocated employer securities or proceeds from the sale of unallocated securities used to repay any exempt loan? ............ ☐ Yes   ☐ No

**11  a** Does the ESOP hold any preferred stock? ............................................................................................ ☐ Yes   ☐ No

**b** If the ESOP has an outstanding exempt loan with the employer as lender, is such loan part of a "back-to-back" loan? (See instructions for definition of "back-to-back" loan.) ☐ Yes   ☐ No

**12** Does the ESOP hold any stock that is not readily tradable on an established securities market?................................ ☐ Yes   ☐ No

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**   **Schedule R (Form 5500) 2013**
**v. 130118**

Schedule R (Form 5500) 2013          Page **2** - 1

| Part V | Additional Information for Multiemployer Defined Benefit Pension Plans |
|---|---|

**13** Enter the following information for each employer that contributed more than 5% of total contributions to the plan during the plan year (measured in dollars). See instructions. *Complete as many entries as needed to report all applicable employers.*

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify):

---

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

---

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

---

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

---

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

---

**a**   Name of contributing employer

**b**   EIN                **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____ Day _____ Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

Schedule R (Form 5500) 2013                                                 Page **3**

**14** Enter the number of participants on whose behalf no contributions were made by an employer as an employer of the participant for:

| | | | |
|---|---|---|---|
| **a** | The current year.................................................................................................................... | **14a** | |
| **b** | The plan year immediately preceding the current plan year ................................................. | **14b** | |
| **c** | The second preceding plan year .......................................................................................... | **14c** | |

**15** Enter the ratio of the number of participants under the plan on whose behalf no employer had an obligation to make an employer contribution during the current plan year to:

| | | | |
|---|---|---|---|
| **a** | The corresponding number for the plan year immediately preceding the current plan year............................. | **15a** | |
| **b** | The corresponding number for the second preceding plan year ......................................................... | **15b** | |

**16** Information with respect to any employers who withdrew from the plan during the preceding plan year:

| | | | |
|---|---|---|---|
| **a** | Enter the number of employers who withdrew during the preceding plan year  ................................. | **16a** | |
| **b** | If line 16a is greater than 0, enter the aggregate amount of withdrawal liability assessed or estimated to be assessed against such withdrawn employers | **16b** | |

**17** If assets and liabilities from another plan have been transferred to or merged with this plan during the plan year, check box and see instructions regarding supplemental information to be included as an attachment. ………………………………………………………………………………………… ☐

| Part VI | Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans |
|---|---|

**18** If any liabilities to participants or their beneficiaries under the plan as of the end of the plan year consist (in whole or in part) of liabilities to such participants and beneficiaries under two or more pension plans as of immediately before such plan year, check box and see instructions regarding supplemental information to be included as an attachment ………………………………………………………………………………………………… ☐

**19** If the total number of participants is 1,000 or more, complete lines (a) through (c)

    **a**  Enter the percentage of plan assets held as:

        Stock: _____%   Investment-Grade Debt: _____%   High-Yield Debt: _____%   Real Estate: _____%   Other: _____%

    **b**  Provide the average duration of the combined investment-grade and high-yield debt:

        ☐ 0-3 years   ☐ 3-6 years   ☐ 6-9 years   ☐ 9-12 years   ☐ 12-15 years   ☐ 15-18 years   ☐ 18-21 years   ☐ 21 years or more

    **c**  What duration measure was used to calculate line 19(b)?

        ☐ Effective duration   ☐ Macaulay duration   ☐ Modified duration   ☐ Other (specify):

White Mountain Apache Tribe Enterprise 401(k) Plan (the "Plan")
(also referred to as White Mountain Apache Tribe Retirement Savings and 401(k) Plan)
EIN: 86-0092030

  The Plan is sponsored by the White Mountain Apache Tribe, a federally recognized Indian tribal government (the "Tribe").  The Tribe has previously made a good faith determination under Section 906 of the Pension Protection Act of 2006 (the "PPA") that the sponsor performs essential governmental functions that are not commercial in nature.  However, the Tribe has included non-government ("ERISA") provisions in its Plan, and has operated the Plan in compliance with the non-government rules for all employees deemed commercial for purposes of the IRS transition relief appearing in Internal Revenue Service ("IRS") Notice 2006-89 and Notice 2007-67 (the "IRS Transition Relief").

  While neither the IRS nor the Department of Labor ("DOL") has issued any guidance regarding whether 5500 filing is required as part of the IRS Transition Relief pending final guidance under the PPA, the Tribe historically filed these forms until learning from DOL (1) that such filings may trigger ERISA penalties and would be deemed by DOL as not having been filed at all if filed without an ERISA audit, and (2) the Tribe believed that DOL had granted the Tribe a waiver under Executive Order 13175.  As a result, the Tribe did not file Form 5500 for the Plan Years ending April 30, 2014 and April 30, 2015.

  This past year, DOL has clarified that it will require 5500 filings during the IRS Transition Relief period. The Tribe is now engaged in an administrative law proceeding with the DOL in an effort to secure clarity on whether 5500 filings and independent qualified public accountant ("IQPA") reports are required with regard to the Plan, in Case No. 2015-RIS-00023 (EBSA vs. White Mountain Apache Tribe).

  In light of the foregoing, the Tribe is now filing the Forms 5500 for the Plan Years ending April 30, 2014 and April 30, 2015 to demonstrate its ongoing efforts to operate the Plan in reasonable and good faith compliance with Section 906 of the PPA.  The Tribe has never willfully disregarded any legal obligations with regard to the Plan.  The Tribe has requested guidance from the DOL with regard to the IQPA requirements.

  The enclosed Form 5500 filing is not a waiver of government status or any exemption to which the Tribe or the Plan may be entitled to under Internal Revenue Code Section 414(d) and ERISA Section 3(32).  The Tribe also reserves any rights it may have to sovereign immunity and under Executive Order 13175.

Attachment C

| Form 5500<br><br>**Department of the Treasury**<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security<br>Administration<br><br>Pension Benefit Guaranty Corporation | **Annual Return/Report of Employee Benefit Plan**<br>This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **Complete all entries in accordance with the instructions to the Form 5500.** | OMB Nos. 1210-0110<br>1210-0089<br><br>**2014**<br><br>**This Form is Open to Public Inspection** |
| --- | --- | --- |

| **Part I** | **Annual Report Identification Information** |
| --- | --- |

For calendar plan year 2014 or fiscal plan year beginning 05/01/2014 and ending 04/30/2015

**A** This return/report is for:  ☐ a multiemployer plan;  ☐ a multiple-employer plan (Filers checking this box must attach a list of participating employer information in accordance with the form instructions); or
☒ a single-employer plan;  ☐ a DFE (specify) ____

**B** This return/report is:  ☐ the first return/report;  ☐ the final return/report;
☐ an amended return/report;  ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**D** Check box if filing under:  ☐ Form 5558;  ☐ automatic extension;  ☐ the DFVC program;
☐ special extension (enter description)

| **Part II** | **Basic Plan Information**—enter all requested information |
| --- | --- |

| **1a** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **1b** Three-digit plan number (PN) ▶ | 003 |
| --- | --- | --- |

**1c** Effective date of plan
05/01/1991

| **2a** Plan sponsor's name and address; include room or suite number (employer, if for a single-employer plan)<br><br>WHITE MOUNTAIN APACHE TRIBE<br><br><br>1 EAST OAK STREET<br>WHITERIVER, AZ 85941 | **2b** Employer Identification Number (EIN)<br>86-0092030 |
| --- | --- |
| | **2c** Plan Sponsor's telephone number<br>928-338-4872 |
| | **2d** Business code (see instructions)<br>921000 |

**Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.**

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| **SIGN HERE** | Filed with authorized/valid electronic signature. | 04/13/2016 | DERON PEACHES |
| --- | --- | --- | --- |
| | Signature of plan administrator | Date | Enter name of individual signing as plan administrator |
| **SIGN HERE** | | | |
| | Signature of employer/plan sponsor | Date | Enter name of individual signing as employer or plan sponsor |
| **SIGN HERE** | | | |
| | Signature of DFE | Date | Enter name of individual signing as DFE |
| Preparer's name (including firm name, if applicable) and address (include room or suite number) (optional) | | | Preparer's telephone number (optional) |

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**

**Form 5500 (2014)**
**v. 140124**

I

Form 5500 (2014)                                                    Page **2**

| | | | |
|---|---|---|---|
| **3a** | Plan administrator's name and address ☒Same as Plan Sponsor | **3b** | Administrator's EIN |
| | | **3c** | Administrator's telephone number |
| | | | |
| **4** | If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report: | **4b** | EIN |
| **a** | Sponsor's name | **4c** | PN |
| **5** | Total number of participants at the beginning of the plan year | **5** | 2409 |
| **6** | Number of participants as of the end of the plan year unless otherwise stated (welfare plans complete only lines **6a(1)**, **6a(2)**, **6b**, **6c**, and **6d**). | | |
| **a(1)** | Total number of active participants at the beginning of the plan year ............... | **6a(1)** | 2227 |
| **a(2)** | Total number of active participants at the end of the plan year ...................... | **6a(2)** | 2258 |
| **b** | Retired or separated participants receiving benefits ...................................... | **6b** | 0 |
| **c** | Other retired or separated participants entitled to future benefits..................... | **6c** | 149 |
| **d** | Subtotal. Add lines **6a(2)**, **6b**, and **6c**. ............................................. | **6d** | 2407 |
| **e** | Deceased participants whose beneficiaries are receiving or are entitled to receive benefits. .................... | **6e** | 43 |
| **f** | Total.  Add lines **6d** and **6e**. ............................................................ | **6f** | 2450 |
| **g** | Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | **6g** | 770 |
| **h** | Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested .... | **6h** | 0 |
| **7** | Enter the total number of employers obligated to contribute to the plan (only multiemployer plans complete this item)......... | **7** | |

**8a**  If the plan provides pension benefits, enter the applicable pension feature codes from the List of Plan Characteristics Codes in the instructions:

2E   2F   2G   2J   2K   2T

**b**  If the plan provides welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics Codes in the instructions:

| | | | | |
|---|---|---|---|---|
| **9a** | Plan funding arrangement (check all that apply) | **9b** | Plan benefit arrangement (check all that apply) | |
| **(1)** | ☐ Insurance | **(1)** | ☐ Insurance | |
| **(2)** | ☐ Code section 412(e)(3) insurance contracts | **(2)** | ☐ Code section 412(e)(3) insurance contracts | |
| **(3)** | ☒ Trust | **(3)** | ☒ Trust | |
| **(4)** | ☐ General assets of the sponsor | **(4)** | ☐ General assets of the sponsor | |

**10**  Check all applicable boxes in 10a and 10b to indicate which schedules are attached, and, where indicated, enter the number attached.  (See instructions)

| | | | | |
|---|---|---|---|---|
| **a** | **Pension Schedules** | **b** | **General Schedules** | |
| **(1)** | ☒ **R**  (Retirement Plan Information) | **(1)** | ☒ **H**  (Financial Information) | |
| **(2)** | ☐ **MB**  (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) - signed by the plan actuary | **(2)** | ☐ **I**  (Financial Information – Small Plan) | |
| | | **(3)** | ___ **A**  (Insurance Information) | |
| | | **(4)** | ☒ **C**  (Service Provider Information) | |
| **(3)** | ☐ **SB**  (Single-Employer Defined Benefit Plan Actuarial Information) - signed by the plan actuary | **(5)** | ☒ **D**  (DFE/Participating Plan Information) | |
| | | **(6)** | ☐ **G**  (Financial Transaction Schedules) | |

| Part III | Form M-1 Compliance Information (to be completed by welfare benefit plans) |
|---|---|

**11a** If the plan provides welfare benefits, was the plan subject to the Form M-1 filing requirements during the plan year? (See instructions and 29 CFR 2520.101-2.) ........................……….…… ☐ Yes   ☐ No

If "Yes" is checked, complete lines 11b and 11c.

**11b** Is the plan currently in compliance with the Form M-1 filing requirements? (See instructions and 29 CFR 2520.101-2.) ……...... ☐ Yes   ☐ No

**11c** Enter the Receipt Confirmation Code for the 2014 Form M-1 annual report.  If the plan was not required to file the 2014 Form M-1 annual report, enter the Receipt Confirmation Code for the most recent Form M-1 that was required to be filed under the Form M-1 filing requirements. (Failure to enter a valid Receipt Confirmation Code will subject the Form 5500 filing to rejection as incomplete.)

Receipt Confirmation Code_____

| SCHEDULE C<br>(Form 5500)<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Service Provider Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2014**<br><br>**This Form is Open to Public Inspection.** |

For calendar plan year 2014 or fiscal plan year beginning  05/01/2014                                      and ending  04/30/2015

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** Three-digit<br>plan number (PN)  ▶ | 003 |

| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 |

---

| **Part I** | **Service Provider Information (see instructions)** |

You must complete this Part, in accordance with the instructions, to report the information required for **each person** who received, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of monetary value) in connection with services rendered to the plan or the person's position with the plan during the plan year. If a person received **only** eligible indirect compensation for which the plan received the required disclosures, you are required to answer line 1 but are not required to include that person when completing the remainder of this Part.

**1  Information on Persons Receiving Only Eligible Indirect Compensation**

**a** Check "Yes" or "No" to indicate whether you are excluding a person from the remainder of this Part because they received only eligible indirect compensation for which the plan received the required disclosures (see instructions for definitions and conditions)................ [X] Yes  [ ] No

**b** If you answered line 1a "Yes," enter the name and EIN or address of each person providing the required disclosures for the service providers who received only eligible indirect compensation. Complete as many entries as needed (see instructions).

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |
| AMERICAN FUNDS<br><br>95-1411037 |

| **(b)** Enter name and EIN or address of person who provided you disclosure on eligible indirect compensation |
| --- |
| INVESCO AIM<br><br>76-0528004 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |
| MFS<br><br>04-2747644 |

| **(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation |
| --- |

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500**

**Schedule C (Form 5500) 2014**
**v.140124**

Page **2-** 1

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

Schedule C (Form 5500) 2014

Page **3** - [1]

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

| **(a)** Enter name and EIN or address (see instructions) |
|---|

WELLS FARGO BANK, N.A.

94-1347393

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 15 21 37 49 50 52 60 62 63 64 | SERVICE PROVIDER | 45628 | Yes [X]   No [ ] | Yes [X]   No [ ] | 0 | Yes [ ]   No [X] |

| **(a)** Enter name and EIN or address (see instructions) |
|---|

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes [ ]   No [ ] | Yes [ ]   No [ ] | | Yes [ ]   No [ ] |

| **(a)** Enter name and EIN or address (see instructions) |
|---|

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes [ ]   No [ ] | Yes [ ]   No [ ] | | Yes [ ]   No [ ] |

Schedule C (Form 5500) 2014

Page **3 -** 2

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

| | **(a)** Enter name and EIN or address (see instructions) | | | | | |
|---|---|---|---|---|---|---|

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐   No ☐ | Yes ☐   No ☐ | | Yes ☐   No ☐ |

| | **(a)** Enter name and EIN or address (see instructions) | | | | | |
|---|---|---|---|---|---|---|

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐   No ☐ | Yes ☐   No ☐ | | Yes ☐   No ☐ |

| | **(a)** Enter name and EIN or address (see instructions) | | | | | |
|---|---|---|---|---|---|---|

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐   No ☐ | Yes ☐   No ☐ | | Yes ☐   No ☐ |

Schedule C (Form 5500) 2014           Page **4-** [1]

| Part I | Service Provider Information (continued) |
|---|---|

**3** If you reported on line 2 receipt of indirect compensation, other than eligible indirect compensation, by a service provider, and the service provider is a fiduciary or provides contract administrator, consulting, custodial, investment advisory, investment management, broker, or recordkeeping services, answer the following questions for (a) each source from whom the service provider received $1,000 or more in indirect compensation and (b) each source for whom the service provider gave you a formula used to determine the indirect compensation instead of an amount or estimated amount of the indirect compensation. Complete as many entries as needed to report the required information for each source.

| (a) Enter service provider name as it appears on line 2 | (b) Service Codes (see instructions) | (c) Enter amount of indirect compensation |
|---|---|---|
| | | |

| (d) Enter name and EIN (address) of source of indirect compensation | (e) Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| | |

| (a) Enter service provider name as it appears on line 2 | (b) Service Codes (see instructions) | (c) Enter amount of indirect compensation |
|---|---|---|
| | | |

| (d) Enter name and EIN (address) of source of indirect compensation | (e) Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| | |

| (a) Enter service provider name as it appears on line 2 | (b) Service Codes (see instructions) | (c) Enter amount of indirect compensation |
|---|---|---|
| | | |

| (d) Enter name and EIN (address) of source of indirect compensation | (e) Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| | |

8

Schedule C (Form 5500) 2014

Page **5-** 1

| Part II | Service Providers Who Fail or Refuse to Provide Information |
|---|---|

**4**   Provide, to the extent possible, the following information for each service provider who failed or refused to provide the information necessary to complete this Schedule.

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |
| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
| | | |

Schedule C (Form 5500) 2014          Page **6-** 1

| **Part III** | **Termination Information on Accountants and Enrolled Actuaries (see instructions)** |
|---|---|
| | (complete as many entries as needed) |

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **a** Name: | **b** EIN: |
|---|---|
| **c** Position: | |
| **d** Address: | **e** Telephone: |

Explanation:

| **SCHEDULE D**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration | **DFE/Participating Plan Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2014**<br><br>**This Form is Open to Public Inspection.** |
|---|---|---|

For calendar plan year 2014 or fiscal plan year beginning  05/01/2014  and ending  04/30/2015

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** Three-digit plan number (PN)  ▶  003 |
|---|---|

| **C** Plan or DFE sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 |
|---|---|

| **Part I** | **Information on interests in MTIAs, CCTs, PSAs, and 103-12 IEs (to be completed by plans and DFEs)**<br>(Complete as many entries as needed to report all interests in DFEs) |
|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:  WELLS FARGO STABLE RETURN FUND N60

**b** Name of sponsor of entity listed in (a):  WELLS FARGO BANK, N.A.

| **c** EIN-PN 52-2251407-001 | **d** Entity code  C | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions)  3022788 |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:

**b** Name of sponsor of entity listed in (a):

| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) |
|---|---|---|

Schedule D (Form 5500) 2014                                          Page **3** - 1

| **Part II** | **Information on Participating Plans (to be completed by DFEs)**<br>(Complete as many entries as needed to report all participating plans) |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of<br>plan sponsor | **c** EIN-PN |
|---|---|

13

| SCHEDULE H<br>(Form 5500)<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Financial Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA), and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2014**<br><br>**This Form is Open to Public Inspection** |
|---|---|---|

| For calendar plan year 2014 or fiscal plan year beginning   05/01/2014 | | and ending   04/30/2015 | |
|---|---|---|---|

| **A** Name of plan<br>WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN | **B** | Three-digit<br>plan number (PN)   ▶ | 003 |
|---|---|---|---|

| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>WHITE MOUNTAIN APACHE TRIBE | **D** Employer Identification Number (EIN)<br>86-0092030 |
|---|---|

---

| **Part I** | **Asset and Liability Statement** |
|---|---|

**1** Current value of plan assets and liabilities at the beginning and end of the plan year. Combine the value of plan assets held in more than one trust. Report the value of the plan's interest in a commingled fund containing the assets of more than one plan on a line-by-line basis unless the value is reportable on lines 1c(9) through 1c(14). Do not enter the value of that portion of an insurance contract which guarantees, during this plan year, to pay a specific dollar benefit at a future date. **Round off amounts to the nearest dollar.** MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 1b(1), 1b(2), 1c(8), 1g, 1h, and 1i. CCTs, PSAs, and 103-12 IEs also do not complete lines 1d and 1e. See instructions.

| **Assets** | | **(a)** Beginning of Year | **(b)** End of Year |
|---|---|---|---|
| **a** Total noninterest-bearing cash ................................................. | 1a | | |
| **b** Receivables (less allowance for doubtful accounts): | | | |
|    **(1)** Employer contributions ............................................... | 1b(1) | | |
|    **(2)** Participant contributions ............................................. | 1b(2) | | |
|    **(3)** Other.......................................................................... | 1b(3) | | |
| **c** General investments: | | | |
|    **(1)** Interest-bearing cash (include money market accounts & certificates of deposit)............................................ | 1c(1) | | |
|    **(2)** U.S. Government securities ....................................... | 1c(2) | | |
|    **(3)** Corporate debt instruments (other than employer securities): | | | |
|      **(A)** Preferred ........................................................... | 1c(3)(A) | | |
|      **(B)** All other ............................................................. | 1c(3)(B) | | |
|    **(4)** Corporate stocks (other than employer securities): | | | |
|      **(A)** Preferred ........................................................... | 1c(4)(A) | | |
|      **(B)** Common............................................................ | 1c(4)(B) | | |
|    **(5)** Partnership/joint venture interests ........................... | 1c(5) | | |
|    **(6)** Real estate (other than employer real property)....... | 1c(6) | | |
|    **(7)** Loans (other than to participants) ........................... | 1c(7) | | |
|    **(8)** Participant loans ..................................................... | 1c(8) | 1141978 | 1063475 |
|    **(9)** Value of interest in common/collective trusts ......... | 1c(9) | 3240511 | 3022788 |
|    **(10)** Value of interest in pooled separate accounts ....... | 1c(10) | | |
|    **(11)** Value of interest in master trust investment accounts ........................... | 1c(11) | | |
|    **(12)** Value of interest in 103-12 investment entities........ | 1c(12) | | |
|    **(13)** Value of interest in registered investment companies (e.g., mutual funds)......................... | 1c(13) | 8520991 | 8628036 |
|    **(14)** Value of funds held in insurance company general account (unallocated contracts)................ | 1c(14) | | |
|    **(15)** Other........................................................................ | 1c(15) | | |

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500**     Schedule H (Form 5500) 2014
v. 140124

Schedule H  (Form 5500) 2014                                                             Page **2**

| | | **(a)** Beginning of Year | **(b)** End of Year |
|---|---|---|---|
| **1d** | Employer-related investments: | | |
| **(1)** | Employer securities...................................................... **1d(1)** | | |
| **(2)** | Employer real property................................................. **1d(2)** | | |
| **e** | Buildings and other property used in plan operation ........................ **1e** | | |
| **f** | Total assets (add all amounts in lines 1a through 1e) .................................... **1f** | 12903480 | 12714299 |

### Liabilities

| | | | |
|---|---|---|---|
| **g** | Benefit claims payable............................................................................. **1g** | | |
| **h** | Operating payables ................................................................................. **1h** | | |
| **i** | Acquisition indebtedness ........................................................................ **1i** | | |
| **j** | Other liabilities ....................................................................................... **1j** | | |
| **k** | Total liabilities (add all amounts in lines 1g through1j) ................................. **1k** | 0 | 0 |

### Net Assets

| | | | |
|---|---|---|---|
| **l** | Net assets (subtract line 1k from line 1f)................................................... **1l** | 12903480 | 12714299 |

| **Part II** | **Income and Expense Statement** |
|---|---|

**2**  Plan income, expenses, and changes in net assets for the year. Include all income and expenses of the plan, including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar. MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 2a, 2b(1)(E), 2e, 2f, and 2g.

### Income

| | | **(a)** Amount | **(b)** Total |
|---|---|---|---|
| **a** | **Contributions:** | | |
| **(1)** | Received or receivable in cash from: **(A)** Employers................................ **2a(1)(A)** | 23024 | |
| **(B)** | Participants ............................................................. **2a(1)(B)** | 1059720 | |
| **(C)** | Others (including rollovers)....................................... **2a(1)(C)** | | |
| **(2)** | Noncash contributions ............................................................. **2a(2)** | | |
| **(3)** | Total contributions. Add lines **2a(1)(A), (B), (C),** and line **2a(2)**................ **2a(3)** | | 1082744 |
| **b** | **Earnings on investments:** | | |
| **(1)** | Interest: | | |
| **(A)** | Interest-bearing cash (including money market accounts and certificates of deposit)............................................... **2b(1)(A)** | | |
| **(B)** | U.S. Government securities ...................................... **2b(1)(B)** | | |
| **(C)** | Corporate debt instruments ..................................... **2b(1)(C)** | | |
| **(D)** | Loans (other than to participants) ........................... **2b(1)(D)** | | |
| **(E)** | Participant loans ..................................................... **2b(1)(E)** | 41363 | |
| **(F)** | Other ....................................................................... **2b(1)(F)** | | |
| **(G)** | Total interest. Add lines **2b(1)(A)** through **(F)**........... **2b(1)(G)** | | 41363 |
| **(2)** | Dividends: **(A)** Preferred stock......................................... **2b(2)(A)** | | |
| **(B)** | Common stock.......................................................... **2b(2)(B)** | | |
| **(C)** | Registered investment company shares (e.g. mutual funds)............. **2b(2)(C)** | 207567 | |
| **(D)** | Total dividends. Add lines **2b(2)(A), (B),** and **(C)** | | 207567 |
| **(3)** | Rents............................................................................... **2b(3)** | | |
| **(4)** | Net gain (loss) on sale of assets:  **(A)** Aggregate proceeds ..................... **2b(4)(A)** | | |
| **(B)** | Aggregate carrying amount (see instructions) .......... **2b(4)(B)** | | |
| **(C)** | Subtract line **2b(4)(B)** from line **2b(4)(A)** and enter result ................. **2b(4)(C)** | | 0 |
| **(5)** | Unrealized appreciation (depreciation) of assets: **(A)** Real estate...................... **2b(5)(A)** | | |
| **(B)** | Other .................................................................. **2b(5)(B)** | | |
| **(C)** | Total unrealized appreciation of assets. Add lines **2b(5)(A)** and **(B)**. | | 0 |

Schedule H (Form 5500) 2014                                        Page **3**

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **(6)** Net investment gain (loss) from common/collective trusts | 2b(6) | | 30546 |
| **(7)** Net investment gain (loss) from pooled separate accounts | 2b(7) | | |
| **(8)** Net investment gain (loss) from master trust investment accounts | 2b(8) | | |
| **(9)** Net investment gain (loss) from 103-12 investment entities | 2b(9) | | |
| **(10)** Net investment gain (loss) from registered investment companies (e.g., mutual funds) | 2b(10) | | 474190 |
| **c** Other income | 2c | | 175 |
| **d** Total income. Add all **income** amounts in column (b) and enter total | 2d | | 1836585 |

### Expenses

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **e** Benefit payment and payments to provide benefits: | | | |
| **(1)** Directly to participants or beneficiaries, including direct rollovers | 2e(1) | 1949485 | |
| **(2)** To insurance carriers for the provision of benefits | 2e(2) | | |
| **(3)** Other | 2e(3) | | |
| **(4)** Total benefit payments. Add lines **2e(1)** through **(3)** | 2e(4) | | 1949485 |
| **f** Corrective distributions (see instructions) | 2f | | 1786 |
| **g** Certain deemed distributions of participant loans (see instructions) | 2g | | |
| **h** Interest expense | 2h | | |
| **i** Administrative expenses: **(1)** Professional fees | 2i(1) | | |
| **(2)** Contract administrator fees | 2i(2) | | |
| **(3)** Investment advisory and management fees | 2i(3) | | |
| **(4)** Other | 2i(4) | 74495 | |
| **(5)** Total administrative expenses. Add lines **2i(1)** through **(4)** | 2i(5) | | 74495 |
| **j** Total expenses. Add all **expense** amounts in column (b) and enter total | 2j | | 2025766 |

### Net Income and Reconciliation

| | | (a) Amount | (b) Total |
|---|---|---|---|
| **k** Net income (loss). Subtract line **2j** from line **2d** | 2k | | -189181 |
| **l** Transfers of assets: | | | |
| **(1)** To this plan | 2l(1) | | |
| **(2)** From this plan | 2l(2) | | |

---

## Part III  Accountant's Opinion

**3** Complete lines 3a through 3c if the opinion of an independent qualified public accountant is attached to this Form 5500. Complete line 3d if an opinion is not attached.

**a** The attached opinion of an independent qualified public accountant for this plan is (see instructions):

**(1)** ☐ Unqualified   **(2)** ☐ Qualified   **(3)** ☒ Disclaimer   **(4)** ☐ Adverse

**b** Did the accountant perform a limited scope audit pursuant to 29 CFR 2520.103-8 and/or 103-12(d)?   ☒ Yes   ☐ No

**c** Enter the name and EIN of the accountant (or accounting firm) below:

**(1)** Name: REDW     **(2)** EIN: 85-0203431

**d** The opinion of an independent qualified public accountant is **not attached** because:

**(1)** ☐ This form is filed for a CCT, PSA, or MTIA.   **(2)** ☐ It will be attached to the next Form 5500 pursuant to 29 CFR 2520.104-50.

---

## Part IV  Compliance Questions

**4** CCTs and PSAs do not complete Part IV. MTIAs, 103-12 IEs, and GIAs do not complete lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, 4n, or 5. 103-12 IEs also do not complete lines 4j and 4l. MTIAs also do not complete line 4l.

During the plan year:

| | | Yes | No | Amount |
|---|---|---|---|---|
| **a** Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102? Continue to answer "Yes" for any prior year failures until fully corrected. (See instructions and DOL's Voluntary Fiduciary Correction Program.) | 4a | | X | |
| **b** Were any loans by the plan or fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? Disregard participant loans secured by participant's account balance. (Attach Schedule G (Form 5500) Part I if "Yes" is checked.) | 4b | | X | |

I6

| | | | Yes | No | Amount |
|---|---|---|---|---|---|
| c | Were any leases to which the plan was a party in default or classified during the year as uncollectible? (Attach Schedule G (Form 5500) Part II if "Yes" is checked.) ............................ | 4c | | X | |
| d | Were there any nonexempt transactions with any party-in-interest? (Do not include transactions reported on line 4a. Attach Schedule G (Form 5500) Part III if "Yes" is checked.)........................................................................................... | 4d | | X | |
| e | Was this plan covered by a fidelity bond? | 4e | X | | 500000 |
| f | Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty? ..................................................................... | 4f | | X | |
| g | Did the plan hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser?........................................... | 4g | | X | |
| h | Did the plan receive any noncash contributions whose value was neither readily determinable on an established market nor set by an independent third party appraiser?.......... | 4h | | X | |
| i | Did the plan have assets held for investment? (Attach schedule(s) of assets if "Yes" is checked, and see instructions for format requirements.)............................................... | 4i | X | | |
| j | Were any plan transactions or series of transactions in excess of 5% of the current value of plan assets? (Attach schedule of transactions if "Yes" is checked, and see instructions for format requirements.)............................................... | 4j | | X | |
| k | Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of the PBGC? ........................................................ | 4k | | X | |
| l | Has the plan failed to provide any benefit when due under the plan?............................................. | 4l | | X | |
| m | If this is an individual account plan, was there a blackout period? (See instructions and 29 CFR 2520.101-3.)................................................................................................... | 4m | | X | |
| n | If 4m was answered "Yes," check the "Yes" box if you either provided the required notice or one of the exceptions to providing the notice applied under 29 CFR 2520.101-3. ............................ | 4n | | | |

**5a** Has a resolution to terminate the plan been adopted during the plan year or any prior plan year?
If "Yes," enter the amount of any plan assets that reverted to the employer this year........................... ☐ Yes ☒ No   **Amount:**

**5b** If, during this plan year, any assets or liabilities were transferred from this plan to another plan(s), identify the plan(s) to which assets or liabilities were transferred. (See instructions.)

| **5b(1)** Name of plan(s) | **5b(2)** EIN(s) | **5b(3)** PN(s) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**5c** If the plan is a defined benefit plan, is it covered under the PBGC insurance program (see ERISA section 4021)? ..... ☐ Yes ☐ No ☐ Not determined

| **Part V** | **Trust Information (optional)** |
|---|---|
| **6a** Name of trust | **6b** Trust's EIN |
| | |

| SCHEDULE R<br>(Form 5500) | Retirement Plan Information | OMB No. 1210-0110 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | This schedule is required to be filed under section 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | **2014**<br><br>**This Form is Open to Public Inspection.** |

| For calendar plan year 2014 or fiscal plan year beginning | 05/01/2014 | and ending | 04/30/2015 | |
|---|---|---|---|---|

**A** Name of plan
WHITE MOUNTAIN APACHE TRIBE RETIREMENT SAVINGS AND 401(K) PLAN

**B** Three-digit plan number (PN) ▶ 003

**C** Plan sponsor's name as shown on line 2a of Form 5500
WHITE MOUNTAIN APACHE TRIBE

**D** Employer Identification Number (EIN)
86-0092030

---

| **Part I** | **Distributions** |
|---|---|

**All references to distributions relate only to payments of benefits during the plan year.**

**1** Total value of distributions paid in property other than in cash or the forms of property specified in the instructions.................................................................................................................... | **1** | 0

**2** Enter the EIN(s) of payor(s) who paid benefits on behalf of the plan to participants or beneficiaries during the year (if more than two, enter EINs of the two payors who paid the greatest dollar amounts of benefits):

EIN(s): 41-6257133 _____    _____

**Profit-sharing plans, ESOPs, and stock bonus plans, skip line 3.**

**3** Number of participants (living or deceased) whose benefits were distributed in a single sum, during the plan year.................................................................................................................... | **3** |

| **Part II** | **Funding Information** (If the plan is not subject to the minimum funding requirements of section of 412 of the Internal Revenue Code or ERISA section 302, skip this Part) |
|---|---|

**4** Is the plan administrator making an election under Code section 412(d)(2) or ERISA section 302(d)(2)?........................ ☐ Yes ☐ No ☐ N/A

**If the plan is a defined benefit plan, go to line 8.**

**5** If a waiver of the minimum funding standard for a prior year is being amortized in this plan year, see instructions and enter the date of the ruling letter granting the waiver.     **Date:** Month _____ Day _____ Year _____

**If you completed line 5, complete lines 3, 9, and 10 of Schedule MB and do not complete the remainder of this schedule.**

**6 a** Enter the minimum required contribution for this plan year (include any prior year accumulated funding deficiency not waived)...................................................... | **6a** |

**b** Enter the amount contributed by the employer to the plan for this plan year................................. | **6b** |

**c** Subtract the amount in line 6b from the amount in line 6a. Enter the result (enter a minus sign to the left of a negative amount)....................... | **6c** |

**If you completed line 6c, skip lines 8 and 9.**

**7** Will the minimum funding amount reported on line 6c be met by the funding deadline?................................ ☐ Yes ☐ No ☐ N/A

**8** If a change in actuarial cost method was made for this plan year pursuant to a revenue procedure or other authority providing automatic approval for the change or a class ruling letter, does the plan sponsor or plan administrator agree with the change?.................................................................... ☐ Yes ☐ No ☐ N/A

| **Part III** | **Amendments** |
|---|---|

**9** If this is a defined benefit pension plan, were any amendments adopted during this plan year that increased or decreased the value of benefits? If yes, check the appropriate box. If no, check the "No" box............................................................................ ☐ Increase ☐ Decrease ☐ Both ☐ No

| **Part IV** | **ESOPs** (see instructions). If this is not a plan described under Section 409(a) or 4975(e)(7) of the Internal Revenue Code, skip this Part. |
|---|---|

**10** Were unallocated employer securities or proceeds from the sale of unallocated securities used to repay any exempt loan? ............ ☐ Yes ☐ No

**11 a** Does the ESOP hold any preferred stock?................................................................................ ☐ Yes ☐ No

**b** If the ESOP has an outstanding exempt loan with the employer as lender, is such loan part of a "back-to-back" loan? (See instructions for definition of "back-to-back" loan.) ☐ Yes ☐ No

**12** Does the ESOP hold any stock that is not readily tradable on an established securities market?................................ ☐ Yes ☐ No

**For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.**

**Schedule R (Form 5500) 2014**
**v. 140124**

Schedule R (Form 5500) 2014                                      Page **2** - ☐

| Part V | Additional Information for Multiemployer Defined Benefit Pension Plans |
|---|---|

**13**   Enter the following information for each employer that contributed more than 5% of total contributions to the plan during the plan year (measured in dollars). See instructions. *Complete as many entries as needed to report all applicable employers.*

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify):

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify): _____

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify): _____

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify): _____

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify): _____

**a**   Name of contributing employer

**b**   EIN           **c**   Dollar amount contributed by employer

**d**   Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box* ☐ *and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e**   Contribution rate information *(If more than one rate applies, check this box* ☐ *and see instructions regarding required attachment. Otherwise, complete lines 13e(1) and 13e(2).)*
    (1)   Contribution rate (in dollars and cents) _____
    (2)   Base unit measure: ☐ Hourly    ☐ Weekly    ☐ Unit of production    ☐ Other (specify): _____

| | | | |
|---|---|---|---|
| **14** | Enter the number of participants on whose behalf no contributions were made by an employer as an employer of the participant for: | | |
| **a** | The current year.............................................................................................................................. | **14a** | |
| **b** | The plan year immediately preceding the current plan year .......................................................... | **14b** | |
| **c** | The second preceding plan year ................................................................................................... | **14c** | |
| **15** | Enter the ratio of the number of participants under the plan on whose behalf no employer had an obligation to make an employer contribution during the current plan year to: | | |
| **a** | The corresponding number for the plan year immediately preceding the current plan year................................ | **15a** | |
| **b** | The corresponding number for the second preceding plan year ..................................................... | **15b** | |
| **16** | Information with respect to any employers who withdrew from the plan during the preceding plan year: | | |
| **a** | Enter the number of employers who withdrew during the preceding plan year  ............................................ | **16a** | |
| **b** | If line 16a is greater than 0, enter the aggregate amount of withdrawal liability assessed or estimated to be assessed against such withdrawn employers......................................................................................... | **16b** | |
| **17** | If assets and liabilities from another plan have been transferred to or merged with this plan during the plan year, check box and see instructions regarding supplemental information to be included as an attachment. ……………………………………………………………………………………….…… ☐ | | |

| **Part VI** | **Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans** |
|---|---|

**18** If any liabilities to participants or their beneficiaries under the plan as of the end of the plan year consist (in whole or in part) of liabilities to such participants and beneficiaries under two or more pension plans as of immediately before such plan year, check box and see instructions regarding supplemental information to be included as an attachment …………………………………………………………………………………………………….…… ☐

**19** If the total number of participants is 1,000 or more, complete lines (a) through (c)

    **a** Enter the percentage of plan assets held as:

        Stock: _____%  Investment-Grade Debt: _____%  High-Yield Debt: _____%  Real Estate: _____%  Other: _____%

    **b** Provide the average duration of the combined investment-grade and high-yield debt:

        ☐ 0-3 years   ☐ 3-6 years   ☐ 6-9 years   ☐ 9-12 years   ☐ 12-15 years   ☐ 15-18 years   ☐ 18-21 years   ☐ 21 years or more

    **c** What duration measure was used to calculate line 19(b)?

        ☐ Effective duration   ☐ Macaulay duration   ☐ Modified duration   ☐ Other (specify):

White Mountain Apache Tribe Enterprise 401(k) Plan (the "Plan")
(also referred to as White Mountain Apache Tribe Retirement Savings and 401(k) Plan)
EIN: 86-0092030

The Plan is sponsored by the White Mountain Apache Tribe, a federally recognized Indian tribal government (the "Tribe").  The Tribe has previously made a good faith determination under Section 906 of the Pension Protection Act of 2006 (the "PPA") that the sponsor performs essential governmental functions that are not commercial in nature.  However, the Tribe has included non-government ("ERISA") provisions in its Plan, and has operated the Plan in compliance with the non-government rules for all employees deemed commercial for purposes of the IRS transition relief appearing in Internal Revenue Service ("IRS") Notice 2006-89 and Notice 2007-67 (the "IRS Transition Relief").

While neither the IRS nor the Department of Labor ("DOL") has issued any guidance regarding whether 5500 filing is required as part of the IRS Transition Relief pending final guidance under the PPA, the Tribe historically filed these forms until learning from DOL (1) that such filings may trigger ERISA penalties and would be deemed by DOL as not having been filed at all if filed without an ERISA audit, and (2) the Tribe believed that DOL had granted the Tribe a waiver under Executive Order 13175.  As a result, the Tribe did not file Form 5500 for the Plan Years ending April 30, 2014 and April 30, 2015.

This past year, DOL has clarified that it will require 5500 filings during the IRS Transition Relief period. The Tribe is now engaged in an administrative law proceeding with the DOL in an effort to secure clarity on whether 5500 filings and independent qualified public accountant ("IQPA") reports are required with regard to the Plan, in Case No. 2015-RIS-00023 (EBSA vs. White Mountain Apache Tribe).

In light of the foregoing, the Tribe is now filing the Forms 5500 for the Plan Years ending April 30, 2014 and April 30, 2015 to demonstrate its ongoing efforts to operate the Plan in reasonable and good faith compliance with Section 906 of the PPA.  The Tribe has never willfully disregarded any legal obligations with regard to the Plan.  The Tribe has requested guidance from the DOL with regard to the IQPA requirements.

The enclosed Form 5500 filing is not a waiver of government status or any exemption to which the Tribe or the Plan may be entitled to under Internal Revenue Code Section 414(d) and ERISA Section 3(32).  The Tribe also reserves any rights it may have to sovereign immunity and under Executive Order 13175.

Attachment D

**U.S. Department of Labor**   Employee Benefits Security Administration
Washington, D.C. 20210



MAY 2 8 2019

In the Matter of:

**U.S. DEPARTMENT OF LABOR,**      **Date: May 28, 2019**
**EMPLOYEE BENEFITS SECURITY**
**ADMINISTRATION**

       **Complainant-Appellee**      **OALJ CASE No. 2015-RIS-00023**

      **v.**

**PLAN ADMINISTRATOR,**
**WHITE MOUNTAIN APACHE TRIBE**
**RETIREMENT SAVINGS AND 401(k)**
**PROFIT SHARING PLAN**

       **Respondent-Appellant**

### DECISION AND ORDER
### AFFIRMING THE ADMINISTRATIVE LAW JUDGE DECISION AND ORDER
### DATED NOVEMBER 30, 2016

This proceeding is on appeal from the United States Department of Labor, Office of Administrative Law Judges ("OALJ"), and arises under the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") and the implementing regulations at 29 C.F.R. Parts 2520 (rules and regulations for reporting and disclosure), 2560 (rules and regulations for administration and enforcement), and 2570 (procedural regulations under ERISA).

### BACKGROUND

The White Mountain Apache Tribe Retirement Savings and 401(k) Profit Sharing Plan (the "Plan") is an employee pension benefit plan established or maintained, and administered, by the White Mountain Apache Tribe, a federally recognized Indian tribal government, to provide retirement income to employees. At issue in this appeal is whether the Plan is an ERISA covered plan that is required to file an annual report that includes an independent qualified public accountant ("IQPA") report. The Plan is ERISA covered if its participants perform commercial activities.

ERISA Section 502(c)(2) provides for a civil penalty to be assessed by the Secretary for a plan administrator's failure or refusal to file the required annual report. The regulations provide that the amount assessed under Section 502(c)(2) of the Act shall be determined by the Department of Labor, taking into consideration the degree and/or willfulness of the failure or refusal to file

1

the annual report. 29 C.F .R. § 2560.502c-2(b).  After the Department has provided an administrator a written notice of intent to assess a penalty, the administrator may file a statement of reasonable cause regarding why the penalty, as calculated, should be reduced, or not be assessed. The statement must set forth all the facts alleged as reasonable cause for the reduction or non-assessment of the penalty. 29 C.F.R. § 2560.502c-2(e). The Department may determine that all or part of the penalty amount in the notice of intent to assess a penalty shall not be assessed on a showing that the administrator complied with the requirements of ERISA Section 101(b)(l) or on a showing by the administrator of mitigating circumstances regarding the degree or willfulness of the noncompliance. 29 C.F.R. § 2560.502c-2(d). Following a review of all the facts alleged in support of a complete or partial waiver of the penalty, the Department notifies the administrator of its determination whether to waive the penalty, in whole or in part, or to fully assess the penalty. 29 C.F.R. § 2560.502c-2(g).

The Plan Administrator ("WMAT") did not file with the U.S. Department of Labor, Employee Benefits Security Administration ("DOL" or "EBSA") a Form 5500 Annual Return/Report of Employee Benefit Plan ("Annual Report") that included an independent IQPA report for the Plan for the 2012 Plan Year ending April 30, 2013.  WMAT appended a statement with the Annual Report, which stated that there was a good faith determination made under section 906 of the Pension Protection Act ("PPA")[1] that WMAT employees performed essential government functions that are not commercial in nature and therefore, did not have to file an IQPA report. WMAT noted that the Plan also included employees engaged in activities identified as "commercial" in Internal Revenue Service Notice 2006-89.[2]

On September 15, 2014, EBSA issued a Notice of Rejection of the Plan's Form 5500 Annual Report to the WMAT for failing to attach an IQPA report for the Plan Year ending April 30, 2013.  The Notice of Rejection informed WMAT it could be subject to civil penalties of $1,100.00 per day.

On October 30, 2014, WMAT sent a letter to EBSA asserting the penalty for the delinquent filing should be waived because: (1) the Plan is exempt from reporting requirements under

---

[1] The PPA amended the definition of "governmental plan" as the term appears in Internal Revenue Code Section 414(d) and ERISA Section 3(32).  Of relevance here, the term "governmental plan" includes a plan which is established and maintained by an Indian tribal government, a subdivision of an Indian tribal government, or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).

[2] Internal Revenue Service Notice 2006-89 advises of the change in the definition of governmental plans and provides transitional relief.  The Notice permits Indian tribal plans to be considered as meeting the amended definition of "governmental plan" if compliance was based upon a "reasonable and good faith interpretation" of the amendment. However, the Notice expressly stated it is not reasonable and in good faith to interpret a plan as a "governmental plan" if such plan includes employees engaged in commercial activities such as being "employed by a hotel, casino, service station, convenience store, or marina operated by the tribal government."

ERISA 3(32); (2) the Plan did not cover employees engaged in commercial activities; and (3) EBSA should waive the filing requirements under Executive Order 13175.

On March 23, 2015, the Department issued a Notice of Intent to Assess a Penalty against the WMAT for its deficient Form 5500 filing for Plan Year 2012.

By letter dated April 27, 2015, WMAT filed a Statement of Reasonable Cause and Request for Waiver of Penalties; Request for Relief under Executive Order 13175; and Request for Pre-decisional Conference and to Supplement the Record. WMAT asserted the Department failed to provide sufficient guidance related to the new amendments to the PPA's definitions of "non-governmental tribally sponsored plan," an "essential governmental function" or the term "commercial" in the context of Section 3(32) of ERISA.[3] It also alleged the Department had an inconsistent enforcement policy, and requested a Pre-decisional conference.

On May 4, 2015, EBSA issued a Notice of Determination on Statement of Reasonable Cause: White Mountain Apache Tribe Retirement Savings and 401(k) Plan Annual Report. This document stated that EBSA found there was no reasonable cause to waive the penalty because: (1) no IQPA report was submitted for the Plan's 2012 year; (2) requirements in the Department's Tribal Consultation Policy and Executive Order 13175 did not apply to enforcement actions for violations of ERISA Section 103; (3) the WMAT did not present reasonable cause for its failure to file an acceptable annual report initially, and failed to correct this mistake in a timely manner; and (4) WMAT had a fiduciary duty to meet the reporting requirements. The Department assessed a penalty of $50,000 under Section 502(c)(2) of ERISA.

On June 4, 2015, WMAT filed an Answer and Request for Hearing. In this document, WMAT admitted that an IQPA report was not filed with respect to the 2012 plan year. However, in contrast to the WMAT's statement appended to its Form 5500 filing for the 2012 plan year, this document stated that "all employees covered by the Plan perform functions that are not commercial in nature."

On June 4, 2015, WMAT filed a motion to conduct discovery.

On August 19, 2015, the Administrative Law Judge ("ALJ") issued a Notice of Assignment and Hearing and Pre-Hearing Order setting the hearing for December 14, 2015.

On September 1, 2015, EBSA argued that discovery should not be permitted.

On September 10, 2015, the ALJ denied WMAT's discovery except for two requests for admission, two interrogatories, and two requests for production.

---

[3] Section 906 of the PPA amended both the Code and the ERISA to legislatively classify, for the first time, tribally-sponsored employee pension plans as either governmental or commercial plans depending on the nature of the tribal employer's activities. Section 906 defines governmental plans to include plans established by "an Indian tribal government, a subdivision of an Indian tribal government or an agency of or instrumentality of either, and all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government functions)."

3

On November 13, 2015, EBSA filed a motion for summary decision seeking summary decision in its favor affirming the penalty assessed against WMAT.

The ALJ granted continuances of the matter and set deadlines for the parties' responses.

On February 25, 2016, WMAT filed a Response in Opposition to EBSA's Motion for Summary Decision and Cross Motion for Summary Decision in Favor of Respondent.

On March 14, 2016, EBSA filed a Response in Opposition to Respondent's Cross Motion for Summary Decision.

On April 7, 2016, Respondent filed a Reply in Support of Cross Motion.

On June 1, 2016, the ALJ held a telephone conference with the parties and subsequently received filings responsive to the questions raised by the ALJ.

On November 30, 2016, the ALJ issued the Decision and Order Granting EBSA's Motion for Summary Decision and Denying Cross Motion for Summary Decision.

WMAT timely appealed the ALJ's Decision and Order to the Secretary of the Department of Labor on December 22, 2016.

On May 5, 2017, this Office issued a briefing schedule that provided a deadline of June 9, 2017 for WMAT to file its brief and a deadline of July 7, 2017 for DOL to file its brief. Both parties timely filed their briefs.

## CONSIDERATION OF ISSUES ON APPEAL

WMAT's brief presents the following seven points of error in support of its request for reversal of the Opinion on Appeal:

1. The ALJ erred by denying discovery needed by WMAT to fully present its case.
2. The ALJ erred by failing to correctly apply the proper statutory rule of construction in interpreting the PPA.
3. The ALJ erred by failing to consider the proper impact of Executive Order 13175 (both consultation and waiver rights).
4. The ALJ erred by misapplying the IRS Transition Relief.
5. The ALJ erred by applying an incorrect standard for determining reasonable cause and mitigating factors.
6. The ALJ erred by disregarding WMAT's right to due process, equal protection and the Administrative Procedures Act.
7. The ALJ erred by failing to provide proper weight to key disputed and undisputed facts.

Below I consider each of these 7 points, and in each case conclude that the ALJ did not err as WMAT claims.

4

## 1. The ALJ did not err by denying discovery requested by WMAT.

The ALJ did not err by denying discovery requested by WMAT. WMAT argues that broad discovery was necessary for the tribe to fully present its case to the ALJ. The ALJ granted discovery that related to a genuine issue as to a material fact that is relevant to this proceeding, while properly denying discovery that did not so relate. Facts relevant to this proceeding include those that bear on whether WMAT was required to file an Annual Report that includes an IQPA report for the Plan for the year ending April 30, 2013, and on whether there were mitigating circumstances surrounding WMAT's failure to file that warrant a reduction or waiver of the assessed penalty.

The ALJ permitted discovery on "whether participants in the Plan were engaged in commercial activities," a question that bears on whether WMAT was required to file an IQPA report. She properly denied the other discovery that WMAT requested because the facts sought were not relevant to this proceeding, and could not have changed its outcome. The denied discovery generally pertained to EBSA's internal procedures and activities. WMAT asserts that such internal procedures and activities could undermine EBSA's conclusion that Plan participants are engaged in commercial activities, or demonstrate that WMAT's failure to file an IQPA report was not willful. This is incorrect. Rather, EBSA's internal workings have no effect on the PPA's relevant statutory provisions, on Plan participants' activities, or on WMAT's ability to comply with ERISA's reporting and disclosure requirements.

## 2. The ALJ did not err in its application of the statutory rule of construction in interpreting the PPA.

The relevant question under the PPA is whether participants in the Plan were engaged in "commercial activities." WMAT, in its Appellant's Brief, contends that "reasonable minds can differ on what should be treated as 'commercial'" under the PPA. However, WMAT offers no explanation as to why the specific activities at issue here should be subject to such differences of opinion. WMAT admits that the Plan includes participants working in its casino, ski resort, hotels, restaurants, and stores. The ALJ notes in her decision that IRS guidance, court decisions, the natural reading of the PPA itself, and "any commonsense understanding" all would deem such work to be commercial activity. EBSA, in its Appellee's Brief, accurately quotes express support for this view in Congress's own explanation of the PPA itself.

WMAT argues that the distinction between commercial activities and governmental functions is ambiguous. However, neither the PPA nor EBSA's enforcement action draw, or need to draw, such a distinction. The PPA expressly anticipates instances where commercial activities are essential government functions. Plan participants' activities are clearly commercial, so it matters not whether their activities are also essential government functions.

WMAT argues that before imposing any penalty, EBSA should have consulted with tribes to develop and issue guidance as to what constitutes commercial activity under the PPA. While such a step by EBSA might be helpful, particularly around any unclear edges of what constitutes commercial activity, it should not stand in the way of EBSA's enforcement of ERISA reporting requirements where, as in this instance, the commercial nature of participants' work is clear.

**3. The ALJ correctly concluded that Executive Order 13175 is not relevant to this proceeding.**

The ALJ correctly concluded that Executive Order 13175 creates "no right of action...which would overcome the present enforcement action," and noted that the EBSA policy on consultation states that "enforcement policy, planning, investigations, cases and proceedings are not appropriate subjects for consultation."

WMAT argues that nonetheless, EBSA's failures under Executive Order 13175 to consult with tribes or to more fully consider WMAT's request for a waiver of ERISA reporting requirements mitigate the willfulness of WMAT's noncompliance. However, WMAT does not explain how the absence of consultation or waiver impaired its ability to come into compliance once it received from EBSA the Notice of Rejection dated September 15, 2014. WMAT's argument boils down to a purported justification for its willful noncompliance, rather than a demonstration that its noncompliance was not willful.

WMAT also notes that courts have required agencies to follow their own consultation policies before adopting and implementing new policies. In this case, EBSA is merely implementing a policy specified in statute, not adopting a new policy. Under the PPA, the Plan is not a governmental plan and therefore is subject to ERISA reporting requirements, which EBSA properly enforced in this instance.

Executive Order 13175 consequently is not relevant to this proceeding.

**4. The ALJ did not misapply the IRS Transition Relief.**

WMAT points to the ALJ's references to the IRS transition relief to cast doubt on her conclusion that Plan participants are engaged in commercial activities under the PPA. WMAT notes that the IRS guidance itself expressly does not apply to ERISA reporting requirements. However, the ALJ's decision applies the IRS guidance as only one of multiple touchpoints, all of which indicate that Plan participants are engaged in commercial activities. As noted above, the IRS guidance, court decisions, the natural reading of the PPA itself, and "any commonsense understanding," all indicate that participants' work constitutes commercial activity.

**5. The ALJ did not err in application of the standard for determining reasonable cause and mitigating factors.**

WMAT argues that its noncompliance was not "willful" because it reflected good faith understanding that it was not required to file an IQPA report. This argument might have merit with respect to WMAT's initial failure to timely file an IQPA report, although even this is questionable given earlier communication between WMAT and EBSA about filings from prior years. Nevertheless, it has no merit with respect to WMAT's continued failure to file an IQPA report after EBSA issued a Notice of Rejection. The Notice of Rejection necessarily made clear that the Plan was not a governmental plan and that ERISA's reporting requirements consequently applied. WMAT's apparent disagreement with EBSA's reading of the law is not reasonable

6

cause for its failure to comply with it. As noted above, WMAT's argument boils down to a purported justification for its willful noncompliance, rather than a demonstration that its noncompliance was not willful.

### 6. The ALJ did not err regarding WMAT's right to due process, equal protection and the Administrative Procedures Act.

WMAT argues that EBSA treats tribes inconsistently, in violation of due process and equal protection, but offers no response to the ALJ's reasoned rejection of this argument. The ALJ rightly found no material inconsistency between EBSA's current action against WMAT and its past actions (or lack thereof) against WMAT or other tribes. WMAT additionally argues that the Administrative Procedures Act bars EBSA from adopting and enforcing a policy that treats Plan participants' activities as commercial without first publishing that policy in the Federal Register. This argument lacks merit because, as noted above, in this case, EBSA is merely implementing a policy specified in statute, not adopting a new policy.

### 7. The ALJ did not fail to provide proper weight to key disputed and undisputed facts.

Here WMAT lists eight purported facts that it says the ALJ did not properly weight. First is an absence of evidence that EBSA appropriately considered mitigating factors. Yet the ALJ herself considered WMAT's mitigation claims and found them wanting, and there is no evidence that EBSA's own consideration was flawed. Second, WMAT references steps EBSA did not take to help WMAT comply, but does not explain why the ALJ should weight this heavily in light of the steps EBSA did take. Third, WMAT points to an internal EBSA document, despite the ALJ's correct observation that there is no evidence that the document either represents or establishes official EBSA policy. Fourth, WMAT asserts there is no evidence that its noncompliance was willful, when the operative issue is that WMAT failed to establish that it was not willful. Fifth, WMAT notes the ALJ's observation that the plan includes non-tribe members, while neither ERISA nor the PPA reference Tribe membership. Yet the ALJ's conclusion that Plan participants are engaged in commercial activities relies on the activities themselves (e.g., working in a casino), and not on Tribe membership. It is these activities, and not lack of Tribe membership, that the ALJ connects with the IRS guidance, court decisions, the PPA's plain language, and commonsense understanding, to reach her conclusion that the activities are commercial. Sixth, WMAT notes that certain case law cited by the ALJ involves litigants not entitled to government-to-government consultation, ignoring the ALJ's correct conclusion that such consultation rights are not relevant here. Seventh, WMAT asserts there is no evidence that EBSA has been consistent, neglecting the ALJ's thorough consideration of EBSA's consistency and conclusion that there is no evidence of material inconsistency. Eighth and finally, WMAT notes its compliance with IRS notices and intent to split the Plan, facts not relevant to this action.

### DECISION

The ALJ decision must include findings of fact and conclusions of law with reasons therefore upon each material issue of fact or law presented on the record, and must be based upon the whole record. The penalty (if any) which may be included in the decision of the ALJ shall be

limited to the penalty expressly provided for in Section 502(c)(2) of ERISA, and it shall be supported by reliable and probative evidence. 29 C.F.R. § 18.57.

The Secretary of Labor delegates authority and assigns responsibility to the Director of the Office of Policy and Research for the review of decisions of ALJs under regulations implementing the Department's authority to assess civil penalties under ERISA Sec. 502(c)(2) and (i). Here, the ALJ properly found that the WMAT Plan is not a governmental plan, but rather an ERISA-covered plan that is required to file an annual report that includes an IQPA report. WMAT failed to provide an IQPA report for plan year 2012. The ALJ properly found that there exist no genuine issues of material fact, and that WMAT has not demonstrated mitigating circumstances or reasonable cause for its failure to comply with the ERISA reporting requirements. The ALJ's decision met the requirements set forth in 29 C.F.R. § 18.57.

Having concluded that the ALJ committed none of the errors that WMAT alleges, I find no fault with the ALJ's opinion. Consequently, the ALJ decision is affirmed in whole. I hereby order that the penalty amount, $50,000, be paid by the Respondent-Appellant, WMAT, to the U.S. Department of Labor within thirty (30) days from the date of service of this decision. Amounts not paid by that time shall be subject to penalties and interest provided for by ERISA and its implementing regulations.

Joseph S. Piacentini
Director, Office of Policy and Research

8

Attachment E

**U.S. Department of Labor**     Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



**Issue Date: 22 July 2019**

CASE NO.:    2017-RIS-00007

*In the Matter of*

U.S. DEPARTMENT OF LABOR,
EMPLOYEE BENEFITS SECURITY ADMINISTRATION**,**
            Complainant,

      v.

PLAN ADMINISTRATOR,
WHITE MOUNTAIN APACHE TRIBE
RETIREMENT SAVINGS AND 401(k) PLAN,
(Case No. 16-0010N)
            Respondent.

### ORDER GRANTING COMPLAINANT'S MOTION FOR SUMMARY DECISION AND DENYING RESPONDENT'S MOTION FOR SUMMARY DECISION

This matter involves penalty assessments made by the U.S. Department of Labor ("DOL"), Employee Benefits Security Administration ("Complainant" or "EBSA") against the Plan Administrator for White Mountain Apache Tribe Retirement Savings and 401(k) Plan ("Respondent" or "WMAT") pursuant to the provisions of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). The implementing regulations relevant in this proceeding are published at 29 C.F.R. §§ 2520, *et seq.*, which are the rules for reporting and disclosure, and at 29 C.F.R. §§ 2560, *et seq.*, which include the procedures for assessment of civil penalties. Procedure is governed by the Rules of Practice and Procedure for Administrative Hearings before the Office of Administrative Law Judges ("OALJ"), 29 C.F.R. §§ 18.10, *et seq.*, and by the Procedures for the Assessment of Civil Penalties Under ERISA Section 502(c)(2), 29 C.F.R. §§ 2570.60, *et seq.*

Currently pending are cross-motions for summary decision. For the reasons set forth below, Complainant's Motion for Summary Decision is granted and Respondent's Motion for Summary Decision is denied.

### I.    *Procedural Background*

This matter was initiated with OALJ on December 12, 2016, when Respondent filed an Answer and Request for Hearing contesting EBSA's November 8, 2016, assessment of a civil monetary penalty of $90,000.00 for failure to file complete Form 5500 annual reports for plan years ending on April 30, 2014, and April 30, 2015 (plan years 2013 and 2014). On February 13, 2017,

Judge William King set this matter for hearing to begin on September 11, 2017, in Phoenix, Arizona. The parties filed a Joint Motion to Stay Proceedings on June 6, 2017. On June 30, 2017, Judge King transferred this matter to me and on July 11, 2017, I granted the motion to stay proceedings, vacated the hearing, and stayed the proceedings for 180 days. The stay was continued on several occasions. On November 14, 2018, I issued a Notice of Hearing setting this matter for hearing in Phoenix on June 25, 2019. Several discovery disputes emerged in the intervening months, resulting in orders on February 5, 2019, and May 21, 2019. On May 29, 2019, the parties filed a joint motion to continue the hearing so that cross-motions for summary decision could be briefed and a recently issued appellate decision could be considered. On June 5, 2019, I granted this request due to the recent appellate decision, froze the record as of May 31, 2019, and set the hearing for October 29-30, 2019.

Respondent's Motion for Summary Decision ("RMSD") was filed on May 29, 2019.[1] On June 4, 2019, the parties filed a joint motion to extend the deadline for oppositions to the cross-motions to summary decision to June 21, 2019. This request was granted telephonically, but my office informed Complainant that it had not yet filed a motion for summary decision. Complainant then discovered that the motion had been served on Respondent, but sent to the incorrect address for OALJ. Complainant's Motion for Summary Decision ("CMSD") was filed on June 6, 2019.[2] Complainant's Opposition to Respondent's Motion for Summary Decision ("COSD")[3] and Respondent's Opposition to EBSA's Motion for Summary Decision ("ROSD") were both filed on June 21, 2019.

## II.    Legal Background

ERISA is a comprehensive remedial statute designed to protect the integrity of employee benefit plans. *Brink v. DaLesio*, 667 F.2d 420, 427 (4th Cir. 1981); *U.S. Dep't of Labor (PWBA) v. Sociedad Para Asistencia Legal Money Purchase Plan*, 1994-RIS-62, slip op. at 1-2 (ALJ, Mar. 29, 1995.) In line with its purpose, ERISA contains extensive reporting and disclosure requirements. 29 U.S.C. § 1021(b) requires that a plan administrator file an annual report with the Secretary of Labor. This report must contain a financial statement and other information about the plan, as well as additional information and reports depending on the size and type of plan. *See* 29 U.S.C. § 1023(a); *see also* 29 C.F.R. § 2520.103-1. For plans with 100 or more participants, the annual report must include a report of an independent qualified public accountant ("IQPA"). 29 U.S.C. § 1023(a)(3); 29 C.F.R. § 2520.103-1(b)(5). The Secretary is empowered to determine the forms to be used in filings. 29 U.S.C. § 1029(a). The plan administrator must file the annual report within 210 days after the close of the plan year. 29 U.S.C. § 1024(a)(1); *see also* 29 C.F.R. § 2520.104a-5. Filings may be rejected if they are incomplete. 29 U.S.C. § 1024(a)(4)(A).

However, as important here, a "governmental plan" is exempt from the requirements. 29 U.S.C. § 1003(b)(1). Under ERISA,

> [t]he term "governmental plan" includes a plan which is established and maintained
> by an Indian tribal government [], a subdivision of an Indian tribal government [], or
> an agency or instrumentality of either, and all of the participants of which are

---

[1] Respondent's motion is supported by a "Separate Statement of Facts in Support of Motion for Summary Decision," ("RS") and 19 exhibits ("RX 1-19"). RX 3 is a Declaration from Respondent's counsel with eight exhibits.
[2] Complainant's motion is supported by a Statement of Issues and Undisputed Facts ("CS") and eight exhibits ("CX A-H").
[3] Complainant's opposition is supported by two exhibits ("CX 1-2").

employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)[.]

29 U.S.C. § 1002(32) (parentheticals omitted).

Congress has authorized DOL to assess civil penalties from the date a plan administrator fails or refuses to file a satisfactory annual report. ERISA § 502(c)(2), 29 U.S.C. § 1132(c)(2).   29 C.F.R. § 2560.502c-2 sets forth the procedures governing the assessment of those civil penalties when "there is a failure or refusal to file the annual report required to be filed under section 101(b)(1)." 29 C.F.R. § 2560.502c-2(a)(1).   The amount assessed is determined by EBSA "taking into consideration the degree and/or willfulness of the failure or refusal to file the annual report."   29 C.F.R. § 2560.502c-2(b)(1).   Penalties are capped at $1,000 per day[4] calculated from the date on which a plan administrator failed to file an acceptable annual report and continuing to the day on which an acceptable report is filed.   *Id.*   Before assessing a penalty, EBSA must issue a written notice of its intent to do so.   29 C.F.R. § 2560.502c-2(c).   The plan administrator is given 30 days to file a statement of reasonable cause "explaining why the penalty, as calculated, should be reduced or not be assessed."   29 C.F.R. § 2560.502c-2(e).   Then EBSA "may determine that all or part of the penalty amount in the notice of intent to assess a penalty shall not be assessed on a showing that the administrator complied with the [annual report requirements] or on a showing by the administrator of mitigating circumstances regarding the degree or willfulness of the noncompliance."   29 C.F.R. § 2560.502c-2(d).   "[F]ollowing a review of all the facts alleged in support of no assessment or a complete or partial waiver of the penalty," EBSA must notify the plan administrator in writing of its determination.   29 C.F.R. § 2560.502c-2(g)(1).   EBSA's determination becomes final after 45 days, unless the plan administrator seeks an administrative hearing within 30 days.   29 C.F.R. § 2560.502c-2(g)(2)-(h).

Hearings are conducted before OALJ pursuant to its Rules of Practice and Procedure, as modified by the implementing regulations of ERISA contained in 29 C.F.R. §§ 2570.60, *et. seq.* Parties are permitted to conduct discovery only upon motion to the ALJ and on a showing of good cause.   29 C.F.R. § 2570.66.   Summary decision is permitted when there are no issues of material fact.   29 C.F.R. § 2570.67(a)(1).   When there are issues of material fact in dispute, the ALJ conducts an evidentiary hearing.   29 C.F.R. § 2570.67(b).   After the hearing, the ALJ issues a written decision on the record, making findings of facts and conclusions of law and stating the reasons for his conclusions.   29 C.F.R. § 2570.68(b).   That decision becomes final, unless further appealed by either party to the Secretary within 20 days of the decision.   29 C.F.R. § 2570.69(a).   No new evidence may be submitted in this appeal and the Secretary issues a decision based on the briefs of the parties.   29 C.F.R. §§ 2570.70-71.   "The review of the Secretary shall not be *de novo* proceeding but rather a review of the record established before the [ALJ]."   29 C.F.R. § 2570.70.   Appeals to the Secretary are decided by the Director, Office of Policy and Research at EBSA ("Director").   Secretary's Order 1-2011 (Dec. 21, 2011); *see also U.S. Dep't of Labor, EBSA v. Plan Adm'r, Thibeault Corp. of NE/T-QUIP Sales & Leasing 401(k) Plan*, No. 2009-RIS-00068 (EBSA June 14, 2013) ("*Thibeault* EBSA"); *U.S. Dep't of Labor, EBSA v. Dutch Am. Imp. Co., Inc. Plan Adm'r*, No. 2009-RIS-00014 (EBSA Jan. 26, 2012) ("*Dutch Am.* EBSA").

---

[4] As adjusted by the implementing regulations to the Federal Civil Penalties Inflation Adjustment Act.   29 C.F.R. § 2560.502c-2(b)(1).

OALJ's jurisdiction and the scope of this adjudication is defined by the regulations. An ALJ is only authorized to review EBSA's determination as part of the process of reaching final agency action. Two issues are relevant: 1) whether the administrator complied with the requirements of ERISA (the "liability question"); and 2) whether the administrator made a showing "of mitigating circumstances regarding the degree or willfulness of the noncompliance" (the "mitigation question"). 20 C.F.R. §§ 2560.502c-2(a)(1), (b)(1), (d); *see also U.S. Dep't of Labor, EBSA v. Plan Adm'r, Hago Mfg. Co., Inc. Ret. Plan*, No. 2013-RIS-00055, slip op. at 3-4 (ALJ Feb 3, 2017). As part of the liability question, it may be necessary to consider both whether the respondent *is* subject to the relevant requirements and whether the respondent complied with those requirements. As part of the mitigation question, an ALJ must examine the circumstances of the noncompliance—particularly the degree or willfulness of the noncompliance. EBSA has burden of establishing non-compliance. If that is done, the respondent has the burden of showing mitigating circumstances.

### III.    Contentions of the Parties

*A. Respondent's Motion for Summary Decision*

Respondent seeks summary decision on three independent grounds: 1) that EBSA "abused its discretion in denying [WMAT's] request for waiver of penalties based upon reasonable cause"; 2) EBSA "erred in its interpretation of the applicable law"; and 3) EBSA "denied [WMAT] due process and equal protection under the law, including EBSA's failure and refusal to honor its distinctive obligation of trust incumbent upon [EBSA] in its dealings with [WMAT]." RMSD at 1.

Many of the issues raised in this case relate to the background to the application of ERISA to tribal plans. Respondent recounts the history of the Pension Protection Act ("PPA") that introduced the current ERISA language regarding tribal plans and commercial activity. It avers that the language was a surprise out of the conference committee and lacks legislative history. It states that after the PPA was enacted, the Department of Treasury and the IRS engaged in a consultation process was tribes to attempt to provide guidance, but that such consultations never produced guidance or a final rule, which Respondent contends provides tribes with an open-ended extension to develop separate commercial plans. *Id.* at 3-5; *see also* RS at ¶¶1-14, 30-38; RX 1-2; RX 3, Ex. B-F; RX 4-7.

During this period Respondent began to file annual reports with EBSA, but did not attach an IQPA. This was questioned for the first time in 2011, but the penalties were withdrawn based on Respondent's statement of reasonable cause. In 2014, EBSA again questioned the lack of an IQPA with the report for the plan year ending April 30, 2013, but this time did not accept the statement of reasonable cause. That penalty assessment was adjudicated separately. EBSA has continued to assess penalties for subsequent reports, leading to this action based on the reports for plan years ending on April 30, 2014 and 2015. RMSD at 5-7; *see also* RS at ¶¶ 15-23; RX 3, Ex. A; RX 8-13.

As to the basis for summary decision, Respondent first contends that Complainant abused its discretion in not granting a waiver because a) it had previously accepted Respondent's request for a waiver of penalties; b) it changed its enforcement policies "without warning and in violation of its own consultation policies" and Executive Order ("EO") 13175; c) Complainant made "patently false assumptions" in making its reasonable cause determination; d) Complainant violated its own regulations; and e) "Complainant misconstrued what is required for operational compliance under Notices 2006-89 and 2007-67, including a characterization, if upheld, that would punish tribes that

make partial filings in good faith while rewarding the decision to file nothing at all." RMSD at 7; *see also id.* at 7-24 (argument); RX 17 (DOL consultation policy); RX 16 at 2 (admission of no consultation); RS at §§ 24-27 (evidence of prior practices); RX 14-15 (same).

Next, Respondent argues that Complainant's interpretation of the PPA is legal error because it ignores rules of statutory constructions requiring liberal interpretation in favor of tribes and clear and reliable evidence that Congress intended to infringe on tribal rights. Respondent avers that ERISA's language as to "essential government functions" and "commercial" are ambiguous and must be construed in its favor pending further guidance. It contends that under some interpretations, activities that generate funds for tribal government could be deemed essential government functions. RMSD at 24-28; *see also* RS at ¶¶ 30-38; RX 3; RX 16 at 1 (admission that EBSA promulgated no guidance concerning application of the PPA to tribes).

Finally, Respondent makes a brief equal protection and due process argument. Respondent contends that EBSA has treated it inconsistently in different years regarding penalties for not filing an IQPA. It also contends that EBSA treats different tribes inconsistently because it penalizes tribes who file annual reports without an IQPA but does not penalize tribes who don't file an annual report at all. Respondent further argues that EBSA failed to comply with the Administrative Procedure Act ("APA") in regards to publication of substantive policies and legislative-type rules. Last, Respondent alleges that EBSA's refusal to consult with WMAT violated its consultation policy and the special trust obligations owed to tribes. *Id.* at 28-31; *see also* RS 24-27, 40 (evidence of inconsistency); RX 14-15, 19 (same); RX 17 (consultation policy).

B. *Complainant's Motion for Summary Decision*

Complainant's cross-motion for summary decision seeks an order affirming the penalty assessment of $90,000.00 and finding that it was not an abuse of discretion, as well as an order to file all required annual reports. It contends that this matter is "routine" and "straightforward" because WMAT was required to file an annual report with an IQPA for plan years ending April 30, 2014 and 2015 (plan years 2013 and 2014), but did not do so. CMSD at 1-3. In Complainant's view, the undisputed facts are simple: Respondent is the Plan Administrator for an ERISA covered plan and has not filed compliant annual reports for the plan years in question. Respondent's plan includes workers engaged in "commercial" activities and so is not a government plan. EBSA followed the procedural steps to assess a penalty and considered Respondents' various arguments. It assessed a $90,000.00 penalty based on continued willful non-compliance. *Id.* at 3-6, 10-13; *see also* CS at ¶¶ 1-14; CX A (annual reports without IQPA report); CX D (Notice of Determination with penalty).

Per EBSA, the annual report is an important part of ERISA's enforcement scheme and the primary means by which participants, beneficiaries, the Department of Labor, and the public can gain information about and assess the operation of a plan. CMSD at 6-7. EBSA maintains that it has flexibility in assessing penalties under the regulations and that although an ALJ reviews facts de novo, EBSA's penalty assessment decisions are reviewed for an abuse of discretion. *Id.* at 7-8, 10. It contends that there is no dispute that it followed the proper procedures and argues that its penalty assessment is not arbitrary, capricious, or an abuse of discretion given the non-compliance, EBSA's internal guidelines, and the much larger statutory maximum. It avers that "Respondent's willful, continuing failure at the expense of the Plan's participants more than justifies EBSA's assessed

penalty" and argues that there are no mitigating factors since Respondent has not come into compliance or taken steps toward doing so.  *Id.* at 13-15.

EBSA acknowledges that governmental plans are not subject to the reporting requirements, but argues that there is no dispute that WMAT's plan includes employees engaged in commercial activities and that as a matter of law the plan is thus not a governmental plan.  It argues that the plain text of ERISA (post-PPA) requires a government plan for a tribe to include only employees engaged in essential government functions and that if any employee is engaged in commercial activities, even if it is also an essential government function, the plan is outside the definition.  EBSA further argues that the IRS guidance indicates that it is not a good faith interpretation of the definition to include employees engaged in commercial activities like casino and hotel operation.  It adds that the guidance in question is in accordance with the congressional history.  Complainant contends that there is no ambiguity in the definition as applied to this case and that since some plan members were engaged in activities that are clearly commercial in nature, the plan is subject to ERISA.  CMSD at 15-20.

As to Respondent's invocation of EO 13175, Complainant argues that it was under no obligation to consult with WMAT because this is an enforcement action and neither the executive order nor the Department's consultation policy apply.  Complainant contends that enforcement decisions are explicitly exempted and that this case involves a case-specific enforcement decision, not a matter of general agency policy.  Moreover, Complainant argues that even if the executive order were relevant, by its own terms it would not provide a defense to Respondent.  *Id.* at 20-24.

Complainant also argues that it has enforced ERISA's reporting requirements in a consistent manner.  WMAT and other tribes have sought waivers and consultation after failing to comply with the reporting requirements and that EBSA has engaged in a process of using incentives to achieve compliance and providing time where plans might need to be separated.  In several instances it has reached settlements where tribes agreed to come into compliance.  Complainant maintains that these settlements cannot be construed as a waiver of compliance—rather it indicates flexibility in achieving compliance.  In this instance Complainant alleges that the non-compliance is clearly willful, leading to no reason to waive or abate the penalty.  Moreover, Complainant argues that even if there is some inconsistency, this is no defense for non-compliance since enforcement is necessarily a case by case decision that turns on the particular facts and situation.  *Id.* at 24-28; *see also* CS at ¶¶15-18.

## *C. Intervening Developments*

EBSA previously assessed ERISA civil money penalties against WMAT for plan year 2012 based on WMAT's failure to include an IQPA report with its annual report.  That assessment was litigated at OALJ as No. 2015-RIS-00023.  On November 30, 2016, Judge Colleen A. Geraghty issued a Decision and Order Granting EBSA's Motion for Summary Decision and Denying Cross Motion for Summary Decision.  *See U.S. Dep't of Labor, Employee Benefits Sec. Admin. v. Plan Adm'r, White Mountain Apache Tribe Ret. Savings and 401(K) Profit Sharing Plan Annual Report*, No. 2015-RIS-00023 (ALJ Nov. 30, 2016) ("*WMAT I* (ALJ)").[5]  Judge Geraghty affirmed EBSA's assessment of a $50,000.00 penalty for plan year 2012.  *Id.* at 19.  WMAT appealed that decision to the Director.

---

[5] A copy of the decision is found in CX F and RX 12.

On May 28, 2019, the Director issued a Decision and Order Affirming *WMAT I* ALJ.  *U.S. Dep't of Labor, Employee Benefits Sec. Admin. v. Plan Adm'r, White Mountain Apache Tribe Ret. Savings and 401(K) Profit Sharing Plan*, No. 2015-RIS-00023 (EBSA May 28, 2019) ("*WMAT I* (EBSA)").[6]  In *WMAT I* (EBSA), the Director addressed a number of issues that are also pertinent to the disposition of this case.  *WMAT I (EBSA)* held that given the activities WMAT acknowledge some participants engaged in, the plan was not a governmental plan and was subject to ERISA's reporting requirements.  *Id.* at 5-6.  The Director held that EO 11375 was not relevant to the enforcement action and that it was proper for the ALJ to look to IRS Transition Relief guidance as a touchpoint for determining whether activities were commercial.  *Id.* at 6.  Further, the Director affirmed the finding that WMAT's non-compliance was willful.  *Id.* at 6-7.  He rejected WMAT's arguments based on due process, equal protection, and the APA alleging inconsistent enforcement and failure to properly publish a policy.  *Id.* at 7.  And the Director disagreed with WMAT's claims that the ALJ had improperly weighed the various undisputed and disputed facts in the case.  *Id.*

Accordingly, the Director affirmed Judge Geraghty's decision granting summary decision to EBSA and ordered WMAT to pay the assessed $50,000.00 civil money penalty.  *WMAT I* (EBSA) at 8.  WMAT is free to seek further review of the Director's decision in *WMAT I* (EBSA), and may elect to do so.  But in the context of this case, *WMAT I* (EBSA) is binding appellate authority and insofar as the issues presented in the two cases are the same, the resolution in *WMAT I* (EBSA) dictates the resolution here.

### D.  Complainant's Opposition

Complainant's Opposition largely argues that the Director's decision in *WMAT I* (EBSA) is on point and resolves the issues presented in this matter in Complainant's favor.  COSD at 2-3.  It argues that the case determined that EBSA did not abuse its discretion in rejection Respondent's claim of reasonable cause and that the decision adopted the reading of ERISA and the PPA that it has urged in this case.  *Id.* at 4.  Complainant also asserts that *WMAT I* (EBSA) disposed of the same equal protection, due process, and APA arguments Respondent has made here.  *Id.* at 4-5.

According to Complainant, there are no disputed material facts in that it is undisputed that WMAT did not file timely annual reports for plan years 2013 and 2014 and never filed an IQPA report for either year.  As EBSA understands the cause, the only issue is whether Respondent had "reasonable" cause" for the violation.  *Id.* at 5-6.  Complainant maintains that the evidence submitted by Respondent does not go to the actual dispute here and cannot show reasonable cause.  It argues that the IRS does not speak for DOL and that it cannot rely on waiting for guidance from the IRS to justify not complying with DOL requirements.  *Id.* at 6-7.  It later adds that its interpretation of the PPA is in line with that of the IRS and derivative from the language of the statute.  *Id.* at 13-14.

Complainant further argues that WMAT has not been singled out or treated differently than others.  Rather, each enforcement action has its own independent facts and responses from plan administrators.  Complainant contends that *WMAT I* (EBSA) settled this issue and that no new facts have been presented that would lead to a different result.  It dismisses an internal memo from an analyst as not creating policy and explains that prior actions lead to different results because WMAT represented that it intended to come into compliance by engaging an auditing firm to

---

[6] *WMAT* EBSA I is submitted as CX 1.

produce an IQPA report.  When the compliance did not materialize, further enforcement was pursued—as the earlier forbearance indicated it might.  *Id.* at 7-9; *see also* CX 2.

In addition, Complainant argues that it did not violate EO 11375 or the Department's Tribal Consultation policy because both exempt enforcement matters and this is an enforcement proceeding, not a development of policy.  It distinguishes the various cases Respondent cites in this regard on the grounds that they did not involve enforcement decisions.  Complainant avers that there could be no reasonable expectation by WMAT that it would be consulted prior to enforcement since both the executive order and departmental policy exempt enforcement matters. *Id.* at 9-11.  Complainant dismisses Respondent's challenges to the reasonable cause determination as focusing on minute differences between the understanding of Respondent's argument.  That determination, per Complainant, was simply based on continued willful noncompliance.  *Id.* at 11-12.

Further, Complainant rejects the claim that it has adopted a strict liability standard for penalty assessments, pointing to prior decisions in which it abated penalties.  As Complainant understands Respondent's position, it asserts that it may continue to refuse to comply so long as it adopts a different interpretation of the law.  *Id.* at 12-13.  But Complainant argues that this interpretation is wrong and that ERISA, properly construed, does not include Respondent's plan in the meaning of a governmental plan.  *Id.* at 15-17.  Finally, Complainant asserts that there is no basis to contend that EBSA has denied Respondent due process and equal protection, stating that it has acted consistently and within its prosecutorial discretion.  *Id.* at 17-18.

E.  *Respondent's Opposition*

Respondent contends that *WMAT I* (EBSA) does not control the outcome in this case and that Complainant has "abused its discretion, [] committed legal error, and [] relied upon facts in dispute."  ROSD at 1.  Respondent maintains that it is "not clear" that its plan is not a governmental plan and that even if it was not, it is not clear that it had to file an IQPA report until after it was required to separate its plans by the IRS, which has not yet occurred.  *Id.* at 3.  Respondent highlights Complainant's representations that in earlier years it had excused non-compliance due to the difficulty of separating co-mingled plans.  It contends that this same rationale is relevant to later years and that EBSA's rationale was never communicated to it until the motion for summary decision.  In Respondent's view, this points to an informal non-enforcement policy that it has provided other evidence of and that is relevant to the mitigation question in the case.  *Id.* at 4-5.  It contends that this case differs from *WMAT I* (EBSA) in that there is additional evidence about EBSA's policies and practices, which goes to show an abuse of discretion.  *Id.* at 3-5.

Respondent takes issue with Complainant's contention that it offered to help tribes come into compliance, maintaining that there is no evidence that this actually occurred and that a declaration submitted indicates the opposite.  Respondent casts doubt on Complainant's explanations of its enforcement actions, asserting that any incentive for compliance EBSA is reading back into the history cannot be maintained since this was never communicated to the tribes.  *Id.* at 5-7.  Respondent accuses EBSA of keeping the reasonable cause factors a secret and only in its motion revealing its use of incentives to encourage compliance.  But since it avers there were no actual uses of incentives, Respondent maintains that EBSA has violated its newly announced policy. *Id.* at 7-8.  In addition, Respondent argues that Complainant has violated the IRS Notices in requiring splits of plans before final guidance from the IRS on implementing the PPA.  It maintains

that if EBSA is going to enforce the PPA, this amounts to an amendment of the IRS Notice, which must be subject to an administrative process involving notice and consultation. *Id.* at 8-9.

Last, Respondent contests some of Complainant's factual assertions as lacking support. It contends that it did not know that it had to file an IQPA report because EBSA had previously waived penalties. It maintains that Complainant misread its reasonable cause statement. Respondent also asserts that it has never admitted that plan members are engaged in commercial activities—it has admitted that plan members engaged in what the IRS deemed commercial activities but reserved argument on whether that definition is proper. And it maintains that EBSA's statements regarding incentives are unsupported. *Id.* at 9-10.

## IV.   *Findings of Fact and Conclusions of Law*

### A.   *Summary Decision Standard*

Summary decision is available in ERISA penalty proceedings "[w]here no issue of a material fact is found to have been raised." 29 C.F.R. § 2570.67(a)(1); *see also* 29 C.F.R. § 18.72; Fed. R. Civ. P. 56(a). A decision on a motion for summary decision must contain "[f]indings of facts and conclusions of law, and the reasons therefor, on all issues presented" as well as "[a]ny terms and conditions of the rule and order." 29 C.F.R. § 2570.67(2). "Where a genuine issue of material [] fact is raised, the administrative law judge shall, and in any other case may, set the case for an evidentiary hearing." 29 C.F.R. § 2570.67(b). In a motion for summary judgment, the burden is on the moving party to present evidence that shows "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party presents such evidence, the non-moving party "may not rest upon mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When considering a motion for summary decision, an ALJ does not assess credibility or weigh conflicting evidence, as all evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences made in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir. 1987). To prevent summary decision, however, the non-moving party must have more than a mere "scintilla" of evidence supporting its position. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). The non-moving party must designate certain facts in dispute, *Anderson*, 477 U.S. at 250, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In ruling on a motion for summary the decision, the ALJ does not weigh evidence or determine the truth of the matter, but evaluates "whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 249-50.

### B.   *Standard of Review*

Review of civil penalties issued by EBSA under ERISA is defined by the regulations, but the regulations do not specify the appropriate standard of review. ALJs have taken different approaches, some engaging in *de novo* review while others use an arbitrary and capricious or abuse of discretion standard to evaluate the penalties. *See WMAT I* (ALJ) at 10-11 (reviewing different

approaches). As discussed in prior discovery orders, the standard of review of EBSA's decision appears to vary with the question at issue. In an ERISA civil money penalty proceeding, there are two core issues: the liability question and the mitigation question. 20 C.F.R. §§ 2560.502c-2(a)(1), (b)(1), (d). As to at least this second question, and perhaps more broadly, Complainant advocates a deferential abuse of discretion standard of review. CMSD at 10. Respondent does not directly discuss the standard of review, but at times frames the dispute as over whether EBSA abused its discretion. *E.g.* COSD at 4.

It is clear that the standard of review for factual questions in ERISA § 502(c)(2), 29 U.S.C. § 1132(c)(2) penalty proceedings is *de novo*. *U.S. Dep't of Labor, PWBA v. Spaulding & Evenflo Companies, Inc.*, No. 92-RIS-19, slip op. at 7 (PWBA Nov. 18, 1994); *U.S. Dep't of Labor, EBSA v. Plan Adm'r, Team Laurino 401(k) Plan*, No. 2008-RIS-00050, slip op. at 4 (ALJ, Dec. 9, 2008); *see also U.S. Dep't of Labor, PWBA v. Northwestern Inst. of Psychiatry*, No. 93-RIS-23, slip op. at 10 (PWBA July 26, 1995.) The ALJ is bound by the governing statute and regulations and cannot set aside the method of calculating the penalty. *See Spaulding*, No. 92-RIS-19 at 7; *see also U.S. Dep't of Labor, EBSA vs. Plan Adm'r for Golden Day Sch. Ret. Plan*, No. 2013-RIS-00002, slip op. at 10 (ALJ May 28, 2014); *U.S. Dep't of Labor, EBSA v. Plan Adm'r, Dutch Am. Imp. Co., Inc. Employee Stock Ownership Plan,* 2009-RIS-00014, slip op. at 6 (ALJ Jan. 6, 2010) ("*Dutch Am.* ALJ"). But the facts underlying the application of the penalty, *e.g.* whether an administrator did file the required report, is open for determination after a hearing. A *de novo* standard of review also applies to legal questions, *e.g.* whether a respondent is subject to the regulations. So here, the question of the meaning of the PPA definition of a governmental plan is not one where EBSA receives any deference—especially since it has not adopted any interpretation or policy that could be given deference. Hence, a *de novo* sort of review applies to the liability question, which combines a legal question about whether the respondent is subject to the regulatory requirements and a factual question of whether the respondent complied with those requirements.

The standard of review is for the determination of the mitigation question is more difficult. *Compare Team Laurino*, No. 2008-RIS-00050 at 4 n.6 *and Dutch Am.* ALJ, No. 2009-RIS-00014 at 7 (*de novo* review) *with Golden Day. Sch.*, No. 2013-RIS-00002 at 10 *and U. S. Dep't of Labor, EBSA v. Plan Adm'r, Arenson Office Furnishings, Inc. P/S 401(k) Plan*, No. 2007-RIS-111, slip op. at 5 (ALJ May 2, 2008) (arbitrary and capricious review). The Director has issued three decisions in recent years. In *Thibeault* EBSA, the Director affirmed an ALJ who had applied a *de novo* standard of review to the mitigation question and ruled in favor of EBSA. No. 2009-RIS-00068; *see U.S. Dep't of Labor, EBSA v. Plan Adm'r, Thibeault Corp. of NE/T-Quip Sales & Leasing 401(K) Plan*, No. 2009-RIS-00068, slip op. at. 10-13 (ALJ July 19, 2011) (discussing standard of review). The rationale, however, was that the respondent had sought review of whether EBSA had acted arbitrarily and capriciously, and the Director held that such review would require *de novo* review on his part of the ALJ's decision, which was forbidden by the regulations. *Thibeault* EBSA, No. 2009-RIS-00068 at 4-5.

In the other recent appellate opinion, the Director reversed an ALJ who had applied the *de novo* standard of review to the mitigation question and found for the respondent, reducing the penalty. *Dutch Am.* EBSA, No. 2009-RIS-00014. As for the standard of review, the Director observed that "the ALJ has the power to try facts *do novo*. However, in deciding issues of law, the ALJ is bound by the governing statue and regulations, except to the extent the ALJ finds them to be invalid. Whether applying the arbitrary and capricious standard or the *de novo* standard of review, the ALJ could only reach the conclusion that DOL properly applied the law." *Id.* at 5. The decision does not directly answer the question of whether, in determining if EBSA properly applied the law,

the ALJ must give deference to the judgment of EBSA as to mitigation or may review the mitigation decision, and amount of abatement, *de novo*, making his own judgment about the penalty to be assessed. That is a quite different issue than whether EBSA properly followed the law, since the law does not decide the mitigation question in individual cases. Based on *Dutch Am.* EBSA, it is impermissible to consider mitigating factors that developed after EBSA made its determination. Instead, the question is whether the determination was correct at the time it was issued. Additionally, it is impermissible to consider "policy" matters because "[p]olicy judgment is not an appropriate judgment based on facts or related matters of law" and "policy argument would usurp DOL's policymaking role." *Id.* at 5-6. The decision also contains language criticizing the ALJ for "substituting her own judgment for the DOL's," *id.* at 5, that would suggest deferential review of the mitigation question.

Subsequent ALJ decisions have held that the standard of review in determining whether EBSA properly mitigated/abated the penalty is "abuse of discretion and whether the decision was arbitrary and capricious." *Golden Day Sch.*, slip op. at 10 (citing *Northwestern Institute of Psychiatry v. Martin*, 1993 WL 52553, 1993 U.S. Dist. LEXIS 2633 (E.D. Pa. Feb. 24, 1993)); *see also Hago Mfg. Co.*, No. 2013-RIS-00055, slip op. at 3-4. *WMAT I* (EBSA) is the Director's most recent decision, but it did not address the appropriate standard of review for an ALJ's decision. In the underlying decision the ALJ officially adopted a *de novo* standard. *See WMAT I* (ALJ) at 10-11. But in applying that standard to the mitigation, the ALJ was engaged with factual questions surrounding WMAT's willfulness, EBSA's policies and consistency, and the existence of mitigating factors. *Id.* at 16-19. These are distinct from the separate question of whether the weighing of those circumstances was proper and the particular penalty calculation appropriate.

The standard of review for the mitigation question turns on what is being reviewed in the case. Factual questions pertinent to the mitigation question are reviewed *de novo*. There is also *de novo* review of whether EBSA followed the law/regulations in making its determination. The determination of whether and what amount of mitigation is appropriate based on the facts of the situation involves a discretionary judgment. The regulations point to what must be considered, but provide no guidance on how those points must be considered and applied in individual cases. This suggests a more deferential sort of review as to this particular sub-question. Hence, I will apply a *de novo* standard of review to legal questions and to factual determinations, but an arbitrary and capricious or abuse of discretion standard in reviewing EBSA's mitigation determination.

*C.  Undisputed Facts*

This case concerns penalties for Respondent's ERISA annual reports for plan years 2013 and 2014. Respondent filed annual reports, though it filed the forms late and maintained that during the "transitional" period after the PPA it did not have to file and had been granted a waiver. Though it contended that its plan could properly be deemed governmental, at least pending further IRS guidance, it filed after being informed by EBSA that it should do so.[7] It is undisputed, however, that Respondent did not include an IQPA report with either filing. *See* CX A (filings for plan years 2013 and 2014 containing Respondent's disclaimer); RX 10; CX H at 3 (admission that no IQPA was filed).

---

[7] In its filings WMAT also reserved rights to sovereign immunity and consultation under Executive Order 13175.

It is also undisputed that EBSA followed the procedural steps in assessing a penalty and that WMAT properly filed its allowed objections.  *See* CX H at 2, 4.  EBSA issued a Notice of Intent to Assess Penalty in the amount of $90,000.00 for the two plan years at issue on March 14, 2016.  *See* CX B; *see also* RX 13.  WMAT responded on April 18, 2016, with a statement of reasonable cause/request for waiver, request for relief under E.O. 13175, and request for a pre-decisional conference and to supplement the record.  *See* CX C; RX 9; *see also* RX 13.  EBSA rejected WMAT's arguments and issued a Notice of Determination assessing a $90,000.00 penalty on October 11, 2016, with an amendment on November 7, 2016.  *See* CX D; *see also* RX 8.  WMAT filed an answer and request for hearing on December 12, 2016.  *See* CX H.

The parties dispute whether or not WMAT's plan includes employees who are engaged in "commercial" work in the meaning of ERISA as amended by the PPA.  But it is undisputed that WMAT's plan includes workers who are engaged in activities that the IRS Notice 2006-89 identified as commercial in nature.  *See* CX G at 1; *see also* CX E.  IRS Notice 2006-89 identified commercial employees as including those "employed by a hotel, casino, service station, convenience store, or marina."[8]  WMAT acknowledges that during the relevant period it operated Sunrise Park Resort, Hawley Lake Cabins, and Hon-Dah Resort Casino and Conference Center.  It also acknowledges that its plan includes employees of these operations.  CX G at 2.

### D.  The Liability Question

Based on the above, it is undisputed that *if* Respondent was obligated to file an ERISA annual report with an IQPA report in plan years 2013 and 2014, it did not do so and has not remedied the shortcoming.  The liability question is thus only whether or not Respondent *was* obligated to file the annual report, which turns on whether or not Respondent's plan is a "governmental plan" or whether there is a waiver for filing pending further guidance.  Respondent contends that the statutory language in ERISA is ambiguous and that EBSA violated rules of construction requiring liberal construction in favor of tribes by reading the PPA amendments to require a report by Respondent.  *See* RMSD at 24-28.  Complainant contends that there is no ambiguity and that plans that include employees who work at casinos and resorts cannot be government plans.  *See* CMSF at 15-20; COSD at 3.

ERISA, as amended by the PPA, exempts "governmental plans" from various requirements.  29 U.S.C. § 1003(b)(1).

> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government [], a subdivision of an Indian tribal government [], or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)[.]

29 U.S.C. § 1002(32) (parentheticals omitted); *see also Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1285 (10th Cir. 2010) (explaining "a plan qualifies as a governmental plan only if it is established and maintained by an Indian tribal government and all of the participants are employees primarily engaged in essential governmental functions rather than commercial activities").

---

[8] The relevant IRS notices are also found in RX 7.

This definition appears unambiguous in most respects. To be a government plan, *all* members of the plan must be in employment where substantially all of their services are in the performance of essential government functions, as opposed to commercial activities. Moreover, Congress anticipated that the two categories could overlap in the parenthetical at the end of the definition. By providing that a plan's inclusion of an employee engaged in commercial activities "whether or not an essential government function," Congress determined that if an activity was both commercial and an essential government function, the employee could not be part of a government plan. Parts of Respondent's argument and evidence contests the wisdom of this definition, the drafting process, and the problems that the definition creates. *See generally* RMSD 3-5, 24-28; RS at ¶¶ 1-14, RX 1-7. But this is not the forum to debate the statute. While based on the submissions one can appreciate the difficulties the language has created for WMAT and similarly situated tribes, that point goes well beyond my authority.

Respondent attempts to introduce ambiguity in cases where various activities that appear commercial are arguably essential government functions. RMSD at 27-28 (discussing RX 3, Ex. 6). But this presumes that there cannot be an overlap. The PPA language has a different understanding and excludes employees who engage in functions that fit both descriptions from participation in a government plan. There may be strong equitable arguments against this approach and in favor of one that would treat tribal governments in a manner similar to state governments. But that isn't the route Congress went and there is no argument that Congress exceeded its authority in the PPA definition.[9]

Where the statute might contain some ambiguity is in cases where it is unclear whether a particular function is commercial. There is certainly some uncertainty around the boundaries of that word, and in close cases canons of construction favoring tribes might have a role to play. But this is not a close case. The IRS guidance discussed by both parties lists various activities that are paradigmatically commercial. These include working in a casino or hotel/resort. IRS guidance is not dispositive. It does not fix the meaning of the provisions for this proceeding at the Department of Labor. But it is indicative. Common sense is indicative as well. Running a casino is a commercial venture. So is running a hotel. Tellingly, Respondents challenge to the point comes down to the argument that commercial activities of these sorts can be essential government functions. RMSD at 27-28. But that is just the question of overlap in the categories, which is something Congress considered and dealt with by adding the parenthetical at the end of the definition.

Regardless, the Director held in *WMAT I* (EBSA) that the distinction between commercial activities and governmental functions was not ambiguous given the text of the PPA and other materials, at least in reference to activities like working at a casino, ski resort, restaurants, hotels and stores. He rejected the contention that these might also be essential government functions, insofar as they raise revenue, for the reasons stated above. The Director stated that any ambiguity "around any unclear edges" was irrelevant on the facts concerning WMAT's plan. *WMAT I* (EBSA) at 5. The Director held that "[u]nder the PPA, [WMAT's] Plan is not a governmental plan and therefore is subject to ERISA reporting requirements, which EBSA properly enforced in this instance." *Id.* at 6. Since in both *WMAT I* (EBSA) and this case it is undisputed that some plan members work in a casino or resort, WMAT's plan in the relevant period was not a governmental plan in the meaning of ERISA.

---

[9] Even were this presented as an issue, it is not one that I would have the authority to address in this proceeding.

WMAT makes several additional arguments contesting ERISA's application, or at least EBSA's application of ERISA to it.  For one, parts of its argument can be understood as a claim that it had been granted a waiver from EBSA based on past practices.  *E.g.* ROSD at 4-5.  But although WMAT has alleged inconsistency, which could go to other arguments it makes, it does not point to evidence of any waiver going forward.  At most, a reasonable fact finder could conclude that EBSA exercised its prosecutorial discretion to forebear enforcement given the difficulties the PPA amendments created for tribes.  A reasonable fact finder could not construe the submissions as an affirmative waiver of the filing requirements perpetually.

On that point, Respondent points to the IRS guidance regarding separating governmental and commercial plans, which could be construed as a waiver of compliance until final guidance was issued.  Thus Respondent argues that it is not required to come into compliance with the ERISA reporting requirements until it is required to separate its plans.  *See, e.g.,* ROSD at 3.  Though this might be a good argument at the IRS, it cannot work here.  The IRS cannot make enforcement decisions for the Department of Labor and it cannot change the statute.  The IRS can opt to forebear enforcement, but WMAT cannot parlay that into an ongoing exemption from ERISA's reporting requirements to EBSA.  WMAT is not required to separate its plans in order to comply with those requirements, it need only procure an IQPA report for the plan as it exists.  It is uncontroverted that this is a difficult and costly endeavor, but that is not relevant to the question presented: whether WMAT's plan, as it exists and as the law exists, must comply with the reporting requirements.

The material facts on that question are undisputed.  WMAT did not file an IQPA report and its plan includes employees who work at casinos and resorts.  Based on the language of the statute and the decision in *WMAT I* (EBSA), I conclude that Complainant is entitled to summary decision on this question.

### E.  *Is Enforcement Barred by EO 13175 and DOL's Tribal Consultation Policy?*

Another facet of Respondent's argument contends that enforcement is barred by EO 13175 and/or DOL's Tribal Consultation Policy.  *See* RMSD at 10-14; *see also* ROSD at 7-8.  It is undisputed that EBSA did not engage in a consultation process with WMAT prior to commencing the enforcement action.[10]  Complainant, however, contends that EO 13175 and the DOL Tribal Consultation Policy are not relevant to this proceeding and even if they were relevant, would not afford Respondent an enforceable right.  CMSD at 9-11, 20-24.

Executive Order 13175 of November 6, 2000, seeks to "establish regular and meaningful consultation and collaboration with tribal officials in the development of Federal policies that have tribal implications, to strengthen the United States government-to-government relationships with Indian tribes, and to reduce the imposition of unfunded mandates upon Indian tribes."[11]  65 FR 67249, 67249.  Section 3 delineates various policymaking criteria favoring respecting the sovereignty of tribes and Section 5 specifies that "[e]ach agency shall have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications."  It is also requires consultation, to "the extent practicable and permitted by law"

---

[10] Though it is also undisputed that WMAT was afforded its procedural rights to respond to the enforcement action after it was initiated.

[11] EO 13175 is published at 65 FR 67249-67242 (Nov. 9, 2000).

before promulgating regulations that post "substantial direct compliance costs on Indian tribal governments." *Id.* at 67249-51. Section 6 specifies that

> Each agency shall, to the extent practicable and permitted by law, consider any application by an Indian tribe for a waiver of statutory or regulatory requirements in connection with any program administered by the agency with a general view toward increasing opportunities for utilizing flexible policy approaches at the Indian tribal level in cases in which the proposed waiver is consistent with the applicable Federal policy objectives and is otherwise appropriate.

*Id.* at 67251.

DOL's Tribal Consultation Policy became effective on December 4, 2012.[12] It espouses the same principles as EO 13175 and provides that

> when formulating and implementing policies that will have tribal implications, it is the Department's policy that, to the extent practicable and permitted by law, consultation with affected Indian tribes will occur. As stated in the executive order, this refers to proposed legislation, regulations, policies, or actions that have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.

77 FR 71833, 71838. Moreover, "[e]ach DOL operating agency will have an accountable process to ensure meaningful and timely input by Indian tribes on policies or actions that have tribal implications." *Id.* In promulgating regulations that have tribal implications, agencies will notify and consult with tribes to the "extent possible and permitted by law." *Id.*; *see also id.* at 71839-40 (process guidelines). The policy also directs agencies to review waiver processes and "consider the relevant factors with a general view toward increasing opportunities for utilizing flexible policy approaches at the Indian tribal level in cases in which the proposed waiver is not inconsistent with the applicable federal policy objectives and is otherwise appropriate as determined by the agency." *Id.* at 71839.

Section 10 of EO 13175 specifies that "[t]his order is intended only to improve the internal management of the executive branch, and is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person." 65 FR 67249, 67252. By its terms, discussed above, it applies to promulgation of regulations and policy. It does not apply to enforcement matters. DOL's Tribal Consultation Policy is the same. It specifies that "To the extent consistent with applicable laws and administrative requirements, consultation can involve any DOL matter having tribal implications, including but not limited to: tribal program management, rulemaking, regulations, policies, waivers and flexibility; grant programs; contracting opportunities; regulatory guidance; and other matters of tribal interest." 77 FR 71833, 71839. But it also makes very clear that "[e]nforcement policy, planning, investigations, cases and proceedings are not appropriate subjects for consultation under this policy." *Id.*; *see also id.* at 71834 (rejecting comment requesting that enforcement be included as a subject of consultation). DOL's policy also contains this disclaimer:

---

[12] The policy, along with discussion of the comments, is published at 77 FR 71833-71842 (Dec. 4, 2012). It is also submitted as RX 17.

This document is intended to improve the Department's management of its relations and cooperative activities with Indian tribes. DOL has no obligation to engage in any consultation activities under this policy unless they are practicable and permitted by law. Nothing in this policy requires any budgetary obligation or creates a right of action against the Department for failure to comply with this policy nor creates any right, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person.

77 FR 71833, 71842.

Recognizing that the policy does not apply to enforcement, Respondent contends that this "begs the question" because its argument is that EBSA was required to engage in consultation before it changed its policy about what suffices as reasonable grounds for waivers. RMSD at 14 n.3. But this begs the question as well in that it presumes that EBSA had some official policy on what constituted reasonable grounds for waivers. Based on the submissions—which include prior waivers in some circumstances and a stray reference to a "policy" of not pursuing enforcement against tribes, a reasonable fact finder could not conclude that EBSA ever had any official policy that would apply generally. All of the submissions come in the context of a particular enforcement action and do not carry any of the touchstones of official, promulgated agency policy. The most that could be inferred is that at some point some portion of EBSA adopted an informal enforcement policy of not pursuing actions against tribes. But there is no evidence that this was ever adopted by appropriate authorities as agency policy, that any consultation for the policy occurred, that anyone was informed of the policy, or that it was anything more than an expression of EBSA's prosecutorial discretion.

EBSA has not promulgated any regulations implementing the PPA and there is no evidence that it issued any policy guidance. It apparently decided that this was unnecessary and has opted simply to engage in enforcement within the scope of its prosecutorial discretion. WMAT would prefer that EBSA promulgate regulations or other guidance and do so in accordance with EO 13175 and the Tribal Consultation Policy. But there is no basis to assert that EBSA's decision not to adopt policy precludes enforcement based on EO 13175 or the Tribal Consultation Policy, since neither apply to this situation by their own terms. Complainant is also correct that even if they apply, both are very explicit that they do not create any enforceable rights that could bar this enforcement action.

This issue was decided by *WMAT I* (EBSA). The Director held that EO 13175 was "not relevant to this proceeding" on the grounds that this was an enforcement matter "implementing a policy specified in statute, not adopting a new policy." *WMAT I* (EBSA) at 6. The Tribal Consultation Policy parrots the language of EO 13175 and leads to the same result. Respondent may contend that the decision in *WMAT I* (EBSA) was incorrect on this point and that EBSA has not *merely* engaged in an enforcement proceeding. But that is an argument that will need to be pressed to another authority. Applying *WMAT I* (EBSA), I conclude that Respondent is not entitled to summary decision based on EO 13175 and/or DOL's Tribal Consultation Policy and that neither are a bar to granting summary decision to Complainant.

- 16 -

F.   *Due Process, Equal Protection, and APA Arguments*

Respondent makes a brief series of arguments based on due process, equal protection, and the APA that, if accepted, could provide a basis to grant it summary decision in this matter. It argues that EBSA has engaged in inconsistent treatment of different tribes and of the same tribes in different years. It points to settlements with other tribes, waivers in prior years, as well as the claim that EBSA enforces ERISA's reporting requirements against tribes that file incomplete annual reports but not against tribes that elect to file no annual report at all. Respondent's APA argument contends that EBSA was required to publish its enforcement policy here. RMSD at 28-31; *see also* RS 24-27, 40. To support its allegations of inconsistency, WMAT points to different determinations EBSA made on prior reports that lacked an IQPA. *See* RX 8, RX 11. It has also submitted internal EBSA documents, including a July 19, 2011, memo about Respondent's plan indicating that a Notice of Intent was being withdrawn pending the split of the plans after that PPA, a no enforcement action determination from 2009 related to another tribe on similar grounds, and a 2012 memo related to a third tribe that references a "policy" of not enforcing against tribes. *See* RX 14; RX 15. In its opposition, Respondent elaborates that it views the IRS guidance as requiring EBSA to engage in a further official process of adopting guidance if it is going to engage in enforcement. ROSD at 8-9.

Complainant maintains that it has acted consistently and has merely been exercising its prosecutorial discretion to encourage compliance in different circumstances. It stresses that it engages in a flexible approach to achieving compliance by Plan Administrators and that prior settlements with tribes and decisions not to enforce the reporting requirements in different cases should not be construed as a general waiver of compliance or as limiting EBSA's ability to pursue enforcement going forward. *See* CMSD at 24-28. In its opposition, it maintains that it has not singled out WMAT for compliance and dismisses reliance on prior individual decisions as a basis for policy. Complainant again argues that different results have come about in different cases because of the particular circumstance of each case and the ways it has attempted to get Plan Administrators to come into compliance with the reporting requirements. COSD at 7-9.

These various challenges can be dealt with quickly. *WMAT I* (EBSA) rejected similar arguments sounding in due process, equal protection, and the APA that were based on alleged inconsistent treatment. The Director found that there was no "material inconsistency" in EBSA's actions and that since EBSA was merely implementing a statutory requirement, there was no need to publish a policy before enforcing it. *WMAT I* (EBSA) at 7. Based on the submissions made here, the most a reasonable fact-finder could conclude is that EBSA has pursued enforcement differently in different situations. In the past it appears to have elected not to pursue enforcement against tribal plans, but as time passed has become more aggressive in requiring compliance. It has reached settlements in some cases, which involve efforts to come into compliance.

There is no due process or equal protection violation here. Respondent is not entitled to a perpetual exemption based on past forbearance. There is a rational basis for the evolution of EBSA's exercise of prosecutorial discretion over time. In the years after the change, it may have judged that it was reasonable to forebear, but as additional time has passed opted to pursue enforcement to encourage compliance. It is now more than a decade since the PPA amendments to ERISA. Further, each case in question involves different circumstances. I fail to see, for instance, why EBSA's willingness to reach settlements with other tribes that involve the tribes based on a mutual agreement functions to provide WMAT an exemption from the requirements altogether.

Again, the most that a reasonable fact-finder could infer from the submissions is that parts of EBSA had an informal enforcement policy of not pursing cases against tribes, but that this has shifted over time with different circumstances. WMAT has not adequately explained how shifts in EBSA's exercise of prosecutorial discretion with changing circumstances amounts to a due process and equal protection violation. In any event, the arguments raised here appear to be identical to those in *WMAT I* (EBSA), so the appellate decision in that case resolves the question in favor of Complainant.

As to the alleged APA violation, the additional facet of Respondent's argument is the assertion that the IRS guidance requires EBSA to engage in some formal promulgation process, involving tribal consultation, before it pursues a different approach. This does not follow. The IRS and EBSA are different agencies in different Departments. Though the PPA amendments had implications for both, IRS guidance does not bind EBSA's enforcement. *WMAT I* (EBSA) held that there was no need for EBSA to promulgate or publish a policy before enforcing ERISA's reporting requirements in accordance with the PPA and Respondent has not offered any additional evidence or argument here that would change that conclusion. Ultimately WMAT disagrees with the ways in which EBSA has opted to exercise its prosecutorial discretion. But that disagreement, whether reasonable or not, is not a basis to defeat an enforcement action in this forum.

Complainant is entitled to summary decision as to the liability question. Based on the undisputed facts about the employees included in Respondent's plan, the text of ERISA, and binding legal authority, Respondent is subject to ERISA's reporting requirements, including filing an annual report with an IQPA report. It is undisputed that it did not do so. In addition, Respondent's various affirmative basis for summary decision lack merit.

### G. The Mitigation Question

The remaining issue is the "mitigation question." The mitigation question asks whether the respondent has made a showing "of mitigating circumstances regarding the degree or willfulness of the noncompliance." *See* 20 C.F.R. § 2560.502c-2(d). In making determinations of the amount assessed, EBSA takes "into consideration the degree and/or willfulness of the failure or refusal to file the annual report." *See* 20 C.F.R. § 2560.502c-2(b)(1).

Complainant argues that it is entitled to summary decision as to the assessment of the penalty because Respondent's noncompliance has been willful and continued. It asserts that there are no mitigating factors because Respondent has not come into compliance or taken steps to do so. CMSD at 13-15. Complainant argues that most of Respondent's arguments and contentions are not on point and do not go to the question of whether or not there are mitigating factors. COSD at 5-6. It contends that Respondent's dispute of the reasonable cause determination pertain to minute differences of opinion that do not go to the central issue, WMAT's continued willful noncompliance. *Id.* at 11-12.

The bulk of Respondent's arguments can be read as in some manner directed to the mitigation question, though some of the points have been considered above. First, Respondent contends that Complainant abused its discretion in deciding to not accept grounds for waiver that it had previously found adequate in that prior enforcement decisions had declined to pursue actions against tribes. CMSD at 7-10. But though the parties dispute the significance of the prior actions Respondent points to, even making all reasonable inferences in favor of Respondent, the most a

reasonable fact finder could conclude is that a component of EBSA decided, some years ago, not to pursue enforcement against tribes.  That changed and Respondent has not provided a convincing legal basis for treating changed enforcement strategy as a mitigating factor.  Moreover, based on the submissions about the different cases Respondent relies on, there can be no reasonable dispute that they involve different facts and lengths/degrees of noncompliance.

Second, Respondent argues that the enforcement position was changed without warning and that EBSA failed to adhere to DOL's consultation policies.  *Id.* at 10-14.  Though Respondent contends that this is a distinct issue from whether the consultation policies bar the complaint, the underlying issue is identical.  As determined above, EBSA was not under any obligation to engage in a consultation with WMAT before it engaged in enforcement of ERISA.  EBSA's undisputed failure to do so is thus not evidence that it abused its discretion or a mitigating factor that needed to be considered in deciding whether to impose a penalty and what penalty to impose.  Later, Respondent alleges that Complainant misunderstood what was required for compliance under the IRS notices and has thus abused its discretion in relying on those notices.  *Id.* at 23-24.  Complainant argues otherwise, claiming that it has properly interpreted the notices.  COSD at 13-14.  This dispute is not really relevant.  The only reliance EBSA seems to have made of the IRS Notices in this case is in establishing the point that running a casino or a resort are commercial activities.  That is a proper implication and in accord with common sense.  As to the more involved issue of what the IRS is requiring in the notices, it isn't relevant since this isn't an IRS enforcement matter.

The difficulty with many of Respondent's lines of argument is that they focus on EBSA's conduct and the way EBSA has gone about pursuing enforcement.  Some of these may be legitimate complaints—or may not—but the missing piece in Respondent's argument is what bearing these complaints have on the mitigation question as it is described in the regulations, which points solely to the degree or willfulness of the plan administrator's noncompliance.  As such, many of these points come down to an attempt to change the subject and expand the narrow issues presented by the regulations into consideration of points of policy that this forum has no authority to address.

In a more relevant line of argument, Respondent contends that Complainant violated its own regulations by turning enforcement into a strict liability offense in that it treats failure to comply (the liability question) as a determination of willfulness that resolves the mitigation question.  RMSD at 20-21.  If Complainant used an erroneous legal standard in its analysis, that might be grounds to find for Respondent on the mitigation question.  But Complainant's response is persuasive on this point.  *See* COSD at 12-13.  Respondent has maintained that EBSA acts inconsistently in waiving enforcement, sometimes withdrawing enforcement efforts and sometimes reaching settlements.  It cannot simultaneously maintain that EBSA has adopted a strict liability standard that removes the mitigation question from the calculus.  The mitigation question looks to the degree or willfulness.  These are not just a question of liability.  A plan administrator might not realize a report is required, may send it to the wrong place, or may take steps to remedy the noncompliance after being informed.  All of these points would not change the answer to the liability question, but they would be considerations for the mitigation question since they go to factors affecting the degree or willfulness of noncompliance.

More substantively, Respondent contends that Complainant's reasonable cause determination was based on "false assumptions," which could be grounds to find for Respondent on the mitigation question insofar as the false assumptions led to an abuse of discretion.  Respondent complains that the reasonable cause statement does not provide an explanation of why

Respondent's mitigation arguments were insufficient. Respondent alleges that the summary of its position that is reflected in the committee notes demonstrates that Complainant did not understand Respondent's argument insofar as it did not include points that Respondent found important and misstated other points. Respondent also argues that it was improper for Complainant to rely on what happened in *WMAT I* (EBSA) because at the time of the determination that case was on appeal. It adds that the committee notes do not distinguish prior decisions from the one at issue. RMSD at 14-17. Respondent takes particular issue with the claim in the committee notes that Respondent's counsel had not reached out to a government entity to seek clarification of the requirements, when in fact Respondent's counsel had engaged in multiple efforts with the Treasury/IRS and later DOL. *Id.* at 18-20.

This last line of argument misses the mark. The reasonable cause determination was based on the material Respondent presented at that time, not what has been subsequently added. *See* RX 9. In addition, many of the alleged failings are minor or even irrelevant—Complainant is not required to perfectly understand what a Plan Administrator means in an argument in order to assess penalties—that would create an incentive to opaqueness. Even accepting Respondent's version of its arguments, a reasonable fact finder would still have to conclude that EBSA understood the central argument that Respondent made in its Statement of Reasonable Cause and continuing through the current briefing. Complainant disagrees starkly with the validity and import of the points that Respondent made and is making, but that is not a basis to find an abuse of discretion in the decision-making process.

Nonetheless, both the reasonable cause letter and the committee notes are somewhat sparse. *See* CX D (letter); RX 16, Ex. S1 (notes). In addition, since Respondent was exercising its rights in appealing the determination in *WMAT I* (EBSA), I do not see the fact that there was a prior assessment as important. It would tend to show that Respondent was on notice that EBSA required an IQPA report and would enforce that provision. But it is not an aggravating factor. Respondent asserts that the it has presented a number of points indicating its good faith and supporting mitigation: WMAT has been more significantly affected by regulatory delays because it traditionally maintained only one plan, there is significant movement of employees between jobs that creates difficulties in how pension may need to be converted, some employees have job functions that are governmental and commercial, there are numerous complications in complying with rules for both governmental and ERISA plans, it has taken steps to ensure compliance with IRS notices, the tribe incurred $97,500.00 in CPA fees to attempt to secure IQPAs and estimates that $200,000.00 more will be needed to produce IQPAs for all back years, and a May 2012 computer failure resulted in lost data making compliance with prior years impossible. RMSD at 21-22; *see also* RS at ¶ 39; RX 2.

The regulations, however, are fairly narrow in what is considered in the mitigation question: "the degree or willfulness of the noncompliance." 29 C.F.R. § 2560.502c-2(d); *see also* 29 C.F.R. § 2560.502c-2(b). Many of Respondent's mitigating factors do not go to these points. So, for instance, the cost of compliance might affect the instrumental decision of WMAT in deciding whether or not to come into compliance, but it does not render its noncompliance lesser in degree or willfulness. The notes and decision are sparse, but they indicate that EBSA focused on the fact that Respondent was aware of the law and EBSA's interpretation, but opted not to comply based on a different reading of the law. It does not appear to have given importance to other aspects Respondent points to now. Respondent challenges this, but some of those consideration were irrelevant and while the regulations provide direction on what is to be weighed, they do not provide guidance on how EBSA should exercise its discretion.

Ultimately, *WMAT I* (EBSA) resolves the issue presented here. In that case the ALJ considered the same series of arguments presented now and reviewed a series of cases in which similar claims had been rejected. The ALJ then granted summary decision to EBSA on the mitigation question. *WMAT I* ALJ at 17-19. In *WMAT I* (EBSA), the Director affirmed that decision. The Director determined that noncompliance is willful when it is based on disagreement about the meaning of the law because this is "a purported justification for its willful noncompliance, rather than a demonstration that its noncompliance was not willful." *WMAT I* (EBSA) at 6-7. Willfulness might be understood in various ways and Respondent may disagree with that understanding of willfulness—based on the various considerations it has stressed through this litigation, it does. In Respondent's understanding, the noncompliance should be found less willful when it is based on a disagreement with the legal requirements, i.e. a different reading of the law and the import of other things, like IRS guidance. But whatever conclusion I might draw about those arguments on a blank slate, *WMAT I* (EBSA) is binding authority and settles the issue: disagreement with the meaning of the law is not a willfulness factor.

More generally, the factors in play in *WMAT I* (EBSA) are the same as those in play here. Given the intervening appellate authority finding that it was not incorrect or an abuse of discretion to assess a full penalty on the facts in *WMAT I*, the same result follows here. Respondent contends otherwise, asserting that there is additional evidence in this case about EBSA's policies and practices that presents a different question on the mitigation question. *See* ROSD at 3-5. However, the new evidence does not alter the analysis as to Respondent's claims about past practices, changes in practices, or differential treatment. Those points were all discussed above. At most they show that EBSA's enforcement strategy has changed over time and that its enforcement decisions are context-dependent. More importantly, the mitigation question is focused on *Respondent's* conduct, not Complainant's enforcement strategies and other conduct. Mitigating factors go to the degree or willfulness of the non-compliance. WBSA has not articulated a meaningful difference in the presentation of the relevant factors from *WMAT I* (EBSA) and reviewing the submissions here and the decisions in that case, I see none. I thus conclude that under *WMAT I* (EBSA), Complainant is entitled to summary decision on the mitigation question.

### H. Conclusion

For the reasons set forth above, I find that Complainant is entitled to summary decision on both the liability question and the mitigation question. I also find that Complainant is entitled to summary decision rejecting Respondents various affirmative arguments to prevent enforcement based on the alleged need for consultation, the APA, or due process/equal protection. Based on those determinations, Complainant is entitled to summary decision in this matter ordering Respondent to pay a civil money penalty in the amount of $90,000.00.[13]

### ORDER

1. Complainant's Motion for Summary Decision is granted.

2. Respondent's Motion to for Summary Decision is denied.

---

[13] Complainant also sought a more general order directing Respondent to file annual reports. CMSD at 3. However, the regulations that define the nature of this proceeding at 29 C.F.R. §§ 2570.60, *et seq.* relate only to the assessment of civil money penalties.

3.  Within 45 days of this Decision and Order, the Respondent shall pay to the U.S. Department of Labor a civil penalty in the amount of $90,000.00.  Any portion of this penalty that is not paid by that date shall be subject to such penalties and interest as ERISA and its implementing regulations permit.

SO ORDERED.


RICHARD M. CLARK
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: Pursuant to 29 C.F.R. § 2570.69, a notice of appeal must be filed with the Secretary of Labor within 20 days of the date of issuance of this Decision and Order or this decision will become the final agency action within the meaning of 5 U.S.C. § 704. A notice of appeal should be filed with

Director of the Office of Policy and Research
Employee Benefits Security Administration
200 Constitution Ave, NW, Ste N-5718
Washington, DC 20210

See Secretary's Order 1-2011, 77 Fed. Reg. 1088 (signed Dec. 21, 2011; published in Federal Register on Jan. 9, 2012) (delegation of review authority to the Assistant Secretary for Employee Benefits Security). A notice of appeal must state, with specificity, the issue or issues on which the party is seeking review. The notice of appeal must be served on all parties of record.

**SERVICE SHEET**

Case Name:  **In re WHITE MOUNTAIN APACHE TRIBE**

Case Number: **2017RIS00007**

Document Title: **ORDER GRANTING COMPLAINANT'S MOTION FOR SUMMARY DECISION AND DENYING RESPONDENT'S MOTION FOR SUMMARY**

I hereby certify that a copy of the above-referenced document was sent to the following this 22nd day of July, 2019:

**MARYANNE B. BALLARD**
LEGAL ASSISTANT

| | |
|---|---|
| Stacey E Elias, Esq. | Office of Chief Accountant |
| U.S. Department of Labor | Division of Reporting Compliance |
| Office of the Solicitor | U. S. Department of Labor |
| Plan Benefits Security Division | Room N-5510, FPB |
| 200 Constitution Ave. NW, Room N-4611 | 200 Constitution Ave., N.W. |
| WASHINGTON DC 20210 | WASHINGTON DC 20210 |
| *{Hard Copy - Regular Mail}* | *{Hard Copy - Regular Mail}* |
| | |
| Jim Palmer | Counsel for Decentralized & Special Litigation |
| Attorney General | Office of the Solicitor |
| White Mountain Apache Tribe | U. S. Department of Labor |
| Retirement Savings and 401(k) Plan | Plan Benefits Security Division |
| P.O. Box 2110 | P.O. Box 1914 |
| WHITERIVER AZ 85941 | WASHINGTON DC 20013 |
| *{Hard Copy - Regular Mail}* | *{Hard Copy - Regular Mail}* |
| | |
| Robert Yoder, Esq | Regional Solicitor |
| Yoder & Langford, P.C. | U. S. Department of Labor |
| Attorney for Respondent | Suite 3-700 |
| 4835 East Cactus Road, Suite 260 | 90 Seventh Street |
| SCOTTSDALE AZ 85254 | SAN FRANCISCO CA 94103-1516 |
| *{Hard Copy - Regular Mail}* | *{Hard Copy - Regular Mail}* |